**FILED**
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**

MAY 2 3 2019

JAMES W. McCORMACK, CLERK
By: _____
                                    DEP CLERK

| | |
|---|---|
| **GINGER P. ELDER, Plaintiff** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **CINDY GILLESPIE, Director, Arkansas** | ) |
| **Department of Human Services, in** | ) |
| **her official and individual capacity** | ) |
| | ) |
| **CRAIG CLOUD, Director, Division of** | ) |
| **Provider Services and Quality Assurance,** | ) |
| **Arkansas Department of Human Services,** | ) |
| **in his official and individual capacity,** | ) |
| | ) |
| **RICHARD ROSEN, Managing Attorney,** | ) |
| **Office of Chief Counsel, Arkansas** | ) |
| **Department of Human Services,** | ) |
| **in his official and individual capacity,** | ) |
| | ) |
| **DAVID STERLING, Chief Counsel,** | ) |
| **Arkansas Department of Human Services,** | ) |
| **in his official and individual capacity,** | ) |
| | ) |
| **Defendants** | ) |
| | ) |

3:19-cv-00155 KGB

This case assigned to District Judge BAKER
and to Magistrate Judge DEERE

**COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, and DAMAGES**

Plaintiff Ginger Elder states the following in support of her complaint for declaratory judgment, injunctive relief, and damages against Cindy Gillespie, Craig Cloud, Richard Rosen, and David W. Sterling in their official and individual capacities:

**I. PRELIMINARY STATEMENT**

1.     Ginger Elder is a 71 year-old woman with multiple disabilities whose continued residence in the community rather than in an institution depends on services provided under the ARChoices Medicaid program. Through ARChoices, individuals who are over 65 or have

-1-

disabilities receive in-home care, access to the full range of state plan Medicaid benefits, and financial support to pay Medicare premiums. Although Ms. Elder has been on the program for about four years and has experienced no medical improvement, the Arkansas Department of Human Services (ADHS) determined her ineligible for ARChoices and terminated her eligibility on March 25, 2019.

2.      Clearly established constitutional due process principles require that a Medicaid beneficiary have the opportunity for an evidentiary administrative hearing before services are terminated. Such requirements are similarly enshrined in the Medicaid Act and accompanying federal and state regulations that allow a beneficiary to continue services at pre-reduction levels pending the outcome of an administrative hearing. Providing beneficiaries the full process due to them is a fundamental obligation and function of ADHS.

3.      Although Ms. Elders requested an administrative hearing and requested that her services be reinstated pending the outcome, ADHS nevertheless terminated her services. As a result, she is not receiving the in-home care she needs, has stopped receiving mental health services, and is incurring significant financial expenses for items and costs previously covered under ARChoices.

4.      For over three years, ADHS and the named defendants have been aware of the agency's systematic failure to properly identify beneficiaries who appeal and request continuing services. Despite this knowledge, ADHS and the named defendants failed to implement any such procedures, which would have prevented the present harm to Ms. Elders. Accordingly, Ms. Elders asks that the Court order Defendant Gillespie in her official capacity to remedy the illegal practice and seeks monetary damages from all named defendants in their individual capacities.

## II. JURISDICTION AND VENUE

-2-

5.      This action arises under 42 U.S.C. § 1983 and the Due Process Clause of Amend.

XIV of the United States Constitution. This Court has subject matter jurisdiction pursuant to 28

U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4).

6.      This Court has jurisdiction to issue declaratory relief and injunctive relief

pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. Pro. 65.

7.      The venue of this action is appropriately in this judicial district and division

pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events that gave rise to these claims

occurred within this judicial district and division.

## III. PARTIES

8.      Ms. Elder is a resident of Craighead County, Arkansas. For about four years, she

has been eligible for the ARChoices Medicaid program. Through ARChoices, she receives in-

home care provided by a care aide, mental health services, coverage of her monthly Medicare

premium, and other services. She resides and receives mail at 304 Toni Ann Dr., Jonesboro,

Arkansas, 72401.

9.      Cindy Gillespie is the director of ADHS, the "single State agency" designated to

administer or supervise the administration of the Medicaid program, as established in Arkansas

through the State Plan submitted to and approved by the federal Centers for Medicare and

Medicaid Services.  Ms. Gillespie is being sued in her official and individual capacities.  Her

office is located at Donaghey Plaza, 7th and Main Streets, Little Rock, Arkansas, 72201.  Her

mailing address in her official capacity is P.O. Box 1437, S201, Little Rock, Arkansas, 72203. On

information and belief, she is a resident of Pulaski County, Arkansas.

10.     Craig Cloud is currently the director of ADHS's Division of Provider Services

and Quality Assurance. He was formerly director of ADHS's Division of Aging and Adult

-3-

Services. His office is located at Donaghey Plaza, 7th and Main Streets, Little Rock, Arkansas, 72201. His mailing address in his official capacity is P.O. Box 1437, S201, Little Rock, Arkansas, 72203. On information and belief, he is a resident of Faulkner County, Arkansas.

11.     Richard Rosen is the managing attorney of the general counsel section of ADHS's Office of Chief Counsel. His office is located at Donaghey Plaza, 7th and Main Streets, Little Rock, Arkansas, 72201. His mailing address in his official capacity is P.O. Box 1437, S201, Little Rock, Arkansas, 72203. On information and belief, he is a resident of Pulaski County, Arkansas.

12.     David Sterling is ADHS's Chief Counsel and director of ADHS's Office of Chief Counsel. His office is located at Donaghey Plaza, 7th and Main Streets, Little Rock, Arkansas, 72201. His mailing address in his official capacity is P.O. Box 1437, S201, Little Rock, Arkansas, 72203. On information and belief, he is a resident of Pulaski County, Arkansas.

## IV. BACKGROUND ON THE ARCHOICES MEDICAID PROGRAM

13.     Medicaid is a medical assistance program for individuals with limited economic resources created pursuant to federal statute and subject to federal oversight. *See generally* 42 U.S.C. § 1396. The federal Center for Medicaid and Medicare Services (CMS) is an agency within the United States Department of Health and Human Services (HHS) charged with administration of the Medicaid program at the federal level.

14.     States have the option to participate in Medicaid. Once a state elects to participate in Medicaid, it must adhere to the federal legal requirements provided by the Medicaid Act, rules promulgated by CMS, and the United States Constitution. Arkansas has elected to participate in Medicaid. *See* Ark. Code Ann. § 20-77-107. Arkansas has designated ADHS to be the "single State agency" to administer or supervise the administration of the state's Medicaid program. *See* 42 U.S.C. § 1396a(a)(5).

15.     The Medicaid Act sets forth mandatory services that participating states must include in their Medicaid programs and optional services that participating states may include in their Medicaid programs. *See* 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a). States express the types and amounts of covered services, conditions for eligibility, and other related information in a "state plan."

16.     The Medicaid Act allows states to deviate from provisions that apply to state plan services in certain situations prescribed by statute. Pursuant to specific statutes, a state requests that CMS waive provisions that the Medicaid Act deems to be waivable. Medicaid programs operated pursuant to such a waiver are called "waiver programs."

17.     One type of "waiver" program allows states to operate Home and Community Based Services (HCBS) programs. *See* 42 U.S.C. § 1396n(c) (also known as Section 1915(c) of the Social Security Act). Such HCBS waiver programs are designed to provide community-based alternatives for individuals who would otherwise require institutionalization in a setting such as a nursing facility. *See id.* A state operating an HCBS waiver program must comply with all provisions of the Medicaid Act that were not waived and all other applicable constitutional provisions, statutes, and regulations.

18.     ADHS currently operates a HCBS waiver program under Section 1915(c) called ARChoices. The ARChoices Medicaid program allows the state to save money by providing community-based care to individuals who would otherwise be institutionalized. On average, the cost of providing community-based care to a waiver-qualified individual is less than the cost of providing comparable care in an institutional setting such as a nursing facility.

19.    ARChoices provides an array of services for program beneficiaries, including, but not limited to, attendant care services, home-delivered meals, and a personal emergency response system.

20.    In addition to the ARChoices-specific services, an ARChoices beneficiary receives the full range of state plan Medicaid services, including personal care services and coverage for mental health services, diagnostic tests, medical supplies, and prescription medications.

21.    In addition to the ARChoices-specific services and the full range of state plan Medicaid services, an ARChoices beneficiary who is simultaneously eligible for Medicare Part B receives full payment of Medicare Part B premiums, deductibles, and co-payments.[1] *See generally* 42 U.S.C. § 1395v(a); 42 C.F.R. § 431.625; Social Security Administration, Program Operation Manual System § HI 01001.205[2]; Arkansas Medicaid State Plan Attachment 3.2 (effective 1/1/89).

22.    Attendant care involves assistance with activities of daily living, including eating, bathing, dressing, personal hygiene (grooming, shampooing, shaving, skin care, oral care, etc.), toileting, mobility/ambulating, including mastering the use of adaptive aids and equipment, meal planning and preparation, laundry, shopping, housekeeping, assistance with medication (in

---

[1] An ARChoices beneficiary may be simultaneously eligible for Medicare Part B if she is age 65 or over or receives Social Security Disability Insurance benefits. Medicare Part B covers different services than Medicaid and has different terms of coverage. For example, Medicare Part B excludes attendant care and imposes deductibles and co-payments not found in Medicaid. An individual eligible for Medicare must pay premiums to receive Medicare Part B coverage unless she is eligible for premium assistance through ARChoices or other applicable programs.

[2] *Available at* https://secure.ssa.gov/poms.nsf/lnx/0601001205

certain circumstances), and traveling for purposes of medical appointments or community activities. ARChoices Provider Manual § 213.210.[3]

23.    Personal care involves assistances related to activities of daily living, including bathing, bladder and bowel requirements, dressing, eating, housekeeping, laundry, personal hygiene, shopping for personal maintenance items, medication assistance under certain circumstances, mobility, and ambulation. Personal Care Provider Manual § 213.210.[4]

24.    Attendant and personal care can be provided in two ways. The first way is that an ARChoices beneficiary can receive services through a caregiving agency of her own choosing. The caregiving agency provides care aides at appointed times and manages billing and payment with ADHS. The second way is that a beneficiary can hire (and fire) a caregiver of her own choosing, in which case the beneficiary signs time sheets submitted to PALCO, an ADHS vendor that pays the hired caregiver with funds provided and authorized by ADHS. A beneficiary may choose to have attendant or personal care provided by both methods, with a caregiving agency providing care at appointed times and a hired attendant at others.

25.    ADHS has set the value of an hour of attendant or personal care at $18.12 and the value of a home-delivered meal at $5.97.

26.    To be eligible for ARChoices, an individual must meet financial and functional eligibility criteria. The financial eligibility criteria is not at issue in this lawsuit. To meet the functional eligibility criteria, a person between the ages of 21 and 64 must have a physical disability as defined by the Social Security Administration and require an intermediate level of

---

[3] *Available at* https://medicaid.mmis.arkansas.gov/Provider/Docs/archoices.aspx

[4] *Available at* https://medicaid.mmis.arkansas.gov/Provider/Docs/perscare.aspx

care in a nursing facility. An individual over 65 must only require an intermediate level of care in a nursing facility. ARChoices Provider Manual § 212.000. Pursuant to promulgated regulations, an individual requires an intermediate level of care only in the following three situations:

> (a)     The individual must be unable to perform either (1) at least 1 of the 3 activities of daily living (ADLs) of transferring/locomotion, eating or toileting without extensive assistance from, or total dependence upon another person; or (2) at least 2 of the 3 ADLs of transferring/locomotion, eating, or toileting without limited assistance from another person;
>
> (b)     The individual has a primary or secondary diagnosis of Alzheimer's disease or related dementia and is cognitively impaired so as to require substantial supervision from another individual because he or she engages in inappropriate behaviors which pose serious health or safety hazards to themselves or others; or
>
> (c)     The individual has a diagnosed medical condition which requires monitoring or assessment at least once a day by a licensed medical professional and the condition, if untreated, would be life-threatening.

*Id.*

27.     The eligibility criteria listed in Paragraph 26(a) has not changed since at least 2005.

28.     Starting January 1, 2019, ADHS began using an assessment tool called Arkansas Independent Assessment (ARIA) to assess an individual's eligibility for ARChoices. An individual who is eligible for ARChoices pursuant to the assessment is classified as "Tier Two."

29.     Once ADHS determines an individual is eligible for ARChoices, the agency determines the amount of services to allocate. Starting January 1, 2019, ADHS began using a

tool called the Task and Hour Standards to determine the amount of services to allocate. Subject to budgetary limits determined by an algorithm, ADHS develops a "person-centered service plan" for an individual based on the individual's needs as determined by the Task and Hour Standards. *See generally* ARChoices Provider Manual § 212.000; 212.200; 212.300.

30.     ADHS assesses program participants at least once every year to determine their functional eligibility and, if eligible, to develop an updated person-centered service plan.

## V. ADHS's MANAGEMENT STRUCTURE

31.     Defendant Gillespie is the director of ADHS and has ultimate supervisorial responsibilities of Arkansas's Medicaid program. *See* Ark. Code Ann. §§ 25-10-101; 25-10-102(c)(1)(A); 25-10-106. She has been ADHS's director from February 2016 to present.

32.     Defendant Cloud was the director of ADHS's Division of Aging and Adult Services (DAAS) from approximately February 2015 to at least August 2017. As director of DAAS, he had direct supervisorial responsibility over the operation of the ARChoices Medicaid program.

33.     Since August 2017, Defendant Cloud has been the director of ADHS's Division of Provider Services and Quality Assurance. In this role, he has worked "to transition and integrate programs that benefit aging Arkansans."[5] In addition, he has direct oversight responsibility of Medicaid providers, including Medicaid providers who provide services such as personal care and attendant care. On information and belief subject to confirmation after opportunity for investigation or discovery, Defendant Cloud communicates with providers about their clients whose services have been reduced or terminated.

---

[5] https://humanservices.arkansas.gov/newsroom/details/white-to-re-join-dhs-as-deputy-director-for-aging-adult-and-behavioral-heal

34.     On information and belief subject to confirmation after opportunity for investigation or discovery, Defendant Cloud in his role as director of ADHS's Division of Provider Services and Quality Assurance has had direct supervisorial responsibility over the operation of ARChoices Medicaid program at times between August 2017 and present.

35.     Defendant Sterling has been the director of ADHS's Office of Chief Counsel (previously titled the Office of Policy and Legal Services) since approximately February 2015. He has direct supervisorial responsibility over Defendant Rosen, the General Counsel Section, and the Office of Appeals and Hearings. The Office of Appeals and Hearings receives ARChoices beneficiaries' requests for appeals, schedules and conducts appeal hearings, and issues hearing decisions.

36.     As ADHS's Chief Counsel, Defendant Sterling also represents the agency in legal matters and appears as the agency's counsel of record in court proceedings.

37.     Defendant Rosen is the Managing Attorney of the General Counsel Section with ADHS's Office of Chief Counsel. He reports to Defendant Sterling. He has direct supervisorial responsibility over the ADHS attorneys assigned to evidentiary hearings. In addition, Mr. Rosen appears as ADHS's counsel of record in court proceedings.

### VI. ADVERSE AGENCY ACTIONS AND DUE PROCESS GUARANTEES

38.     Constitutional due process provides that individuals on Medicaid are entitled to an evidentiary hearing prior to the termination or reduction of their benefits. U.S. Const. amend. XIV, § 1; *Goldberg v. Kelly*, 397 U.S. 254 (1970); *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 786-87 (1980) ("The Government cannot withdraw these direct [Medicaid] benefits without giving the patients notice and an opportunity for a hearing on the issue of their eligibility for benefits.")

-10-

39.     The requirement for an evidentiary hearing prior to the termination or reduction of a beneficiary's Medicaid benefits was clearly established law under the U.S. Constitution at the time of the violation of Ms. Elder's due process rights alleged here.

40.     Various federal and state Medicaid statutes and regulations enshrine the constitutional due process guarantee of an evidentiary hearing for adverse agency actions affecting a person's Medicaid benefits. *See, e.g.,* 42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 431.205 (incorporating *Goldberg v. Kelly*, 397 U.S. 254 (1970)); Ark. Code Ann. § 20-77-121; Ark. Code Ann. § 25-15-208.

41.     Federal Medicaid regulations explicitly provide for that a state agency may not terminate or reduce Medicaid benefits until the outcome of an evidentiary hearing where a beneficiary appeals within 10 days of the date on the notice of adverse action. 42 C.F.R. §§ 431.230, 431.231.

42.     State Medicaid regulations provide that ADHS may not terminate or reduce Medicaid benefits until the outcome of an evidentiary hearing where a beneficiary appeals within 10 days of the date on the notice of adverse action. ADHS Medicaid Provider Manual § 161.500; Ark. Medical Services Policy J-100, J-110, L-120.

43.     The applicable constitutional provisions, statutes, and regulations do not commit discretion to ADHS to withhold, reduce, or terminate the Medicaid benefits of beneficiaries who appeal within 10 days of the date on the notice of adverse action unless the beneficiary requests withholding, reduction, or termination.

## VII. REPEATED ALLEGED FAILURES TO CONTINUE MEDICAID

44.     On April 8, 2016, Legal Aid of Arkansas e-mailed ADHS through Defendant Rosen contending that ADHS had not maintained the ARChoices services of a beneficiary who appealed an adverse action within 10 days. The email mentioned constitutional due process. On April 11, 2016, Defendant Rosen responded that the beneficiary "is being reinstated for continuation of services pending appeal." These emails are attached and incorporated as Exhibit A.

45.     On April 15, 2016, Legal Aid of Arkansas e-mailed ADHS through Defendant Rosen contending that ADHS had not maintained the ARChoices services of a beneficiary who appealed an adverse action within 10 days. This email is attached and incorporated as Exhibit B.

46.     On April 27, 2016, Legal Aid of Arkansas e-mailed ADHS through Defendant Rosen contending that ADHS had not maintained the ARChoices services of a beneficiary who appealed an adverse action within 10 days. Legal Aid "would highly recommend the agency immediately institute measures to guarantee that individuals who file fair hearing requests within 10 days of receipt of notice of adverse action have their service levels maintained at the pre-adverse action levels." This email is attached and incorporated as Exhibit C.

47.     On July 28, 2016, Legal Aid e-mailed ADHS through Defendant Rosen contending that ADHS had not maintained the ARChoices services of a beneficiary who appealed an adverse action within 10 days. This email is attached and incorporated as Exhibit D.

48.     On September 23, 2016, Legal Aid e-mailed ADHS through Defendant Rosen contending that ADHS had not maintained the ARChoices services of four beneficiaries who appealed adverse actions within 10 days. This email is attached and incorporated as Exhibit E.

49.     On September 26, 2016, Legal Aid e-mailed ADHS through Defendant Rosen contending that ADHS had not maintained the ARChoices services of ten beneficiaries who appealed an adverse action within 10 days. This email is attached and incorporated as Exhibit F.

50.     On October 5, 2016, Legal Aid e-mailed ADHS through Defendant Rosen contending that ADHS nurses were discouraging ARChoices beneficiaries from exercising their rights to maintain services pending an appeal. This email is attached and incorporated as Exhibit G.

51.     On April 12, 2017, Legal Aid e-mailed ADHS through Defendant Rosen contending that ADHS had not maintained the ARChoices services of a beneficiary who appealed an adverse action within 10 days. Defendant Rosen responded that he "instructed DAAS to restore the hours pending the hearing…" Additionally, Legal Aid contended that a process to maintain services would be beneficial and that "it would certainly work better for everyone if DHS met its obligations without requiring clients to contact an attorney to then contact a DHS attorney." These emails are attached and incorporated as Exhibit H.

52.     On June 21, 2017, Legal Aid e-mailed ADHS through Defendant Rosen contending that ADHS had not maintained the ARChoices services of two beneficiaries who appealed an adverse action within 10 days. Additionally, Legal Aid "encourage[d] the agency to improve the communications between its various employees to ensure that reductions are not implemented before the 10 days from the date of the notice of action" because, "[i]n the majority of our clients' cases, reductions are implemented immediately after a plan of care is finalized and sent to the provider…." Legal Aid contended that it was "available to consult with the agency to ensure that it meets its obligations under relevant Medicaid and constitutional law." On June 22,

2017, Defendant Rosen responded that "the care agencies have been advised to continue the recipients' hours." These emails are attached and incorporated as Exhibit I.

53.    On June 23, 2017, Legal Aid e-mailed ADHS through Defendant Rosen contending that ADHS had not maintained the ARChoices services of six beneficiaries who appealed an adverse action within 10 days. Legal Aid wrote that it "would hope the agency implements a system-wide resolution to this issue sooner rather than later." This email is attached and incorporated as Exhibit J.

54.    On July 14, 2017, Legal Aid spoke with ADHS through Defendant Rosen via telephone contending that ADHS had not maintained the ARChoices services of a beneficiary who appealed an adverse action within 10 days. On July 17, 2017, Defendant Rosen responded via email that "…DAAS advised PALCO to restore the care plan" pending the beneficiary's appeal. These emails are attached and incorporated as Exhibit K.

55.    On July 21, 2017, Legal Aid e-mailed ADHS through Defendant Rosen asking that he ensure that ADHS not reduce the ARChoices services of a beneficiary who appealed an adverse action within 10 days. Defendant Rosen responded that he "forwarded [the] email to DAAS and…will confirm continuation of services pending appeal" on the next business day. These emails are attached and incorporated as Exhibit L.

56.    On July 27, 2017, Legal Aid e-mailed ADHS through Defendant Rosen contending that a beneficiary's ARChoices services had not been restored despite a timely appeal request on May 11, 2017 and an email to Rosen on June 23, 2017. On July 28, 2017, an ADHS attorney under Defendant Rosen's supervisorial authority, Nicholas Windle, stated that the beneficiary's ARChoices services were restored on July 7, 2017. On August 9, 2017, Legal Aid e-mail ADHS through Defendant Rosen to contending that the beneficiary's ARChoices services

had still not been restored. On August 15, 2017, Windle admitted that there was an "issue" with

PALCO, an ADHS vendor. On September 2, 2017, Legal Aid e-mailed ADHS through

Defendant Rosen contending that the beneficiary's ARChoices services were still not restored

despite the earlier requests. On September 6, 2017, Defendant Rosen responded that "DAAS

confirmed that the hours are restored...." These emails are attached and incorporated as Exhibit

M.

57.     On August 10, 2017, Legal Aid e-mailed ADHS through Defendants Rosen and

Sterling with a letter attached and explicitly requested that they forward the letter to Defendant

Gillespie and other ADHS officials. The letter's purpose was "so that all relevant stakeholders

may be fully aware of our clients' positions and our overall willingness to again attempt

amicable resolution." Legal Aid contended that there were various problems with ARChoices,

including the following:

> **(1) Premature Reduction of Services.** Clients who appeal within 10 days of the notice
> of action do not have their services maintained at pre-reduction levels as required by
> federal regulations, even with explicit requests to do so. While Mr. Rosen has been
> helpful in restoring the hours of those clients whose services were prematurely reduced,
> his involvement required correspondence from a Legal Aid attorney after the Department
> failed to take note of an explicit request in the appeal paperwork. If the agency's system
> for tracking appeals is not working well for program participants with an attorney, one
> can only imagine the adverse effects on unrepresented individuals. *DHS should adopt*
> *new internal procedures for appeals so that DAAS nurses do not forward the Person*
> *Centered Service Plan to Palco or agency providers until 15 days have elapsed from the*
> *date the notice of adverse action is sent. Relatedly, OAH should coordinate with DAAS to*
> *ensure that nurses are promptly made aware of all appeals so that they do not implement*
> *a reduction for a beneficiary who appealed within 10 days.*

The email and letter are attached and incorporated as Exhibit N.

58.     On August 16, 2017, Defendant Rosen e-mailed Legal Aid that he "reviewed your letter and forwarded it to my client" and "expect[s] to meet with DAAS about your letter." The email is attached and incorporated as Exhibit O.

59.     Acting through Defendants Rosen and Sterling, ADHS responded to the August 10, 2017 letter with a letter and follow-up emails. In the response letter and follow-up emails, ADHS never addressed the premature reduction of services.

60.     On September 2, 2017, Legal Aid e-mailed ADHS through Defendant Rosen contending that ADHS had not maintained the ARChoices services of a beneficiary who appealed an adverse action within 10 days and asked that ADHS "please work out a functioning system so that people who appeal within 10 days get to keep the pre-reduction services to which they are entitled…." On September 6, 2017, Defendant Rosen responded that "DAAS has confirmed that the hours are restored…." These emails are attached and incorporated as Exhibit P.

61.     On January 10, 2018, Legal Aid e-mailed ADHS through Defendant Rosen contending that ADHS had not maintained the ARChoices services of two beneficiaries who appealed an adverse action within 10 days. On January 11, 2018, Defendant Rosen responded that the services "are reinstated or continuing at their prior level." These emails are attached and incorporated as Exhibit Q.

62.     On March 12, 2019, Legal Aid of Arkansas e-mailed ADHS through Defendant Rosen contending that ADHS had not maintained the ARChoices services of six beneficiaries who appealed an adverse action within 10 days. On March 13, 2019, Defendant Rosen responded that five of the beneficiaries' services were continued without stopping but that one had "services

stopped for an unknown reason but was reinstated effective today." These emails are attached and incorporated as Exhibit R.

63.     Between May 14, 2018 and October 8, 2018, ADHS initiated no adverse actions based on functional assessments for ARChoices due to litigation invalidating the allocation methodology in effect at that time.

64.     Each beneficiary identified in the communications contained in Paragraphs 44 to 62 filed an appeal within 10 days from the date on the notice of adverse action that ADHS issued to them. This allegation will have evidentiary support after a reasonable opportunity for investigation and discovery of information in the Defendants' possession.[6]

65.     Each beneficiary identified in the communications referenced in Paragraphs 44 to 62 experienced a reduction or termination of ARChoices services prior to the outcome of the appeal or was informed of an impending reduction or termination by ADHS, PALCO, or a caregiving agency. This allegation will have evidentiary support after a reasonable opportunity for investigation and discovery of information in the Defendants' possession.[7]

66.     Between 2016 and present, ARChoices beneficiaries not identified in Paragraphs 44 to 62 received notices of adverse action issued by ADHS, filed an appeal within 10 days from the date on the notice, and experienced a reduction or termination of ARChoices services prior to

---

[6] Paragraphs 65 and 66 are included to clarify that that the emails sent by Legal Aid contained in Paragraphs 44 to 62 are not intended to establish that the identified beneficiaries in fact appealed within 10 days from the date on the notice of adverse action or in fact experienced a reduction or termination of ARChoices services prior to the outcome of the appeal. If ADHS controverts the contentions of Paragraphs 65 and 66, evidence of such appeals, reductions, or terminations or evidence of impending reductions or termination presumably will come from information in the Defendants' possession in the form of notices of adverse action, appeal requests, care plans, service authorizations, communications made by agency officials confirming restoration or maintenance of services, or other ADHS records.

[7] See Footnote 6.

the outcome of the appeal. This allegation will have evidentiary support after a reasonable opportunity for investigation and discovery of information in the Defendants' possession.

67.     On April 26, 2019, Legal Aid requested information pursuant to Arkansas's Freedom of Information Act about ADHS policies, procedures, and processes "currently in effect…for continuing benefit eligibility for Medicaid beneficiaries who appeal adverse agency decisions."

68.     As of April 26, 2019, ADHS did not have any written procedure or process for continuing benefit eligibility for Medicaid beneficiaries who appeal adverse agency decisions.

69.     As a matter of custom, policy, or practice, ADHS automatically terminates or reduces the services of Medicaid beneficiaries subject to adverse agency actions regardless of the timing of any appeal request.

70.     As a matter of custom, policy, or practice, ADHS maintains or restores the services of Medicaid beneficiaries who timely appeal an adverse action *only where* a beneficiary takes additional action, such as retaining an attorney to contact ADHS.

71.     Any ADHS requirement that a beneficiary who timely appealed take additional action to maintain Medicaid benefits is incompatible with the requirements of constitutional due process and applicable statutes and regulations.

## VIII. GINGER ELDER

72.     Ginger Elder is a former teacher, liked sewing as a hobby when she was younger, and used to be very active in her local church. She has been married to her husband Vilas Elder for 27 years.

73.     Ms. Elder has multiple medical conditions, including an enlarged heart, diabetes, diabetes-related neuropathy in her hands and feet, osteoarthritis, diverticulitis, irritable bowel

syndrome, chronic bladder infections, damage to both knees, damage to her right shoulder, major

depressive disorder, anxiety disorder, and Bell's palsy. She is oxygen-dependent and requires an

oxygen tank at all times. She has frequent bowel and bladder incontinence. She had one knee

replaced in or around 2014 and is waiting to have surgery to have the other knee replaced. She

has developed a hernia in her abdomen as a result of a fall in the last 30 days.

74.     Ms. Elder became eligible for Medicare in or around 2013.

75.     Ms. Elder applied for ARChoices Medicaid in 2015, and ADHS determined her to

be eligible. ADHS assessed her again in 2016, 2017, and 2018 and determined her eligible each

time. On each assessment, ADHS determined that Ms. Elder met the functional eligibility criteria

recited in Paragraph 26(a).[8]

76.     As a beneficiary of ARChoices, Ms. Elder received attendant care and home-

delivered meals. She chose to receive her attendant care services through East Arkansas Area

Agency on Aging, a caregiving agency. She received one home-delivered meal each day of the

week.

77.     ADHS increased Ms. Elder's allocation of care hours in 2016, 2017, and 2018.

Based on the last assessment ADHS performed prior to 2019, ADHS determined that Ms. Elder

required approximately 30 hours per week of care.

78.     Ms. Elder used attendant and/or personal care services to help her to get in and

out of bed and chairs, to move from one place to another without falling, to get on and off the

---

[8] The individual must be unable to perform either (1) at least 1 of the 3 activities of daily living
(ADLs) of transferring/locomotion, eating or toileting without extensive assistance from, or total
dependence upon another person; or (2) at least 2 of the 3 ADLs of transferring/locomotion,
eating, or toileting without limited assistance from another person

toilet, to clean herself fully after using the toilet, to bathe, to dress, to do laundry, and to prepare meals.

79.    Ms. Elder's functional abilities have not improved since her last assessment prior to 2019.

80.    As a beneficiary of ARChoices, Ms. Elder also received the full range of state plan Medicaid services. Her state plan Medicaid benefits covered personal care, mental health treatment, medical supplies, prescription drugs, and other services.

81.    As a beneficiary of ARChoices, ADHS paid or arranged for payment of Ms. Elder's Medicare Part B premiums, deductibles, and co-payments.

82.    On or around January 15, 2019, ADHS assessed Ms. Elder for ARChoices eligibility using the ARIA assessment instrument.

83.    On or around March 12, 2019, ADHS informed East Arkansas Area Agency on Aging that Ms. Elder would no longer be eligible for ARChoices and would be terminated from the program pursuant to the January 15, 2019 assessment. East Arkansas Area Agency on Aging informed Ms. Elder of the impending termination, that an appeal process was available, and that a prompt appeal would allow her Medicaid to continue until the outcome of an appeal hearing.

84.    On March 13, 2019, Ms. Elder appealed ADHS's decision to terminate her eligibility for ARChoices services. She sent a letter to ADHS's Office of Appeals and Hearings at P.O. Box 1437, Slot N-401, Little Rock, Arkansas, 72203. In the appeal letter, Ms. Elder asked ADHS to reinstate her ARChoices services.

85.    On March 15, 2019, ADHS issued a notice of action to Ms. Elder terminating her ARChoices eligibility as of March 25, 2019. The notice of action states the following:

If you disagree with the action we plan to take, you may request a hearing. You must make your hearing request no later than 30 days from the date of this notice to receive a hearing.

If you are currently receiving Medicaid assistance and request a hearing by the effective date shown on the front page, your assistance may be continued at its present level pending a decision on your appeal. If assistance is continued at its present level until a decision is reached, you may be required to repay the additional benefits if the hearing is not in your favor.

86.     ADHS received Ms. Elder's appeal letter by March 25, 2019.

87.     On March 25, 2019, ADHS terminated Ms. Elder's ARChoices Medicaid, including ARChoices-specific services, state plan Medicaid services, and coverage of her Medicare Part B premium, deductibles, and co-payments.

88.     The termination of Ms. Elder's Medicaid was caused by ADHS's failure to implement procedures to identify timely appeals and take whatever steps are necessary to maintain Medicaid services and ADHS's custom, policy, or practice to terminate or reduce the services of Medicaid beneficiaries subject to adverse agency actions regardless of the timing of any appeal request. Additionally or in the alternative, the termination of Ms. Elder's Medicaid resulted from the failure of an ADHS employee responsible for identifying timely appeals and taking whatever steps are necessary to maintain Medicaid services to adequately perform their duties.

89.     Since March 25, 2019, due to ADHS's termination of her ARChoices Medicaid, Ms. Elder has not received any home-delivered meals, attendant care, or state plan personal care.

90.     Vilas Elder, Ms. Elder's 73 year-old husband, attempts to meet her care needs but is not physically able to fully do so. In addition, Mr. Elder works part-time at a movie theater and occasionally does long-distance driving to earn money. He is often gone as much as seven hours

-21-

at a time. Since March 25, 2019, he has had to work more often to earn money to attempt cover costs previously covered under ARChoices Medicaid.

91.     As a result of the termination of ARChoices Medicaid, Ms. Elder has had to stay in one place more than she did prior to March 25, 2019, has fallen several times, has not been able to be fully changed or cleaned when needed, has stayed in her own waste longer, and has eaten less than she wants to.

92.     As a result of the termination of ARChoices Medicaid, Ms. Elder is no longer receiving mental health treatment. As a result, she is experiencing greater depression and anxiety, which have caused her increased suffering.

93.     As a result of the termination of ARChoices Medicaid, Ms. Elder must now pay out of pocket for pull-up diapers previously covered. Since March 25, 2019, she has incurred at least $500 in costs for pull-up diapers. She uses approximately 12 pull-up diapers per day and expects to continue to incur costs in order to purchase them.

94.     As a result of the termination of ARChoices Medicaid, Ms. Elder must now purchase more food to compensate for the daily home-delivered meal provided under ARChoices. Since March 25, 2019, she has incurred at least $400 in additional costs for food.

95.     As a result of the termination of ARChoices Medicaid, Ms. Elder has been denied medically necessary vision care and services that would be covered under Medicaid. The medical provider is unwilling to see her without active insurance or prepayment for services. She cannot afford to prepay the cost for these services.

96.     As a result of the termination of ARChoices Medicaid, Ms. Elder has received a bill for $960 for dental services rendered that would be covered under Medicaid.

-22-

97.     As a result of the termination of ARChoices Medicaid, Ms. Elder must now pay her monthly Medicare Part B premium of $135.50. Since March 25, 2019, she has incurred $271 in costs for Medicare Part B. On June 3, 2019, she will incur another $135.50 in costs for Medicare Part B.

98.     Pursuant to Ms. Elder's March 13, 2019 appeal letter, ADHS scheduled an administrative hearing for May 23, 2019. That hearing has since been continued for purposes of obtaining legal representation, and no new date has been set.

99.     The subject of the administrative hearing is whether or not DHS reached the correct conclusion about Ms. Elder's ARChoices eligibility. The administrative hearing does not encompass questions about the agency's violation of constitutional due process obligations to furnish continuing benefits pending the outcome of the hearing.

100.    The administrative hearing officer does not have jurisdiction to decide issues arising under the United States Constitution or grant the relief requested here.

101.    If Ms. Elder prevails at the administrative hearing, she will receive a new assessment to determine her eligibility for ARChoices, which, in the event of a subsequent adverse determination, will subject her to the same deficiencies at issue in this lawsuit.

102.    Retroactive reinstatement of Ms. Elder's ARChoices Medicaid will not fully compensate her for costs, anguish, or suffering incurred as a result of ADHS's termination of ARChoices prior to an evidentiary hearing.

103.    ADHS performed a new assessment for Ms. Elder on May 21, 2019. ADHS has not yet issued a notice determining whether she is eligible for ARChoices. On information and belief, the new assessments shows that Ms. Elder meets the functional eligibility criteria for ARChoices.

## IX. CLAIMS FOR RELIEF

104.    At all relevant times, the Defendants were acting under color of law in the administration of ADHS.

105.    Ms. Elder asserts her right to relief against the Defendants jointly, severally, or in the alternative with respect to the termination of her ARChoices Medicaid and resulting harms.

106.    Questions of law or fact common to all Defendants include all facts relating to Ms. Elders' ARChoices eligibility and invocation of her right to an evidentiary hearing, all facts pertaining to ADHS's process for maintaining the services of Medicaid beneficiaries who timely request appeal, all facts pertaining to ADHS's failure to maintain Ms. Elder's Medicaid pending the outcome of an evidentiary hearing, and all facts pertaining to the extent of damages.

107.    Equitable relief is necessary because relief at law is inadequate to avoid further harm to Ms. Elder while this case is ongoing.

108.    There is an actual controversy between the parties.

109.    Ms. Elder is likely to suffer irreparable harm in the absence of preliminary relief because she requires ARChoices attendant care services to meet her care needs, to receive medically necessary mental health treatment, vision treatment, and dental services, and to cover the costs of her Medicare Part B premium, deductibles, and co-pays.

110.    The harm that Ms. Elder suffers outweighs any injury that would be caused to the Defendants by reinstating her services and/or implementing procedures or practices to ensure that Medicaid benefits are maintained for beneficiaries who appeal adverse agency actions within 10 days.

111.    The public interest is significant in protecting Medicaid beneficiaries' right to an evidentiary hearing prior to the termination of services because Medicaid provides medically

necessary services to people who live in or near poverty and who cannot afford such services in the absence of Medicaid.

112.    Ms. Elder is likely to succeed on the merits of her claim, as all claims are enforceable by private parties and based on facts establishing the Defendant's unlawful conduct.

113.    The Defendants have engaged in reckless and callous indifference to Ms. Elder's constitutional rights such that punitive damages are needed to punish and deter such conduct.

114.    As a direct and proximate consequence of the Defendants' conduct, Ms. Elder is entitled to damages, including, but not limited to, the following, all of which are to be specified at trial: expenses incurred as a result of the termination of ARChoices, the value of the ARChoices services withheld, compensatory damages for delays in medically necessary care, mental anguish, physical suffering, and other compensatory and punitive damages.

### *Count One: Constitutional Due Process Against Defendants in Their Official Capacities*

115.    Ms. Elder has a property interest in continuing coverage through the ARChoices Medicaid program.

116.    Ms. Elder has a legitimate claim of entitlement to Medicaid coverage through ARChoices because she was receiving ARChoices at the time ADHS issued its notice of adverse action on March 15, 2019. Furthermore, ADHS has determined her eligible for ARChoices multiple times and allocated her approximately 30 hours per week of attendant care.

117.    Ms. Elder requires at least limited assistance in toileting because she needs assistance from another person at least three times per week to get on and off the toilet without falling, to clean herself after using the toilet, and to change pull-up diapers or adjust her clothing.

118.   Ms. Elder requires at least limited assistance with mobility/transfers because she needs assistance from another person at least three times per week to get from one place to another without falling and to get into or out of a chair without falling.

119.   The Due Process Clause of the Fourteenth Amendment prohibits states from denying, reducing, or terminating Medicaid services without due process of law.  According to *Goldberg v. Kelly*, 397 U.S. 254 (1970), and subsequent cases, the constitutional right to due process includes, among other things, the right to an evidentiary hearing prior to the termination or reduction of benefits. The due process requirements in *Goldberg* were explicitly integrated into federal Medicaid regulations. *See* 42 C.F.R. § 431.205(d).

120.   As a matter of custom, policy, or practice, ADHS automatically terminates or reduces the services of Medicaid beneficiaries subject to adverse agency actions regardless of the timing of any appeal request.

121.   ADHS terminated Ms. Elder's ARChoices Medicaid prior to an evidentiary hearing despite her appeal of the adverse agency action within 10 days.

122.   The Defendants' termination of Ms. Elder's ARChoices Medicaid prior to an evidentiary hearing violates the Due Process clause of the Fourteenth Amendment to the U.S. Constitution.

123.   As a result of the Defendants' unlawful actions, Ms. Elder has suffered a deprivation of needed care, loss of mental health treatment, loss of needed vision care, and increased costs for adult diapers, food, medical services, and Medicare premiums.

124.   Any effort by ADHS to reinstate the services of Medicaid beneficiaries that have been reduced or terminated prior to an evidentiary hearing requires additional beneficiary action that is incompatible with the requirements of constitutional due process

### *Count Two: Constitutional Due Process Against Rosen in His Personal Capacity*

125.   The Plaintiff incorporates the contentions of Paragraphs 1 through 124.

126.   Over a three-year span detailed in Paragraphs 44 to 62, Defendant Rosen received contentions from Legal Aid that ADHS unlawfully terminated or reduced the ARChoices benefits of beneficiaries who appealed adverse agency action within 10 days and that such terminations or reductions harmed ARChoices beneficiaries.

127.   Defendant Rosen responded to Legal Aid's contentions with statements that benefits were or would be restored, continued, or reinstated. *See* Paragraphs 44 (Exhibit A), 51 (Exhibit H), 52 (Exhibit I), 54 (Exhibit K), 55 (Exhibit L), 56 (Exhibit M), 60 (Exhibit P), 61 (Exhibit Q), and 62 (Exhibit R).  (Exhibit F), 52 (Exhibit I), 53 (Exhibit J), and 54 (Exhibit K).

128.   Defendant Rosen received Legal Aid's letter dated August 10, 2017 contending that ADHS did not ensure that ARChoices beneficiaries who appealed an adverse action within 10 days would receive continuing services. *See* Paragraphs 57 (Exhibit N) and 58 (Exhibit O).

129.   On information and belief subject to confirmation after an opportunity for investigation or discovery, Defendant Rosen was the ADHS employee responsible for identifying timely appeals and taking whatever steps are necessary to maintain Medicaid services.

130.   Defendant Rosen failed to identify Ms. Elder's timely appeal and take necessary steps to maintain Ms. Elder's Medicaid services.

131.   As a result of Defendant Rosen's failure, Ms. Elder's ARChoices Medicaid was terminated, causing the harms alleged in this Complaint.

132.   Alternatively, if Defendant Rosen was not the ADHS employee responsible for identifying timely appeals and taking necessary steps to maintain Medicaid services, on

information and belief subject to confirmation after opportunity for investigation or discovery, he

supervised the responsible employee. The responsible employee failed to identify Ms. Elder's

timely appeal request and take necessary steps to maintain Ms. Elder's Medicaid services.

133.    Defendant Rosen failed to adequately train or supervise his subordinates to ensure

that the Medicaid services of beneficiaries who timely appealed an adverse agency action would

be maintained.

134.    Defendant Rosen had notice of a pattern of unconstitutional acts based on Legal

Aid's contentions recited in Paragraphs 44 to 62 that ADHS lacked an adequate system to ensure

continuing benefits for Medicaid beneficiaries who timely appealed.

135.    Defendant Rosen received Legal Aid's contentions recited in Paragraphs 44 to 62

that beneficiaries without counsel would be adversely impacted by ADHS's lack of a process to

ensure continuing services upon timely appeal. *See, e.g.,* Paragraph 57 (Exhibit N).

136.    Defendant Rosen was deliberately indifferent to ADHS's custom, policy, or

practice of reducing or terminating Medicaid benefits prior to an evidentiary hearing because he

did not propose or implement any process, procedure, training, or oversight to ensure continuing

Medicaid services upon timely appeal despite having information or authority to do so.

137.    Defendant Rosen was deliberately indifferent to ADHS's custom, policy, or

practice of reducing or terminating Medicaid benefits prior to an evidentiary hearing because he

restored, reinstated, or continued the services of beneficiaries *only* where they retained counsel

who communicated with ADHS, which is a custom, practice, or policy that is unlawful.

138.    Defendant Rosen's deliberate indifference to ADHS's custom, policy, or practice

of reducing or terminating Medicaid benefits prior to an evidentiary hearing harmed Ms. Elder

because she filed a timely appeal without counsel, had her Medicaid services terminated, and, as a result, suffered the harms alleged in this Complaint.

139.    Whether or not Defendant Rosen was or supervised the ADHS employee responsible for identifying timely appeals and taking necessary to maintain Medicaid services, he has an ethical duty as an ADHS attorney to inform his supervising attorney, Defendant Sterling, of potentially unconstitutional acts such as the pre-hearing termination or reduction of Medicaid benefits for beneficiaries who timely appeal.

140.    Whether or not Defendant Rosen was himself or supervised the ADHS employee responsible for identifying timely appeals and taking necessary to maintain Medicaid services, he has an ethical duty as an ADHS attorney to inform his client-like entities within ADHS of potentially unconstitutional acts involving their programs, such as the pre-hearing termination or reduction of Medicaid benefits for beneficiaries who timely appeal.

141.    For purposes of ARChoices, Defendant Rosen's client-like entities within ADHS has been at various times the Division of Aging and Adult Services, its successor entity, and the Division of Provider Services and Quality Assurance.

### *Count Three: Constitutional Due Process Against Sterling in His Personal Capacity*

142.    The Plaintiff incorporates the contentions of Paragraphs 1 through 141.

143.    On information and belief subject to confirmation after an opportunity for investigation or discovery, Defendant Sterling received information from Defendant Rosen about Legal Aid's contentions recited in in Paragraphs 44 to 62 that ADHS unlawfully terminated or reduced the ARChoices benefits of beneficiaries who appealed adverse agency action within 10 days and that such terminations or reductions harmed ARChoices beneficiaries.

144.    Defendant Sterling received Legal Aid's letter dated August 10, 2017 contending that ADHS did not ensure that ARChoices beneficiaries who appealed an adverse action within 10 days would receive continuing services. *See* Paragraphs 57 (Exhibit N) and 59.

145.    As the head of the Office of Chief Counsel, Defendant Sterling has supervisorial responsibility over the Office of Appeals and Hearings, which receives appeal requests from beneficiaries. On information and belief subject to confirmation after opportunity for investigation or discovery, he supervised the employee responsible for identifying Ms. Elder's timely appeal request and taking necessary steps to maintain Ms. Elder's Medicaid services.

146.    Alternatively, if there is no subordinate employee directly responsible for identifying Ms. Elder's timely appeal request and taking necessary steps, Defendant Sterling as the head of the Office of Chief Counsel is the ADHS employee responsible for ensuring that there are adequate procedures to identify beneficiaries' timely appeal requests and maintain their services.

147.    Defendant Sterling failed to adequately train or supervise his subordinates to ensure that the Medicaid services of beneficiaries who timely appealed an adverse agency action would be maintained.

148.    Defendant Sterling had notice of a pattern of unconstitutional acts because he received Legal Aid's August 10, 2017 letter containing such contentions.

149.    On information and belief subject to confirmation after opportunity for investigation and discovery, Defendant Sterling had notice of a pattern of unconstitutional acts based on information provided to him by Defendant Rosen about Legal Aid's contentions recited in Paragraphs 44 to 62 that ADHS unlawfully terminated or reduced the ARChoices benefits of

beneficiaries who appealed adverse agency action within 10 days and that such terminations or reductions harmed ARChoices beneficiaries

150.    Defendant Sterling was deliberately indifferent to ADHS's custom, policy, or practice of reducing or terminating Medicaid benefits prior to an evidentiary hearing because he did not propose or implement any process, procedure, training, or oversight to ensure continuing Medicaid services upon timely appeal despite having authority to do so.

151.    Defendant Sterling was deliberately indifferent to ADHS's custom, policy, or practice of reducing or terminating Medicaid benefits prior to an evidentiary hearing because he allowed subordinates to restore, reinstate, or continue the services of beneficiaries *only* where the beneficiary retained counsel who communicated with ADHS, which is a custom, practice, or policy that is unlawful.

152.    Defendant Sterling's deliberate indifference to ADHS's custom, policy, or practice of reducing or terminating Medicaid benefits prior to an evidentiary hearing harmed Ms. Elder because she filed a timely appeal without counsel, had her Medicaid services terminated, and, as a result, suffered the harms alleged in this Complaint.

153.    Whether or not Defendant Sterling supervised the ADHS employee responsible for identifying timely appeals and taking necessary to maintain Medicaid services or was the employee responsible for ensuring adequate procedures were in place, he has an ethical duty as an ADHS's Chief Counsel to inform Defendant Gillespie of potentially unconstitutional acts such as the pre-hearing termination or reduction of Medicaid benefits for beneficiaries who timely appeal.

154.    Whether or not Defendant Sterling supervised the ADHS employee responsible for identifying timely appeals and taking necessary to maintain Medicaid services or was the

employee responsible for ensuring adequate procedures were in place, he has an ethical duty as

ADHS's Chief Counsel attorney to inform his client-like entities within ADHS of potentially

unconstitutional acts involving their programs, such as the pre-hearing termination or reduction

of Medicaid benefits for beneficiaries who timely appeal.

155.   For purposes of ARChoices, Defendant Sterling's client-like entities within

ADHS has been at various times the Division of Aging and Adult Services, its successor entity,

and the Division of Provider Services and Quality Assurance.

### *Count Four: Constitutional Due Process Against Cloud in His Personal Capacity*

156.   The Plaintiff incorporates the contentions of Paragraphs 1 through 155.

157.   On information and belief subject to confirmation after an opportunity for

investigation or discovery, Defendant Cloud received information from Defendants Rosen and/or

Sterling about Legal Aid's contentions recited in in Paragraphs 44 to 62 that ADHS unlawfully

terminated or reduced the ARChoices benefits of beneficiaries who appealed adverse agency

action within 10 days and that such terminations or reductions harmed ARChoices beneficiaries.

158.   On information and belief subject to confirmation after an opportunity for

investigation or discovery, Defendant Cloud received Legal Aid's letter dated August 10, 2017

contending that ADHS did not ensure that ARChoices beneficiaries who appealed an adverse

action within 10 days would receive continuing services. *See* Paragraphs 57 (Exhibit N) and 59.

159.   As the head of the Division of Aging and Adult Services and the Division of

Provider Services and Quality Assurance, Defendant Cloud has had supervisorial responsibility

over the ARChoices program. On information and belief subject to confirmation after

opportunity for investigation or discovery, he supervised the employee responsible for

identifying Ms. Elder's timely appeal request and taking necessary steps to maintain Ms. Elder's Medicaid services.

160.    Alternatively, if there is no subordinate employee directly responsible for identifying Ms. Elder's timely appeal request and taking necessary steps, Defendant Cloud is the ADHS employee responsible for ensuring that there are adequate procedures to identify ARChoices beneficiaries' timely appeal requests and maintain their services.

161.    Defendant Cloud failed to adequately train or supervise his subordinates to ensure that the Medicaid services of beneficiaries who timely appealed an adverse agency action would be maintained.

162.    Defendant Cloud had notice of a pattern of unconstitutional acts because, on information and belief subject to confirmation after opportunity for investigation and discovery, he received Legal Aid's August 10, 2017 letter containing such contentions.

163.    On information and belief subject to confirmation after opportunity for investigation and discovery, Defendant Cloud had notice of a pattern of unconstitutional acts based on information provided to him by Defendants Rosen and/or Sterling about Legal Aid's contentions recited in Paragraphs 44 to 62 that ADHS unlawfully terminated or reduced the ARChoices benefits of beneficiaries who appealed adverse agency action within 10 days and that such terminations or reductions harmed ARChoices beneficiaries.

164.    On information and belief subject to confirmation after opportunity for investigation and discovery, Defendant Cloud had notice of a pattern of unconstitutional acts based on information provided to him by Medicaid providers such as caregiving agencies, which communicated with him about the termination or reduction of services for ARChoices beneficiaries who timely appealed adverse agency action.

-33-

165.     Defendant Cloud was deliberately indifferent to ADHS's custom, policy, or practice of reducing or terminating Medicaid benefits prior to an evidentiary hearing because he did not propose or implement any process, procedure, training, or oversight to ensure continuing ARChoices services upon timely appeal despite having authority to do so.

166.     Defendant Cloud was deliberately indifferent to ADHS's custom, policy, or practice of reducing or terminating Medicaid benefits prior to an evidentiary hearing because he authorized others to restore, reinstate, or continue the services of beneficiaries *only* where the beneficiary retained counsel who communicated with ADHS, which is a custom, practice, or policy that is unlawful.

167.     Defendant Cloud's deliberate indifference to ADHS's custom, policy, or practice of reducing or terminating Medicaid benefits prior to an evidentiary hearing harmed Ms. Elder because she filed a timely appeal without counsel, had her Medicaid services terminated, and, as a result, suffered the harms alleged in this Complaint.

168.     Whether or not Defendant Cloud supervised the ADHS employee responsible for identifying timely appeals and taking necessary to maintain Medicaid services or was the employee responsible for ensuring adequate procedures were in place, he has an obligation as a division director to inform Defendant Gillespie of potentially unconstitutional acts such as the pre-hearing termination or reduction of Medicaid benefits for beneficiaries who timely appeal.

169.     Defendant Cloud was exposed to constitutional due process principles through his participation in *Jacobs v. Gillespie,* 3:16-cv-119-DPM (E.D. Ark. Nov. 1, 2016), where the Court held that ADHS violated constitutional due process by failing to provide ARChoices beneficiaries with sufficient notice to apprise them of the reasons for the agency's adverse

-34-

actions. ADHS designated Cloud as a witness in response to a deposition under Fed. R. Civ. P. 30(b)(6) and as the agency representative at trial.

170. Defendant Cloud attended hearings and provided testimony before the legislature about the ARChoices program in September 2018 and December 2018, during which time the appeals process available to beneficiaries was discussed.

### *Count Five: Constitutional Due Process Against Gillespie in Her Personal Capacity*

171. The Plaintiff incorporates the contentions of Paragraphs 1 through 170.

172. On information and belief subject to confirmation after an opportunity for investigation or discovery, Defendant Gillespie received information from Defendants Rosen, Sterling, and/or Cloud about Legal Aid's contentions recited in in Paragraphs 44 to 62 that ADHS unlawfully terminated or reduced the ARChoices benefits of beneficiaries who appealed adverse agency action within 10 days and that such terminations or reductions harmed ARChoices beneficiaries.

173. On information and belief subject to confirmation after an opportunity for investigation or discovery, Defendant Gillespie received Legal Aid's letter dated August 10, 2017 contending that ADHS did not ensure that ARChoices beneficiaries who appealed an adverse action within 10 days would receive continuing services. *See* Paragraphs 57 (Exhibit N) and 59.

174. As the head of the ADHS, Defendant Gillespie has ultimate supervisorial responsibility over the state's Medicaid program, including ARChoices, and ADHS's appeals and hearing system. She supervised the employees responsible for ensuring that there are adequate procedures to identify beneficiaries' timely appeal requests and maintain their services.

175.    Defendant Gillespie failed to adequately train or supervise her subordinates to ensure that the Medicaid services of beneficiaries who timely appealed an adverse agency action would be maintained.

176.    Defendant Gillespie had notice of a pattern of unconstitutional acts because, on information and belief subject to confirmation after opportunity for investigation and discovery, she received Legal Aid's August 10, 2017 letter containing such contentions.

177.    On information and belief subject to confirmation after opportunity for investigation and discovery, Defendant Gillespie had notice of a pattern of unconstitutional acts based on information provided to her by Defendants Rosen, Sterling, and/or Cloud about Legal Aid's contentions recited in Paragraphs 44 to 62 that ADHS unlawfully terminated or reduced the ARChoices benefits of beneficiaries who appealed adverse agency action within 10 days and that such terminations or reductions harmed ARChoices beneficiaries.

178.    Defendant Gillespie was deliberately indifferent to ADHS's custom, policy, or practice of reducing or terminating Medicaid benefits prior to an evidentiary hearing because she did not propose or implement any process, procedure, training, or oversight to ensure continuing Medicaid services upon timely appeal despite having authority to do so.

179.    On information and belief subject to confirmation after opportunity for investigation or discovery, Defendant Gillespie was deliberately indifferent to ADHS's custom, policy, or practice of reducing or terminating Medicaid benefits prior to an evidentiary hearing because she authorized others to restore, reinstate, or continue the services of beneficiaries *only* where the beneficiary retained counsel who communicated with ADHS, which is a custom, practice, or policy that is unlawful.

-36-

180.    Defendant Gillespie's deliberate indifference to ADHS's custom, policy, or practice of reducing or terminating Medicaid benefits prior to an evidentiary hearing harmed Ms. Elder because she filed a timely appeal without counsel, had her Medicaid services terminated, and, as a result, suffered the harms alleged in this Complaint.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

1.    Upon motion by the Plaintiff, issue a temporary restraining order and/or a preliminary injunction requiring that Defendant Gillespie in her official capacity reinstate Ms. Elder's ARChoices Medicaid.

2.    Issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 that Defendants' actions, policies, procedures and practices as alleged herein are in violation of the Fourteenth Amendment of the U.S. Constitution.

3.    Grant a permanent injunction that orders Defendant Gillespie in her official capacity to reinstate Ms. Elder's ARChoices Medicaid and to implement a process to ensure that Ms. Elder and other Medicaid beneficiaries who timely appeal adverse agency actions receive continuing benefits pending the outcome of the evidentiary hearing.

4.    Grant a money judgment representing compensatory damages, including for all expenses incurred by Ms. Elder as a result of the loss of ARChoices, the value of the ARChoices services withheld, costs for delays in medically necessary care, mental anguish, physical suffering, and other compensatory damages. The amount of damages is to be determined at trial.

5.    Grant a money judgment representing punitive damages for Defendants' willful violations of the United States Constitution. The amount of damages is to be determined at trial.

6.      Grant a money judgment representing pre-judgment and post-judgment interest, if applicable.

7.      Award the Plaintiffs the costs of this action and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

8.      Retain jurisdiction over this action to ensure Defendants' compliance with the with the Court's orders.

9.      Waive the requirement for the posting of a bond as security for the entry of relief.

10.     Provide such other relief as the Court deems to be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues in this action and reserves the right to amend this Complaint, including, but not limited to, additional counts, plaintiffs, and facts supportive of damage claims as discovery develops.

**DATED: May 23, 2019**

Respectfully Submitted,

Trevor Hawkins

Kevin De Liban (2012044)
kdeliban@arlegalaid.org
LEGAL AID OF ARKANSAS
310 Mid-Continent Plaza, Suite 420
West Memphis, AR 72301
P: (800) 967-9224 x. 2206
F: (870) 732-6373

Trevor Hawkins (2017224)
thawkins@arlegalaid.org
LEGAL AID OF ARKANSAS
714 S. Main St.
Jonesboro, AR 72401
P: (800) 967-9224 x. 6313
F: (870) 910-5562


**LEGAL AID of ARKANSAS**
*Equal Access to Justice*

**Kevin De Liban <kdeliban@arlegalaid.org>**

---

## RE: FW: Case No. 20161048, K███ v. DHSKevin

**Kevin De Liban** <kdeliban@arlegalaid.org>                                   Fri, Apr 8, 2016 at 2:23 PM
To: Angela Foster <Angela.Foster@dhs.arkansas.gov>, Lisa McGee <lisa.mcgee@dhs.arkansas.gov>
Cc: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>

Dear Rich and Lisa:

I just left Rich a voice message about this and am copying Lisa in case Rich is out of the office. I really would like to get this resolved without me having to escalate. Mr. K██ is 79 years old, functionally deaf, and illiterate. He also has kidney failure and other physical ailments. He qualified for Elders Choices services in 2015. This year, upon re-evaluation, the agency determined that he no longer meets the eligibility criteria and sent a notice terminating his benefits. The notice was dated 1/27/16 (see attached), though it's not clear when it was sent.

As you know, claimants have a federally protected right to have Medicaid services maintained at the pre-termination/reduction levels if they file a fair hearing request within 10 days. See 42 CFR 431.230. That is a right that is enforceable using constitutional due process. Mr. K██ filed his fair hearing request on 2/5/16, as evidenced by the datestamp in the lower right-hand corner of the document. That is within the 10-day window. He affirmed that he wanted services continued pending a hearing decision.

Despite having timely filed his notice of appeal, the agency terminated his Medicaid. Mr. K██ is now left without the needed attendant care. Also importantly, he has a cardiology appointment this coming Wednesday to which he requires transport. He will miss it if his Medicaid is not turned back on.

On 3/30/16, I provided Angie the same documents attached to this email, which is all the proof she should need to restore his Medicaid. It is still not back on, and Angie is out sick today. Apparently, the agency is treating the datestamp on the notice of appeal as insufficient and wants some additional confirmation from OAH.

I have no more time for patience. I can't play with my client's health. The maintenance of services is a clear agency obligation. Please just turn his Medicaid back on or tell me what more you need from me (if reasonable) or tell me why he is not entitled to have it restored. I really don't want to have to escalate with the agency over something so basic.

Sincerely,

Kevin
[Quoted text hidden]

---

**2 attachments**

📄 **Notices of Action.pdf**
   141K

📄 **16.02.05--Notice of Appeal.pdf**
   68K

# Exhibit A

5/23/2019

Case 3:19-cv-00155-KGB   Document 2   Filed 05/23/19   Page 40 of 101
Legal Aid of Arkansas Mail - RE: FW: Case No. 20161048, K     v. DHSKevin



**LEGAL AID** of **ARKANSAS**
Equal Access to Justice

Kevin De Liban <kdeliban@arlegalaid.org>

---

## RE: FW: Case No. 20161048, K▮▮ v. DHSKevin

**Rich Rosen** <Rich.Rosen@dhs.arkansas.gov>                    Mon, Apr 11, 2016 at 1:20 PM
To: Kevin De Liban <kdeliban@arlegalaid.org>
Cc: Angela Foster <Angela.Foster@dhs.arkansas.gov>, Rich Rosen <Rich.Rosen@dhs.arkansas.gov>

Kevin-

Mr. K▮▮ is being reinstated for continuation of services pending appeal.  I left a message for you on your voicemail.

If you have any questions, please advise.

Richard Rosen

Arkansas Department of Human Services

Office of Chief Counsel

P.O. Box 1437, Slot S260

Little Rock, AR  72203

**501-320-6334**        Fax: 501-682-1390

**email address is:  rich.rosen@dhs.arkansas.gov**

**Confidentiality Notice:**  The information contained in this email message and any attachment(s) is the property of the State of Arkansas and may be protected by state and federal laws governing disclosure of private information.  It is intended solely for the use of the entity to whom this email is addressed.  If you are not the intended recipient, you are hereby notified that reading, copying or distributing this transmission is STRICTLY PROHIBITED.  The sender has not waived any applicable privilege by sending the accompanying transmission.  If you have received this transmission in error, please notify the sender by return and delete the message and attachment(s) from your system.

[Quoted text hidden]

**Exhibit A**


**LEGAL AID** of **ARKANSAS**
Equal Access to Justice

**Kevin De Liban <kdeliban@arlegalaid.org>**

---

## Case No. 20161333, L█████████ v. DHS

---

**Kevin De Liban <kdeliban@arlegalaid.org>**                                    Fri, Apr 15, 2016 at 6:23 PM
To: Brooks White <Brooks.White@dhs.arkansas.gov>, Rich Rosen <Rich.Rosen@dhs.arkansas.gov>

Dear Rich and Brooks:

Mr. L█████ is an AAPD (now, AR Choices) beneficiary who had his hours cut from 56 weekly to 32 weekly. As you can see from the attached documents, he requested an appeal within 10 days of receipt of his plan of care and specifically requested that his present level of services be maintained. Accordingly, pursuant to 42 CFR 431.220 and MS Policy Manual L-120, the agency is required to maintain his present level of services until an adverse hearing decision is rendered.

Today, Palco, the company with which DHS contracts to administer the provision of personal care hours, sent a case manager out to my client's home with a budget of 32 weekly hours.  This indicates that the agency did not properly process Mr. L█████ request for the maintenance of services.

Rich has recently encountered the agency's failure to maintain services on another client and was very helpful in resolving the agency's error. Please take action as soon as possible to ensure that Mr. L█████ services are reinstated to their full level pending the hearing outcome. Thank you.

Kevin


--
Kevin De Liban
Staff Attorney
Legal Aid of Arkansas
310 Mid-Continent Plaza, Suite 420
West Memphis, AR 72301
Phone: (870) 732-6370 x. 2206
Cell: (901) 834-0436
Fax: (870) 732-6373

---

**2 attachments**

📄 **16.03.07--to DHS--notice of appeal w FAX CONFIRMATION.pdf**
   93K

📄 **New Plan of Care.pdf**
   469K


**Exhibit B**



**LEGAL AID** *of* **ARKANSAS**
Equal Access to Justice

Kevin De Liban <kdeliban@arlegalaid.org>

---

## **URGENT**, J█████ v. DHS, Case No. 20161238

---

**Kevin De Liban** <kdeliban@arlegalaid.org>                                    Wed, Apr 27, 2016 at 6:28 PM
To: Amanda Land <Amanda.Land@dhs.arkansas.gov>, Otis Hogan <Otis.Hogan@dhs.arkansas.gov>, Rich Rosen
<Rich.Rosen@dhs.arkansas.gov>

Dear Mr. Hogan, Mr. Rosen, and Ms. Land:

Mr. Hogan, I am including you in the hopes that you may direct the agency to take immediate action to restore Ms. J█████
to her pre-reduction number of attendant care hours in this emergency situation, which is 46 per week.

Prior to the recent ArPath re-evaluation, Ms. J█████ had been entitled to 92 hours of attendant care services every two
weeks under the ArChoices/Elders Choice program (46 hours per week). *See* Page 1 of attachment. According to the plan
of care issued on February 24 pursuant to the re-evaluation, this amount was reduced to 153 per month (35 per week).
*See* Page 2 of attachment. Ms. J█████ son, L████ W███, her lawful power of attorney, appealed this decision with a
letter that OAH received on March 3. *See* Page 3 of attachment. Notably, **this was within the 10-day window for
continued receipt of services as required by 42 C.F.R. 431.230, which provides that "the agency may not terminate
or reduce services until a decision is rendered after the hearing."** *See also* MS Policy L-120. Then, on April 8, I
entered my notice of appearance and specifically requested that Ms. J█████ services be continued at previous levels until
the hearing decision is issued. *See* Page 4 of attachment.

Unfortunately, the agency failed to maintain services, and the agency's failure is now costing Ms. J█████ her health and
safety. Ms. J█████ is bed-ridden, nourished through a feeding tube, has Alzheimer's, and can no longer speak
meaningfully. Her care is provided by ArChoices-provided paid caregivers while her son works. Her son provides all of her
care outside of that provided through ArChoices. Today, her son received a call at work from the caregivers informing him
that Palco was denying them payment for time worked. They threatened to walk off the job. They also threatened not to
come provide any more care for Ms. J█████ without assurances of payment. Mr. W███ had to take a break to try and
work things out with the caregivers and speak with Palco to clarify the situation, but Palco has in its system authorization
for only 35 hours per week of care.

Mr. W███ cannot just leave his job *at any* time or take any needed day off without notice to care for his mother. But,
thanks to the agency's failure, Mr. W███ is now in a position of having to take time off work that may threaten his
continued employment or risk leaving his mom unattended. He should not be forced into such a situation when he has
done everything required under the law to maintain Ms. J█████ previous level of services.

This is my third case in the last three weeks where the agency has not continued services at the pre-reduction levels
despite timely fair hearing requests. Mr. Rosen has been involved in getting the other two restored. The agency is playing
with individuals' lives and livelihoods. Clients who are lucky enough to come to Legal Aid have some recourse, but I can
only imagine the challenges for all those that don't. Accordingly, I would highly recommend the agency immediately
institute measures to guarantee that individuals who file fair hearing requests within 10 days of receipt of notice of adverse
action have their service levels maintained at the pre-adverse action levels.

In the meanwhile, please make sure Ms. J█████ is reinstated to 46 hours per weeks of care pending a hearing decision,
as required by federal law. And, please make sure Palco knows this so that the situation with her paid caregivers can be
resolved on Thursday.

Respectfully,

Kevin

--
Kevin De Liban
Staff Attorney
Legal Aid of Arkansas
310 Mid-Continent Plaza, Suite 420
West Memphis, AR 72301
Phone: (870) 732-6370 x. 2206
Cell: (901) 834-0436
Fax: (870) 732-6373                                                          **Exhibit C**

5/23/2019

Case 3:19-cv-00155-KGB   Document 2   Filed 05/23/19   Page 43 of 101
Legal Aid of Arkansas Mail - **URGENT**, J█████ v. DHS, Case No. 20161238

**E-mail Attachment.pdf** 251K

**Exhibit C**

4/25/2019

Case 3:19-cv-00155-KGB   Document 2   Filed 05/23/19   Page 44 of 101
Legal Aid of Arkansas Mail - "Sensitive" Continuance of Hearing for D.W. #20162674



**Kevin De Liban <kdeliban@arlegalaid.org>**

## "Sensitive" Continuance of Hearing for D.W. #20162674

**Kevin De Liban** <kdeliban@arlegalaid.org>                                      Thu, Jul 28, 2016 at 10:38 AM
To: Brooks White <Brooks.White@dhs.arkansas.gov>
Cc: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>

Hi Brooks. I am contending both that he is entitled to continuing benefits pending the hearing outcome for two reasons:

(1) He requested a hearing within 10 days of receipt of the plan of care and . He received the plan of care on 4/25 and mailed his appeal request on 4/28. DHS received it on 5/3. See attached. There are ways this fact pattern can work under either 42 CFR 431.230 or .231.

(2) The plan of care states that "If you are currently receiving Medicaid assistance and request a hearing no later than 30 days from the business day following the postmark on the envelope with the plan of care that contains a revision which you wish to appeal, your assistance may continue at its present level pending a decision on your appeal." This independently creates a right to continued benefits.

I appreciate your prompt reinstatement of Mr. W███ benefits. There's no need for additional delay in the case of this highly vulnerable individual who has quadriplegia and is totally dependent on others, especially where you requested the continuance due to your unit's staffing issues.

Best,

Kevin
[Quoted text hidden]



🗔 **Client Appeal.PDF**
   65K

**Exhibit D**


**LEGAL AID** of **ARKANSAS**
Equal Access to Justice

**Kevin De Liban <kdeliban@arlegalaid.org>**

## ARChoices Hour Restorations

2 messages

---

**Kevin De Liban** <kdeliban@arlegalaid.org>                        Fri, Sep 23, 2016 at 2:52 AM
To: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>, Robert Briggs <Robert.Briggs@dhs.arkansas.gov>

Dear Rich and Bob:

Pursuant to 42 CFR 431.230, the following ARChoices appellants have all requested that their hours be restored to pre-
reduction levels pending the outcome of the hearing:

D█ W█ (20165944) [assigned to Bob]

M█ S█ (20167214) [assigned to Bob]

M█ D█ (dob █) [unknown assignment]

T█ D█ (20165312) [unknown assignment]

My last information is that none of them has had his/her hours restored. Please look into this and restore the hours as
soon as you can. Thank you.

Kevin

--
Kevin De Liban, Staff Attorney
Legal Aid of Arkansas--West Memphis
310 Mid-Continent Plaza, Suite 420
West Memphis, AR 72301
Phone: (870) 732-6370 x. 2206
Cell: (901) 834-0436
Fax: (870) 732-6373
Web | Facebook | Twitter

---

**Rich Rosen** <Rich.Rosen@dhs.arkansas.gov>                        Wed, Sep 28, 2016 at 3:29 PM
To: Kevin De Liban <kdeliban@arlegalaid.org>, Amy Pritchard <apritchard@arlegalaid.org>
Cc: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>, Robert Briggs <Robert.Briggs@dhs.arkansas.gov>

Kevin & Amy-

Our records show the services were restored.

Richard Rosen

Arkansas Department of Human Services

Office of Chief Counsel

P.O. Box 1437, Slot S260

Little Rock, AR  72203

**501-320-6334**        Fax: 501-682-1390                     **Exhibit E**

**email address is: rich.rosen@dhs.arkansas.gov**


SENSITIVE


**Confidentiality Notice**: The information contained in this email message and any attachment(s) is the property of the State of Arkansas and may be protected by state and federal laws governing disclosure of private information. It is intended solely for the use of the entity to whom this email is addressed. If you are not the intended recipient, you are hereby notified that reading, copying or distributing this transmission is STRICTLY PROHIBITED. The sender has not waived any applicable privilege by sending the accompanying transmission. If you have received this transmission in error, please notify the sender by return and delete the message and attachment(s) from your system.

[Quoted text hidden]

**The Arkansas Department of Human Services has determined that this message may contain confidential or otherwise protected information. We have used transport encryption to help protect this message while in transit to you. Please take all reasonable measures to protect any protected or confidential data that might be in this message, including the limitation of re-disclosure to the minimum number of recipients necessary. Please report any inappropriate disclosure to https://dhs.arkansas.gov/reporting or as required by law.**

**Exhibit E**



**Kevin De Liban <kdeliban@arlegalaid.org>**

## HCBS Case Hour Restorations

**Casey Trzcinski** <ctrzcinski@arlegalaid.org>                        Mon, Sep 26, 2016 at 4:30 PM
To: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>
Cc: Kevin De Liban <kdeliban@arlegalaid.org>

Hi Rich,

Because of the new notices, and subsequent new appeals, we continue to have issues regarding hour reinstatements.
The appellants listed below requested reinstatement in their appeals, and have not yet received it. Can you please give
me an update on the status of returning hours to these appellants as soon as possible? Thank you.



R█████ D████ (20166984)--White/Trzcinski
T█████ E████ (20166985)--White/Trzcinski
E█████ Y████ (20167073)--????/Trzcinski
T█████ D████ (????)--????/De Liban
J█████ D████ (20167009)--Windle/Trzcinski
P█████ S████ (????)--???/Trzcinski
M█████ S████ (????)--????/De Liban
D█████ W████ (20165944)--Briggs/De Liban
M█████ D████ (????)--????/De Liban
S█████ D████ (20165618)--Afsordeh/De Liban

On Thu, Aug 18, 2016 at 4:34 PM, Rich Rosen <Rich.Rosen@dhs.arkansas.gov> wrote:
[Quoted text hidden]

--
Casey Trzcinski
Staff Attorney
Legal Aid of Arkansas - Springdale
479-442-0600 ext. 4302
Web | Facebook | Twitter

**Exhibit F**

4/25/2019
Case 3:19-cv-00155-KGB  Document 2  Filed 05/23/19  Page 48 of 101
Legal Aid of Arkansas Mail - Fwd: Continued services in HCBS cases

 **LEGAL AID** *of* **ARKANSAS**
Equal Access to Justice

**Kevin De Liban <kdeliban@arlegalaid.org>**

---

## Fwd: Continued services in HCBS cases

---

**Casey Trzcinski** <ctrzcinski@arlegalaid.org>
To: Kevin De Liban <kdeliban@arlegalaid.org>

Thu, Oct 6, 2016 at 9:35 AM

Just FYI- this has been happening. I've been trying to give clients a heads up about it. Brooks, Bob, and Nick are the attorneys working these three cases and I brought it up with them, but haven't gotten any response yet.

---------- Forwarded message ----------
From: **Casey Trzcinski** <ctrzcinski@arlegalaid.org>
Date: Wed, Oct 5, 2016 at 5:01 PM
Subject: Continued services in HCBS cases
To: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>

Rich,

I have heard the same alarming story from three of my clients this week regarding their requests for reinstatement of their hours pending outcome of their ARChoices appeals. I wanted to bring this matter to your attention and ask for your help in remedying it as soon as possible.

My clients are telling me that the assessing nurse is calling them to "make sure they *really* want continued services" and emphasizing that "because, you know if you lose you'll have to pay it back." My clients who were cognizant enough to assess the situation felt that they were being actively discouraged from seeking reinstatement. My client who is less mentally sharp (which the nurse is aware of, because she assessed her as "cognitively impaired" in her most recent assessment) was scared and confused and felt pressured into rejecting continued services, after previously decided that she did want continued services when we spoke. The option of continued services is something we discuss at great length with our clients. We allow them to ask questions, answer them, and facilitate and informed decision.

This is wildly inappropriate and raises serious questions about party communications with a represented person, as well as inaccurate legal advice given by a non-attorney to a represented party. I understand if you need some additional paperwork signed when a potential debt is at stake, and I would be happy to go over this form with my clients and return it to the agency. However, these forms are being discussed by an adverse, non-attorney party with no mention at all to counsel. This is even more alarming in light of the fact that the non-attorney, adverse party rendering this inaccurate legal advice is the only witness the agency uses at its administrative hearings. The assessing nurse is quite literally the face of the adverse party to these clients.

In the future, please direct the Office of Long Term Care representatives to contact us regarding any communications with our clients on appeal-related matters if the appeal has not yet been resolved.

--
Casey Trzcinski
Staff Attorney
Legal Aid of Arkansas - Springdale
479-442-0600 ext. 4302
Web | Facebook | Twitter

--
Casey Trzcinski
Staff Attorney
Legal Aid of Arkansas - Springdale
479-442-0600 ext. 4302
Web | Facebook | Twitter

**Exhibit G**

**Exhibit G**

Case 3:19-cv-00155-KGB   Document 2   Filed 05/23/19   Page 50 of 101

5/21/2019                          Legal Aid of Arkansas Mail - ARChoices Hour Restoration Pending Appeal--S.V.S.

 **LEGAL AID of ARKANSAS**
*Equal Access to Justice*

Kevin De Liban <kdeliban@arlegalaid.org>

---

## ARChoices Hour Restoration Pending Appeal--S.V.S.

**Kevin De Liban** <kdeliban@arlegalaid.org>                          Wed, Apr 12, 2017 at 2:46 PM
To: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>

Dear Rich:

My client, S█████ V█ S███████, was informed her hours would be reduced pursuant to RUGs. I filed the attached notice of appeal on her behalf on 4/7/17 and specifically requested that her hours be maintained at pre-reduction levels pending the appeal. However, Palco has informed her that it is only authorized to pay the reduced number of hours, 161 hours per month (down from the 242 she has been receiving).

Please look into this and ensure that her hours are maintained so that the agency comports with the requirements of 42 CFR 431.230. Thanks for your prompt attention.

Best,

Kevin

--
Kevin De Liban, Staff Attorney
Legal Aid of Arkansas--West Memphis
310 Mid-Continent Plaza, Suite 420
West Memphis, AR 72301
Phone: (870) 732-6370 x. 2206
Cell: (901) 834-0436
Fax: (870) 732-6373
Web | Facebook | Twitter

---

**2 attachments**

📄 **17.04.07--V█ S███████--to DHS--notice of appearance.pdf**
219K

📄 **V█ S███████--DHS HIPAA--Updated.pdf**
36K

**Exhibit H**



**Kevin De Liban <kdeliban@arlegalaid.org>**

## ARChoices Hour Restoration Pending Appeal--S.V.S.

**Rich Rosen** <Rich.Rosen@dhs.arkansas.gov>                Wed, Apr 12, 2017 at 4:24 PM
To: Kevin De Liban <kdeliban@arlegalaid.org>
Cc: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>

Kevin-

As this matter was just appealed within the last several days, I instructed DAAS to restore the hours pending the hearing as requested in your April 7, 2017 notice of appeal letter attached to the email. PALCO will be informed no later than tomorrow morning.

I am glad we were able to address this issue quickly.

Richard Rosen

Arkansas Department of Human Services

Office of Chief Counsel

P.O. Box 1437, Slot S260

Little Rock, AR 72203

**501-320-6334**        Fax: 501-682-1390

**email address is: rich.rosen@dhs.arkansas.gov**

SENSITIVE

**Confidentiality Notice**: The information contained in this email message and any attachment(s) is the property of the State of Arkansas and may be protected by state and federal laws governing disclosure of private information. It is intended solely for the use of the entity to whom this email is addressed. If you are not the intended recipient, you are hereby notified that reading, copying or distributing this transmission is STRICTLY PROHIBITED. The sender has not waived any applicable privilege by sending the accompanying transmission. If you have received this transmission in error, please notify the sender by return and delete the message and attachment(s) from your system.

**From:** Kevin De Liban [mailto:kdeliban@arlegalaid.org]
**Sent:** Wednesday, April 12, 2017 2:46 PM
**To:** Rich Rosen <Rich.Rosen@dhs.arkansas.gov>
**Subject:** ARChoices Hour Restoration Pending Appeal--S.V.S.          **Exhibit H**

5/21/2019

Case 3:19-cv-00155-KGB   Document 2   Filed 05/23/19   Page 52 of 101
Legal Aid of Arkansas Mail - ARChoices Hour Restoration Pending Appeal--S.V.S.

Dear Rich:

My client, S█████ V█ S███████, was informed her hours would be reduced pursuant to RUGs. I filed the attached notice of appeal on her behalf on 4/7/17 and specifically requested that her hours be maintained at pre-reduction levels pending the appeal. However, Palco has informed her that it is only authorized to pay the reduced number of hours, 161 hours per month (down from the 242 she has been receiving).

Please look into this and ensure that her hours are maintained so that the agency comports with the requirements of 42 CFR 431.230. Thanks for your prompt attention.

Best,

Kevin

--

Kevin De Liban, Staff Attorney

Legal Aid of Arkansas--West Memphis

310 Mid-Continent Plaza, Suite 420

West Memphis, AR 72301

Phone: (870) 732-6370 x. 2206

Cell: (901) 834-0436

Fax: (870) 732-6373

Web | Facebook | Twitter

**The Arkansas Department of Human Services has determined that this message may contain confidential or otherwise protected information. We have used transport encryption to help protect this message while in transit to you. Please take all reasonable measures to protect any protected or confidential data that might be in this message, including the limitation of re-disclosure to the minimum number of recipients necessary. Please report any inappropriate disclosure to https://dhs.arkansas.gov/reporting or as required by law.**

**Exhibit H**

# LEGAL AID of ARKANSAS
### Equal Access to Justice

**Kevin De Liban <kdeliban@arlegalaid.org>**

## ARChoices Hour Restoration Pending Appeal--S.V.S.

**Kevin De Liban <kdeliban@arlegalaid.org>**                     Wed, Apr 12, 2017 at 5:18 PM
To: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>

Thanks, Rich. I hope there's a process in place for OAH to notify the relevant part of DHS to maintain benefit levels on appeals when required. It would certainly work better for everyone if DHS met its obligations without requiring clients to contact an attorney to then contact a DHS attorney.

On Wed, Apr 12, 2017 at 4:24 PM, Rich Rosen <Rich.Rosen@dhs.arkansas.gov> wrote:

Kevin-

As this matter was just appealed within the last several days, I instructed DAAS to restore the hours pending the hearing as requested in your April 7, 2017 notice of appeal letter attached to the email. PALCO will be informed no later than tomorrow morning.

I am glad we were able to address this issue quickly.

Richard Rosen

Arkansas Department of Human Services

Office of Chief Counsel

P.O. Box 1437, Slot S260

Little Rock, AR  72203

**501-320-6334**        Fax: 501-682-1390

**email address is:  rich.rosen@dhs.arkansas.gov**

SENSITIVE

**Confidentiality Notice**:  The information contained in this email message and any attachment(s) is the property of the State of Arkansas and may be protected by state and federal laws governing disclosure of private information.  It is intended solely for the use of the entity to whom this email is addressed.  If you are not the intended recipient, you are hereby notified that reading, copying or distributing this transmission is STRICTLY PROHIBITED.  The sender has not waived any applicable privilege by sending the accompanying transmission.  If you have received this transmission in error, please notify the sender by return and delete the message and attachment(s) from your system.

## Exhibit H

**From:** Kevin De Liban [mailto:kdeliban@arlegalaid.org]
**Sent:** Wednesday, April 12, 2017 2:46 PM
**To:** Rich Rosen <Rich.Rosen@dhs.arkansas.gov>
**Subject:** ARChoices Hour Restora on Pending Appeal--S.V.S.

Dear Rich:

My client, S███ V█ S████████, was informed her hours would be reduced pursuant to RUGs. I filed the attached
notice of appeal on her behalf on 4/7/17 and specifically requested that her hours be maintained at pre-reduction levels
pending the appeal. However, Palco has informed her that it is only authorized to pay the reduced number of hours,
161 hours per month (down from the 242 she has been receiving).

Please look into this and ensure that her hours are maintained so that the agency comports with the requirements of 42
CFR 431.230. Thanks for your prompt attention.

Best,

Kevin

--

Kevin De Liban, Staff Attorney

Legal Aid of Arkansas--West Memphis

310 Mid-Continent Plaza, Suite 420

West Memphis, AR 72301

Phone: (870) 732-6370 x. 2206

Cell: (901) 834-0436

Fax: (870) 732-6373

Web | Facebook | Twitter

**The Arkansas Department of Human Services has determined that this message may contain confidential or
otherwise protected information. We have used transport encryption to help protect this message while in
transit to you. Please take all reasonable measures to protect any protected or confidential data that might be
in this message, including the limitation of re-disclosure to the minimum number of recipients necessary.
Please report any inappropriate disclosure to https://dhs.arkansas.gov/reporting or as required by law.**

--
Kevin De Liban, Staff Attorney
Legal Aid of Arkansas--West Memphis
310 Mid-Continent Plaza, Suite 420
West Memphis, AR 72301
Phone: (870) 732-6370 x. 2206
Cell: (901) 834-0436
Fax: (870) 732-6373
Web | Facebook | Twitter

**Exhibit H**



**Kevin De Liban <kdeliban@arlegalaid.org>**

## 10-Day Reinstatements

**Kevin De Liban** <kdeliban@arlegalaid.org>                                        Wed, Jun 21, 2017 at 4:12 PM
To: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>, Casey Trzcinski <ctrzcinski@arlegalaid.org>, Amy Pritchard
<apritchard@arlegalaid.org>

Dear Rich:

Today, I filed the attached appeals with OAH for two clients facing ARChoices hour reductions, A██ K███ and
T██ D███. They are both well within the 10-day timeframe for continuing services, yet the care agencies for each
have already started to implement the reductions or plan to do so soon. Please make sure those reductions are not
implemented.

Also, as we have discussed in the past, I would encourage the agency to improve the communications between its
various employees to ensure that reductions are not implemented before the 10 days from the date of the notice of action.
In the majority of our clients cases, reductions are implemented immediately after the plan of care is finalized and sent to
the provider agency or Palco. This violates clients' rights to 10-day notice, 42 CFR 431.211, and to continued services
pending appeal. 42 CFR 431.230. Also, whatever disagreements persist between the agency and Legal Aid as to the
substantive adequacy of the notices, the notices clearly lack the required "the effective date of such action." 42 CFR
431.210.

Even if eventually restored once an Office of Chief Counsel attorney is assigned to the case, the unlawful reductions still
disrupt clients' lives. Premature reductions force them to re-do billing papers, arrange for unpaid care (if anyone is
available to provide it), live without care, and generally fret about their well-being and safety. DHS's compliance with its
clear obligations would remove such disruptions.

As always, Legal Aid is available to consult with the agency to ensure that it meets its obligations under relevant Medicaid
and constitutional law. We thank you for your attention.

Best,

Kevin

--
Kevin De Liban, Staff Attorney
Legal Aid of Arkansas--West Memphis
310 Mid-Continent Plaza, Suite 420
West Memphis, AR 72301
Phone: (870) 732-6370 x. 2206
Cell: (901) 834-0436
Fax: (870) 732-6373
Web | Facebook | Twitter

---

**2 attachments**

📄 **17.06.21--to DHS--notice of appearance--K**██**, A**██**.pdf**
219K

📄 **17.06.21--to DHS--notice of appearance--D**██**, T**██**.pdf**
219K

**Exhibit I**



**LEGAL AID of ARKANSAS**
Equal Access to Justice

**Kevin De Liban <kdeliban@arlegalaid.org>**

## 10-Day Reinstatements

**Rich Rosen** <Rich.Rosen@dhs.arkansas.gov>
To: Kevin De Liban <kdeliban@arlegalaid.org>
Cc: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>

Thu, Jun 22, 2017 at 4:18 PM

The care agencies have been advised to con nue the recipient's hours.


Richard Rosen

Arkansas Department of Human Services

Office of Chief Counsel

P.O. Box 1437, Slot S260

Little Rock, AR  72203

**501-320-6334**        Fax: 501-682-1390


**email address is:  rich.rosen@dhs.arkansas.gov**


SENSITIVE


**Confidentiality Notice:**  The information contained in this email message and any attachment(s) is the property of the State of Arkansas and may be protected by state and federal laws governing disclosure of private information.  It is intended solely for the use of the entity to whom this email is addressed.  If you are not the intended recipient, you are hereby notified that reading, copying or distributing this transmission is STRICTLY PROHIBITED.  The sender has not waived any applicable privilege by sending the accompanying transmission.  If you have received this transmission in error, please notify the sender by return and delete the message and attachment(s) from your system.



**From:** Kevin De Liban [mailto:kdeliban@arlegalaid.org]
**Sent:** Wednesday, June 21, 2017 4:12 PM
**To:** Rich Rosen <Rich.Rosen@dhs.arkansas.gov>; Casey Trzcinski <ctrzcinski@arlegalaid.org>; Amy Pritchard <apritchard@arlegalaid.org>
**Subject:** 10-Day Reinstatements


Dear Rich:


Today, I filed the attached appeals with OAH for two clients facing ARChoices hour reductions, A███ K███ and T███ D███. They are both well within the 10-day timeframe for continuing services, yet the care agencies for each

**Exhibit I**

have already started to implement the reductions or plan to do so soon. Please make sure those reductions are not implemented.

Also, as we have discussed in the past, I would encourage the agency to improve the communications between its various employees to ensure that reductions are not implemented before the 10 days from the date of the notice of action. In the majority of our clients cases, reductions are implemented immediately after the plan of care is finalized and sent to the provider agency or Palco. This violates clients' rights to 10-day notice, 42 CFR 431.211, and to continued services pending appeal. 42 CFR 431.230. Also, whatever disagreements persist between the agency and Legal Aid as to the substantive adequacy of the notices, the notices clearly lack the required "the effective date of such action." 42 CFR 431.210.

Even if eventually restored once an Office of Chief Counsel attorney is assigned to the case, the unlawful reductions still disrupt clients' lives. Premature reductions force them to re-do billing papers, arrange for unpaid care (if anyone is available to provide it), live without care, and generally fret about their well-being and safety. DHS's compliance with its clear obligations would remove such disruptions.

As always, Legal Aid is available to consult with the agency to ensure that it meets its obligations under relevant Medicaid and constitutional law. We thank you for your attention.

Best,

Kevin

--

Kevin De Liban, Staff Attorney

Legal Aid of Arkansas--West Memphis

310 Mid-Continent Plaza, Suite 420

West Memphis, AR 72301

Phone: (870) 732-6370 x. 2206

Cell: (901) 834-0436

Fax: (870) 732-6373

Web | Facebook | Twitter

**The Arkansas Department of Human Services has determined that this message may contain confidential or otherwise protected information. We have used transport encryption to help protect this message while in transit to you. Please take all reasonable measures to protect any protected or confidential data that might be in this message, including the limitation of re-disclosure to the minimum number of recipients necessary. Please report any inappropriate disclosure to https://dhs.arkansas.gov/reporting or as required by law.**

**Exhibit I**

 **LEGAL AID** of **ARKANSAS**
Equal Access to Justice

**Kevin De Liban <kdeliban@arlegalaid.org>**

## 10-Day Reinstatements

**Kevin De Liban <kdeliban@arlegalaid.org>**      Fri, Jun 23, 2017 at 10:06 AM
To: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>, Casey Trzcinski <ctrzcinski@arlegalaid.org>, Amy Pritchard
<apritchard@arlegalaid.org>

Thanks, Rich. I appreciate the help on the cases of Ms. K▮▮ and Ms. D▮. Here are several other clients
whose hours weren't continued immediately or who have suffered delays in restoration:



Please advise the nurses and care agencies to ensure their hours are continued as well. Again, I would hope the agency
implements a system-wide resolution to this issue sooner rather than later.

Kevin

On Thu, Jun 22, 2017 at 4:18 PM, Rich Rosen <Rich.Rosen@dhs.arkansas.gov> wrote:

The care agencies have been advised to continue the recipient's hours.

Richard Rosen

Arkansas Department of Human Services

Office of Chief Counsel

P.O. Box 1437, Slot S260

Little Rock, AR 72203

**501-320-6334**      Fax: 501-682-1390

**email address is: rich.rosen@dhs.arkansas.gov**

SENSITIVE

**Confidentiality Notice:** The information contained in this email message and any attachment(s) is the property of
the State of Arkansas and may be protected by state and federal laws governing disclosure of private information. It
is intended solely for the use of the entity to whom this email is addressed. If you are not the intended recipient, you
are hereby notified that reading, copying or distributing this transmission is STRICTLY PROHIBITED. The sender
has not waived any applicable privilege by sending the accompanying transmission. If you have received this
transmission in error, please notify the sender by return and delete the message and attachment(s) from your
system. **Exhibit J**

**From:** Kevin De Liban [mailto:kdeliban@arlegalaid.org]
**Sent:** Wednesday, June 21, 2017 4:12 PM
**To:** Rich Rosen <Rich.Rosen@dhs.arkansas.gov>; Casey Trzcinski <ctrzcinski@arlegalaid.org>; Amy Pritchard <apritchard@arlegalaid.org>
**Subject:** 10-Day Reinstatements

Dear Rich:

Today, I filed the attached appeals with OAH for two clients facing ARChoices hour reductions, A███ K███ and ███ D███. They are both well within the 10-day timeframe for continuing services, yet the care agencies for each have already started to implement the reductions or plan to do so soon. Please make sure those reductions are not implemented.

Also, as we have discussed in the past, I would encourage the agency to improve the communications between its various employees to ensure that reductions are not implemented before the 10 days from the date of the notice of action. In the majority of our clients cases, reductions are implemented immediately after the plan of care is finalized and sent to the provider agency or Palco. This violates clients' rights to 10-day notice, 42 CFR 431.211, and to continued services pending appeal. 42 CFR 431.230. Also, whatever disagreements persist between the agency and Legal Aid as to the substantive adequacy of the notices, the notices clearly lack the required "the effective date of such action." 42 CFR 431.210.

Even if eventually restored once an Office of Chief Counsel attorney is assigned to the case, the unlawful reductions still disrupt clients' lives. Premature reductions force them to re-do billing papers, arrange for unpaid care (if anyone is available to provide it), live without care, and generally fret about their well-being and safety. DHS's compliance with its clear obligations would remove such disruptions.

As always, Legal Aid is available to consult with the agency to ensure that it meets its obligations under relevant Medicaid and constitutional law. We thank you for your attention.

Best,

Kevin

--

Kevin De Liban, Staff Attorney

Legal Aid of Arkansas--West Memphis

310 Mid-Continent Plaza, Suite 420

West Memphis, AR 72301

Phone: (870) 732-6370 x. 2206

Cell: (901) 834-0436

Fax: (870) 732-6373

**Exhibit J**

Web | Facebook | Twitter

**The Arkansas Department of Human Services has determined that this message may contain confidential or otherwise protected information. We have used transport encryption to help protect this message while in tran it to you Plea e take all rea onable mea ure to protect any protected or confidential data that might be in this message, including the limitation of re-disclosure to the minimum number of recipients necessary. Please report any inappropriate disclosure to https://dhs.arkansas.gov/reporting or as required by law.**

--
Kevin De Liban, Staff Attorney
Legal Aid of Arkan a  We t Memphi
310 Mid-Continent Plaza, Suite 420
West Memphis, AR 72301
Phone: (870) 732-6370 x. 2206
Cell  (901) 834 0436
Fax: (870) 732-6373
Web | Facebook | Twitter

**Exhibit J**



**LEGAL AID of ARKANSAS**
Equal Access to Justice

Kevin De Liban <kdeliban@arlegalaid.org>

---

## AK - Palco

---

**Rich Rosen** <Rich.Rosen@dhs.arkansas.gov>
To: "kdeliban@arlegalaid.org" <kdeliban@arlegalaid.org>
Cc: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>

Mon, Jul 17, 2017 at 12:18 PM

Kevin-

In follow-up to our telephone conversation early Friday evening, DAAS advised PALCO to restore the care plan pending A▬▬ K▬▬ ARChoices appeal.

Richard Rosen

Arkansas Department of Human Services

Office of Chief Counsel

P.O. Box 1437, Slot S260

Little Rock, AR  72203

**501-320-6334**      Fax: 501-682-1390

**email address is:  rich.rosen@dhs.arkansas.gov**

SENSITIVE

**Confidentiality Notice**:  The information contained in this email message and any attachment(s) is the property of the State of Arkansas and may be protected by state and federal laws governing disclosure of private information.  It is intended solely for the use of the entity to whom this email is addressed.  If you are not the intended recipient, you are hereby notified that reading, copying or distributing this transmission is STRICTLY PROHIBITED.  The sender has not waived any applicable privilege by sending the accompanying transmission.  If you have received this transmission in error, please notify the sender by return and delete the message and attachment(s) from your system.

**The Arkansas Department of Human Services has determined that this message may contain confidential or otherwise protected information. We have used transport encryption to help protect this message while in transit to you. Please take all reasonable measures to protect any protected or confidential data that might be in this message, including the limitation of re-disclosure to the minimum number of recipients necessary. Please report any inappropriate disclosure to https://dhs.arkansas.gov/reporting or as required by law.**

# Exhibit K

**LEGAL AID OF ARKANSAS**
*Equal Access to Justice*

Kevin De Liban <kdeliban@arlegalaid.org>

## ARChoices Attendant Care Hours

**Kevin De Liban** <kdeliban@arlegalaid.org>                    Fri, Jul 21, 2017 at 4:26 PM
To: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>

Dear Rich:

We filed an appeal for ARChoices beneficiary R█████ D█████ (dob █████████) today, which was within the 10-day window for continued services. Please see the attached hearing request and ask DAAS to make sure that Mr. D█████ hours are not reduced until an adverse hearing decision is issued. Thanks for your help.

Kevin

--
Kevin De Liban, Staff Attorney
Legal Aid of Arkansas--West Memphis
310 Mid-Continent Plaza, Suite 420
West Memphis, AR 72301
Phone: (870) 732-6370 x. 2206
Cell: (901) 834-0436
Fax: (870) 732-6373
Web | Facebook | Twitter

📄 **17.07.21--to DHS--notice of appeal--D█████, R█████ .pdf**
219K

**Exhibit L**



**Kevin De Liban <kdeliban@arlegalaid.org>**

## ARChoices Attendant Care Hours

**Rich Rosen** <Rich.Rosen@dhs.arkansas.gov>                    Fri, Jul 21, 2017 at 4:40 PM
To: Kevin De Liban <kdeliban@arlegalaid.org>

Kevin-

I forwarded your email to DAAS and, due to the time, will confirm continuation of services pending appeal on Monday morning.

Sent from my iPhone

On Jul 21, 2017, at 4:26 PM, "Kevin De Liban" <kdeliban@arlegalaid.org> wrote:

> Dear Rich:
>
> We filed an appeal for ARChoices beneficiary R█████ D████ (dob █████████) today, which was within the 10-day window for continued services. Please see the attached hearing request and ask DAAS to make sure that Mr. D█████ hours are not reduced until an adverse hearing decision is issued. Thanks for your help.
>
> Kevin
>
> --
> Kevin De Liban, Staff Attorney
> Legal Aid of Arkansas--West Memphis
> 310 Mid-Continent Plaza, Suite 420
> West Memphis, AR 72301
> Phone: (870) 732-6370 x. 2206
> Cell: (901) 834-0436
> Fax: (870) 732-6373
> Web | Facebook | Twitter
>
> <17.07.21--to DHS--notice of appeal--D████, R████.pdf>

**Exhibit L**



**Kevin De Liban <kdeliban@arlegalaid.org>**

## 10-Day Reinstatements

**Kevin De Liban <kdeliban@arlegalaid.org>**      Thu, Jul 27, 2017 at 4:22 PM
To: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>, Nicholas Windle <Nicholas.Windle@dhs.arkansas.gov>

Rich--

I sent you this list on 6/23 about people whose hours hadn't been restored despite appeal within 10 days of the notice of action. S████ B█████ hours have still not been restored despite the timely request to maintain services at pre-reduction level (see attached notice of appeal with request for continued benefits filed on 5/11/17). The plan of care should be backdated to authorize 242 hours per month as of the date of the plan of care was executed.

I'm copying Nick Windle since he is the attorney assigned to this case.

Kevin

On Fri, Jun 23, 2017 at 10:06 AM, Kevin De Liban <kdeliban@arlegalaid.org> wrote:
> Thanks, Rich. I appreciate the help on the cases of Ms. K████ and Ms. D███. Here are several other clients whose hours weren't continued immediately or who have suffered delays in restoration:



> Please advise the nurses and care agencies to ensure their hours are continued as well. Again, I would hope the agency implements a system-wide resolution to this issue sooner rather than later.
>
> Kevin

On Thu, Jun 22, 2017 at 4:18 PM, Rich Rosen <Rich.Rosen@dhs.arkansas.gov> wrote:

> The care agencies have been advised to continue the recipient's hours.
>
>
> Richard Rosen
>
> Arkansas Department of Human Services
>
> Office of Chief Counsel
>
> P.O. Box 1437, Slot S260
>
> Little Rock, AR 72203
>
> 501-320-6334      Fax: 501-682-1390
>
>
> **email address is: rich.rosen@dhs.arkansas.gov**

**Exhibit M**

SENSITIVE

**Confidentiality Notice**: The information contained in this email message and any attachment(s) is the property of the State of Arkansas and may be protected by state and federal laws governing disclosure of private information. It is intended solely for the use of the entity to whom this email is addressed. If you are not the intended recipient, you are hereby notified that reading, copying or distributing this transmission is STRICTLY PROHIBITED. The sender has not waived any applicable privilege by sending the accompanying transmission. If you have received this transmission in error, please notify the sender by return and delete the message and attachment(s) from your system.

**From:** Kevin De Liban [mailto:kdeliban@arlegalaid.org]
**Sent:** Wednesday, June 21, 2017 4:12 PM
**To:** Rich Rosen <Rich.Rosen@dhs.arkansas.gov>; Casey Trzcinski <ctrzcinski@arlegalaid.org>; Amy Pritchard <apritchard@arlegalaid.org>
**Subject:** 10-Day Reinstatements

Dear Rich:

Today, I filed the attached appeals with OAH for two clients facing ARChoices hour reductions, A████ K████ and Tammy D obbs. They are both well within the 10-day timeframe for continuing services, yet the care agencies for each have already started to implement the reductions or plan to do so soon. Please make sure those reductions are not implemented.

Also, as we have discussed in the past, I would encourage the agency to improve the communications between its various employees to ensure that reductions are not implemented before the 10 days from the date of the notice of action. In the majority of our clients cases, reductions are implemented immediately after the plan of care is finalized and sent to the provider agency or Palco. This violates clients' rights to 10-day notice, 42 CFR 431.211, and to continued services pending appeal. 42 CFR 431.230. Also, whatever disagreements persist between the agency and Legal Aid as to the substantive adequacy of the notices, the notices clearly lack the required "the effective date of such action." 42 CFR 431.210.

Even if eventually restored once an Office of Chief Counsel attorney is assigned to the case, the unlawful reductions still disrupt clients' lives. Premature reductions force them to re-do billing papers, arrange for unpaid care (if anyone is available to provide it), live without care, and generally fret about their well-being and safety. DHS's compliance with its clear obligations would remove such disruptions.

As always, Legal Aid is available to consult with the agency to ensure that it meets its obligations under relevant Medicaid and constitutional law. We thank you for your attention.

Best,

Kevin

--

**Exhibit M**

Kevin De Liban, Staff Attorney

Legal Aid of Arkansas--West Memphis

310 Mid-Continent Plaza, Suite 420

West Memphis, AR 72301

Phone: (870) 732-6370 x. 2206

Cell: (901) 834-0436

Fax: (870) 732-6373

Web | Facebook | Twitter

**The Arkansas Department of Human Services has determined that this message may contain confidential or otherwise protected information. We have used transport encryption to help protect this message while in transit to you. Please take all reasonable measures to protect any protected or confidential data that might be in this message, including the limitation of re-disclosure to the minimum number of recipients necessary. Please report any inappropriate disclosure to https://dhs.arkansas.gov/reporting or as required by law.**

--
Kevin De Liban, Staff Attorney
Legal Aid of Arkansas--West Memphis
310 Mid-Continent Plaza, Suite 420
West Memphis, AR 72301
Phone: (870) 732-6370 x. 2206
Cell: (901) 834-0436
Fax: (870) 732-6373
Web | Facebook | Twitter

--
Kevin De Liban, Staff Attorney
Legal Aid of Arkansas--West Memphis
310 Mid-Continent Plaza, Suite 420
West Memphis, AR 72301
Phone: (870) 732-6370 x. 2206
Cell: (901) 834-0436
Fax: (870) 732-6373
Web | Facebook | Twitter

**17.05.11--to DHS--notice of appearance--B████ pdf**
219K

**Exhibit M**



**LEGAL AID** *of* **ARKANSAS**
Equal Access to Justice

Kevin De Liban <kdeliban@arlegalaid.org>

## 10-Day Reinstatements

**Nicholas Windle** <Nicholas.Windle@dhs.arkansas.gov>                    Fri, Jul 28, 2017 at 9:54 AM
To: Kevin De Liban <kdeliban@arlegalaid.org>, Rich Rosen <Rich.Rosen@dhs.arkansas.gov>

Kevin,

Mr. B████ hours were restored on July 7, 2017, effective May 15, 2017 pending the outcome of the appeal.

*Nick R. Windle*

Office of Chief Counsel

Arkansas Department of Human Services

P.O. Box 1437, Slot S260

Little Rock, AR 72203

Phone: 501-320-6371

Facsimile: 501-682-1390

nicholas.windle@dhs.arkansas.gov

**CONFIDENTIALITY NOTICE:** The information contained in this email message and any attachment(s) is the property of the State of Arkansas and may be protected by state and federal laws governing disclosure of private or confidential information. It is intended solely for the use of the entity to whom this email is addressed. If you are not the intended recipient, you are hereby notified that reading, copying or distribution this transmission is STRICTLY PROHIBITED. The sender has not waived any applicable privilege by sending the accompanying transmission. If you have received this transmission in error, please notify the sender by return and delete the message and attachment(s) from your system. Thank you.

sensitive

**From:** Kevin De Liban [mailto:kdeliban@arlegalaid.org]
**Sent:** Thursday, July 27, 2017 4:23 PM
**To:** Rich Rosen; Nicholas Windle
**Subject:** Re: 10-Day Reinstatements

Rich--

I sent you this list on 6/23 about people whose hours hadn't been restored despite appeal within 10 days of the notice of action. S███ B████ hours have still not been restored despite the timely request to maintain services at pre-reduction level (see attached notice of appeal with request for continued benefits filed on 5/11/17). The plan of care should be backdated to authorize 242 hours per month as of the date of the plan of care was executed.

**Exhibit M**

I'm copying Nick Windle since he is the attorney assigned to this case.


Kevin


On Fri, Jun 23, 2017 at 10:06 AM, Kevin De Liban <kdeliban@arlegalaid.org> wrote:

Thanks, Rich. I appreciate the help on the cases of Ms. K▇▇▇ and Ms. D▇▇▇. Here are several other clients whose hours weren't continued immediately or who have suffered delays in restoration:



Please advise the nurses and care agencies to ensure their hours are continued as well. Again, I would hope the agency implements a system-wide resolution to this issue sooner rather than later.


Kevin


On Thu, Jun 22, 2017 at 4:18 PM, Rich Rosen <Rich.Rosen@dhs.arkansas.gov> wrote:

The care agencies have been advised to continue the recipient's hours.


Richard Rosen

Arkansas Department of Human Services

Office of Chief Counsel

P.O. Box 1437, Slot S260

Little Rock, AR  72203

**501-320-6334**        Fax: 501-682-1390


**email address is:  rich.rosen@dhs.arkansas.gov**


SENSITIVE                                                           **Exhibit M**

**Confidentiality Notice**: The information contained in this email message and any attachment(s) is the property of the State of Arkansas and may be protected by state and federal laws governing disclosure of private information. It is intended solely for the use of the entity to whom this email is addressed. If you are not the intended recipient, you are hereby notified that reading, copying or distributing this transmission is STRICTLY PROHIBITED. The sender has not waived any applicable privilege by sending the accompanying transmission. If you have received this transmission in error, please notify the sender by return and delete the message and attachment(s) from your system.

**From:** Kevin De Liban [mailto:kdeliban@arlegalaid.org]
**Sent:** Wednesday, June 21, 2017 4:12 PM
**To:** Rich Rosen <Rich.Rosen@dhs.arkansas.gov>; Casey Trzcinski <ctrzcinski@arlegalaid.org>; Amy Pritchard <apritchard@arlegalaid.org>
**Subject:** 10-Day Reinstatements

Dear Rich:

Today, I filed the attached appeals with OAH for two clients facing ARChoices hour reductions, A████ K████ and T████ D████. They are both well within the 10-day timeframe for continuing services, yet the care agencies for each have already started to implement the reductions or plan to do so soon. Please make sure those reductions are not implemented.

Also, as we have discussed in the past, I would encourage the agency to improve the communications between its various employees to ensure that reductions are not implemented before the 10 days from the date of the notice of action. In the majority of our clients cases, reductions are implemented immediately after the plan of care is finalized and sent to the provider agency or Palco. This violates clients' rights to 10-day notice, 42 CFR 431.211, and to continued services pending appeal. 42 CFR 431.230. Also, whatever disagreements persist between the agency and Legal Aid as to the substantive adequacy of the notices, the notices clearly lack the required "the effective date of such action." 42 CFR 431.210.

Even if eventually restored once an Office of Chief Counsel attorney is assigned to the case, the unlawful reductions still disrupt clients' lives. Premature reductions force them to re-do billing papers, arrange for unpaid care (if anyone is available to provide it), live without care, and generally fret about their well-being and safety. DHS's compliance with its clear obligations would remove such disruptions.

As always, Legal Aid is available to consult with the agency to ensure that it meets its obligations under relevant Medicaid and constitutional law. We thank you for your attention.

Best,

Kevin

--

Kevin De Liban, Staff Attorney

Legal Aid of Arkansas--West Memphis

**Exhibit M**

310 Mid-Continent Plaza, Suite 420

West Memphis, AR 72301

Phone: (870) 732-6370 x. 2206

Cell: (901) 834-0436

Fax: (870) 732-6373

Web | Facebook | Twitter

**The Arkansas Department of Human Services has determined that this message may contain confidential or otherwise protected information. We have used transport encryption to help protect this message while in transit to you. Please take all reasonable measures to protect any protected or confidential data that might be in this message, including the limitation of re-disclosure to the minimum number of recipients necessary. Please report any inappropriate disclosure to https://dhs.arkansas.gov/reporting or as required by law.**

--

Kevin De Liban, Staff Attorney

Legal Aid of Arkansas--West Memphis

310 Mid-Continent Plaza, Suite 420

West Memphis, AR 72301

Phone: (870) 732-6370 x. 2206

Cell: (901) 834-0436

Fax: (870) 732-6373

Web | Facebook | Twitter

--

Kevin De Liban, Staff Attorney

Legal Aid of Arkansas--West Memphis

310 Mid-Continent Plaza, Suite 420

West Memphis, AR 72301

Phone: (870) 732-6370 x. 2206

Cell: (901) 834-0436

Fax: (870) 732-6373

Web | Facebook | Twitter

**The Arkansas Department of Human Services has determined that this message may contain confidential or otherwise protected information. We have used transport encryption to help protect this message while in transit to you. Please take all reasonable measures to protect any protected or confidential data that might be in this message, including the limitation of re-disclosure to the minimum number of recipients necessary. Please report any inappropriate disclosure to https://dhs.arkansas.gov/reporting or as required by law.** **Exhibit M**

**Exhibit M**

 **LEGAL AID of ARKANSAS**   Equal Access to Justice

**Kevin De Liban <kdeliban@arlegalaid.org>**

## 10-Day Reinstatements

**Kevin De Liban** <kdeliban@arlegalaid.org>          Wed, Aug 9, 2017 at 3:54 PM
To: Nicholas Windle <Nicholas.Windle@dhs.arkansas.gov>
Cc: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>

Dear Rich and Nick:

Despite my multiple previous inquiries on 6/23/17 and 7/27/17 and your statements that Mr. B███████ hours have been reinstated pursuant 42 CFR 431.230, his caregiver is still unable to bill for the full 56 attendant care hours per week (112 per 14-day period; 242 monthly) that Mr. B█████ was allotted as of the time of the agency's adverse action. Rather, Palco is only authorizing payment for up to 37 hours per week (74 per 14-day period; 161 per month). Can you please ensure that the plan of care is amended back to 3/31/17 and that it is sent to Palco so that Palco will authorize payment for the full amount of hours to which Mr. B█████ has been entitled by since the agency last assessed him? Thank you.

Kevin

On Fri, Jul 28, 2017 at 10:12 AM, Kevin De Liban <kdeliban@arlegalaid.org> wrote:
> The effective date should be back to the date the new plan of care took effect (roughly, 3/31/17) to ensure that there is no change from the 56 weekly hours (242 monthly) that S█████ had been receiving prior to the adverse action. Once properly amended, can you please confirm that the amended plan of care is sent to Palco so that Palco will authorize payment for 56 weekly hours for care already provided and that will be provided henceforth (until the hearing decision is issued)?

> On Fri, Jul 28, 2017 at 9:54 AM, Nicholas Windle <Nicholas.Windle@dhs.arkansas.gov> wrote:
>> Kevin,
>>
>>
>> Mr. B███████ hours were restored on July 7, 2017, effective May 15, 2017 pending the outcome of the appeal.
>>
>>
>> *Nick R. Windle*
>>
>> Office of Chief Counsel
>>
>> Arkansas Department of Human Services
>>
>> P.O. Box 1437, Slot S260
>>
>> Little Rock, AR 72203
>>
>> Phone: 501-320-6371
>>
>> Facsimile: 501-682-1390
>>
>> nicholas.windle@dhs.arkansas.gov

**CONFIDENTIALITY NOTICE:** The information contained in this email message and any attachment(s) is the property of the State of Arkansas and may be protected by state and federal laws governing disclosure of private or confidential information. It is intended solely for the use of the entity to whom this email is addressed. If you are not the intended recipient, you are hereby notified that reading, copying or distribution this transmission is STRICTLY PROHIBITED. The sender has not waived any applicable privilege by sending the accompanying transmission. If you have received this transmission in error, please notify the sender by return and delete the message and attachment(s) from your system. Thank you.

**Exhibit M**

sensitive

**From:** Kevin De Liban [mailto:kdeliban@arlegalaid.org]
**Sent:** Thursday, July 27, 2017 4:23 PM
**To:** Rich Rosen; Nicholas Windle
**Subject:** Re: 10-Day Reinstatements

Rich--

I sent you this list on 6/23 about people whose hours hadn't been restored despite appeal within 10 days of the notice of action. S███ B████ hours have still not been restored despite the timely request to maintain services at pre-reduction level (see attached notice of appeal with request for continued benefits filed on 5/11/17). The plan of care should be backdated to authorize 242 hours per month as of the date of the plan of care was executed.

I'm copying Nick Windle since he is the attorney assigned to this case.

Kevin

On Fri, Jun 23, 2017 at 10:06 AM, Kevin De Liban <kdeliban@arlegalaid.org> wrote:

Thanks, Rich. I appreciate the help on the cases of Ms. K███ and Ms. D███ . Here are several other clients whose hours weren't continued immediately or who have suffered delays in restoration:

A███ W███

L███ J███

S███ B███

M███ D███

C███ F███

W███ B███

Please advise the nurses and care agencies to ensure their hours are continued as well. Again, I would hope the agency implements a system-wide resolution to this issue sooner rather than later.

Kevin

On Thu, Jun 22, 2017 at 4:18 PM, Rich Rosen <Rich.Rosen@dhs.arkansas.gov> wrote:

The care agencies have been advised to continue the recipient's hours.                    **Exhibit M**

Richard Rosen

Arkansas Department of Human Services

Office of Chief Coun el

P.O. Box 1437, Slot S260

Little Rock, AR  72203

**501-320-6334**      Fax: 501-682-1390


**email address is:  rich.rosen@dhs.arkansas.gov**


SENSITIVE


**Confidentiality Notice**: The information contained in this email message and any attachment(s) is the property of the State of Arkansas and may be protected by state and federal laws governing disclosure of private information. It i  intended  olely for the u e of the entity to whom thi  email i  addre ed  If you are not the intended recipient, you are hereby notified that reading, copying or distributing this transmission is STRICTLY PROHIBITED.  The sender has not waived any applicable privilege by sending the accompanying transmission.  If you have received this transmission in error, please notify the sender by return and delete the message and attachment(s) from your  y tem


**From:** Kevin De Liban [mailto kdeliban@arlegalaid org]
**Sent:** Wednesday, June 21, 2017 4:12 PM
**To:** Rich Rosen  Rich Ro en@dh  arkan a  gov ; Casey Trzcinski  ctrzcin ki@arlegalaid org ; Amy Pritchard <apritchard@arlegalaid.org>
**Subject:** 10 Day Reinstatements


Dear Rich:


Today, I filed the attached appeals with OAH for two clients facing ARChoices hour reductions, A▋▋ K▋▋ and ▋▋ D▋▋  They are both well within the 10 day timeframe for continuing  ervice , yet the care agencie  for each have already started to implement the reductions or plan to do so soon. Please make sure those reductions are not implemented.


Also, as we have discussed in the past, I would encourage the agency to improve the communications between its various employees to ensure that reductions are not implemented before the 10 days from the date of the notice of action  In the majority of our client  ca e , reduction  are implemented immediately after the plan of care i  finalized and sent to the provider agency or Palco. This violates clients' rights to 10-day notice, 42 CFR 431.211, and to continued services pending appeal. 42 CFR 431.230. Also, whatever disagreements persist between the agency and Legal Aid as to the substantive adequacy of the notices, the notices clearly lack the required "the effective date of  uch action " 42 CFR 431 210

# Exhibit M

Even if eventually restored once an Office of Chief Counsel attorney is assigned to the case, the unlawful reductions still disrupt clients' lives. Premature reductions force them to re-do billing papers, arrange for unpaid care (if anyone is available to provide it), live without care, and generally fret about their well-being and safety. DHS's compliance with its clear obligations would remove such disruptions.

As always, Legal Aid is available to consult with the agency to ensure that it meets its obligations under relevant Medicaid and constitutional law. We thank you for your attention.

Best,

Kevin

--

Kevin De Liban, Staff Attorney

Legal Aid of Arkansas--West Memphis

310 Mid-Continent Plaza, Suite 420

West Memphis, AR 72301

Phone: (870) 732-6370 x. 2206

Cell: (901) 834-0436

Fax: (870) 732-6373

Web | Facebook | Twitter

**The Arkansas Department of Human Services has determined that this message may contain confidential or otherwise protected information. We have used transport encryption to help protect this message while in transit to you. Please take all reasonable measures to protect any protected or confidential data that might be in this message, including the limitation of re-disclosure to the minimum number of recipients necessary. Please report any inappropriate disclosure to https://dhs.arkansas.gov/reporting or as required by law.**

--

Kevin De Liban, Staff Attorney

Legal Aid of Arkansas--West Memphis

310 Mid-Continent Plaza, Suite 420

West Memphis, AR 72301

Phone: (870) 732-6370 x. 2206

Cell: (901) 834-0436

Fax: (870) 732-6373

Web | Facebook | Twitter

**Exhibit M**

--

Kevin De Liban, Staff Attorney

Legal Aid of Arkansas--West Memphis

310 Mid-Continent Plaza, Suite 420

West Memphis, AR 72301

Phone: (870) 732-6370 x. 2206

Cell: (901) 834-0436

Fax: (870) 732-6373

Web | Facebook | Twitter

**The Arkansas Department of Human Services has determined that this message may contain confidential or otherwise protected information. We have used transport encryption to help protect this message while in transit to you. Please take all reasonable measures to protect any protected or confidential data that might be in this message, including the limitation of re-disclosure to the minimum number of recipients necessary. Please report any inappropriate disclosure to https://dhs.arkansas.gov/reporting or as required by law.**

--
Kevin De Liban, Staff Attorney
Legal Aid of Arkansas--West Memphis
310 Mid-Continent Plaza, Suite 420
West Memphis, AR 72301
Phone: (870) 732-6370 x. 2206
Cell: (901) 834-0436
Fax: (870) 732-6373
Web | Facebook | Twitter

--
Kevin De Liban, Staff Attorney
Legal Aid of Arkansas--West Memphis
310 Mid-Continent Plaza, Suite 420
West Memphis, AR 72301
Phone: (870) 732-6370 x. 2206
Cell: (901) 834-0436
Fax: (870) 732-6373
Web | Facebook | Twitter

**Exhibit M**



**Kevin De Liban <kdeliban@arlegalaid.org>**

## 10-Day Reinstatements

**Nicholas Windle** <Nicholas.Windle@dhs.arkansas.gov>                    Tue, Aug 15, 2017 at 7:53 AM
To: Kevin De Liban <kdeliban@arlegalaid.org>
Cc: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>

Kevin,

I will follow up on this again today.  I've been told that, with both of this cases, we have authorized
payment and the issue is with Palco.

*Nick R. Windle*

Office of Chief Counsel

Arkansas Department of Human Services

P.O. Box 1437, Slot S260

Little Rock, AR 72203

Phone: 501-320-6371

Facsimile: 501-682-1390

nicholas.windle@dhs.arkansas.gov

**CONFIDENTIALITY NOTICE:** The information contained in this email message and any attachment(s) is the property of the State of
Arkansas and may be protected by state and federal laws governing disclosure of private or confidential information.  It is intended solely for
the use of the entity to whom this email is addressed.  If you are not the intended recipient, you are hereby notified that reading, copying or
distribution this transmission is STRICTLY PROHIBITED.   The sender has not waived any applicable privilege by sending the accompanying
transmission.   If you have received this transmission in error, please notify the sender by return and delete the message and attachment(s) from
your system.  Thank you.

sensitive

**From:** Kevin De Liban [mailto:kdeliban@arlegalaid.org]
**Sent:** Thursday, August 10, 2017 9:35 AM
**To:** Nicholas Windle
**Cc:** Rich Rosen
**Subject:** Re: 10-Day Reinstatements

Rich and Nick--

We're having the same issue re payment with A█████ W████. Despite timely 10-day appeal, Palco is authorizing
payment only at the reduced number of attendant care hours. Please belp resolve this and ensure that authorization for
the full pre-reduction hours is made effective back to the the date of the adverse assessment. Thanks. **Exhibit M**

On Aug 9, 2017 3:54 PM, "Kevin De Liban" <kdeliban@arlegalaid.org> wrote:

Dear Rich and Nick:

Despite my multiple previous inquiries on 6/23/17 and 7/27/17 and your statements that Mr. B█████ hours have been reinstated pursuant 42 CFR 431.230, his caregiver is still unable to bill for the full 56 attendant care hours per week (112 per 14-day period; 242 monthly) that Mr. B████ was allotted as of the time of the agency's adverse action. Rather, Palco is only authorizing payment for up to 37 hours per week (74 per 14-day period; 161 per month). Can you please ensure that the plan of care is amended back to 3/31/17 and that it is sent to Palco so that Palco will authorize payment for the full amount of hours to which Mr. B████ has been entitled by since the agency last assessed him? Thank you.

Kevin

On Fri, Jul 28, 2017 at 10:12 AM, Kevin De Liban <kdeliban@arlegalaid.org> wrote:

The effective date should be back to the date the new plan of care took effect (roughly, 3/31/17) to ensure that there is no change from the 56 weekly hours (242 monthly) that S█████ had been receiving prior to the adverse action. Once properly amended, can you please confirm that the amended plan of care is sent to Palco so that Palco will authorize payment for 56 weekly hours for care already provided and that will be provided henceforth (until the hearing decision is issued)?

On Fri, Jul 28, 2017 at 9:54 AM, Nicholas Windle <Nicholas.Windle@dhs.arkansas.gov> wrote:

Kevin,

Mr. B█████ hours were restored on July 7, 2017, effective May 15, 2017 pending the outcome of the appeal.

*Nick R. Windle*

Office of Chief Counsel

Arkansas Department of Human Services

P.O. Box 1437, Slot S260

Little Rock, AR 72203

Phone: 501-320-6371

Facsimile: 501-682-1390

nicholas.windle@dhs.arkansas.gov

CONFIDENTIALITY NOTICE: The information contained in this email message and any attachment(s) is the property of the State of Arkansas and may be protected by state and federal laws governing disclosure of private or confidential information. It is intended solely for the use of the entity to whom this email is addressed. If you are not the intended recipient, you are hereby notified that reading, copying or distribution this transmission is STRICTLY PROHIBITED. The sender has not waived any applicable privilege by sending the accompanying transmission. If you have received this transmission in error, please notify the sender by return and delete the message and attachment(s) from your system. Thank you.

sensitive                                                                    **Exhibit M**

**From:** Kevin De Liban [mailto:kdeliban@arlegalaid.org]
**Sent:** Thursday, July 27, 2017 4:23 PM
**To:** Rich Rosen; Nicholas Windle
**Subject:** Re: 10-Day Reinstatements

Rich--

I sent you this list on 6/23 about people whose hours hadn't been restored despite appeal within 10 days of the notice of action. S███ B██████ hours have still not been restored despite the timely request to maintain services at pre-reduction level (see attached notice of appeal with request for continued benefits filed on 5/11/17). The plan of care should be backdated to authorize 242 hours per month as of the date of the plan of care was executed.

I'm copying Nick Windle since he is the attorney assigned to this case.

Kevin

On Fri, Jun 23, 2017 at 10:06 AM, Kevin De Liban <kdeliban@arlegalaid.org> wrote:

Thanks, Rich. I appreciate the help on the cases of Ms. K████ and Ms. D███. Here are several other clients whose hours weren't continued immediately or who have suffered delays in restoration:



Please advise the nurses and care agencies to ensure their hours are continued as well. Again, I would hope the agency implements a system-wide resolution to this issue sooner rather than later.

Kevin

On Thu, Jun 22, 2017 at 4:18 PM, Rich Rosen <Rich.Rosen@dhs.arkansas.gov> wrote:

The care agencies have been advised to continue the recipient's hours.

**Exhibit M**

5/21/2019

Richard Rosen

Arkansas Department of Human Services

Office of Chief Counsel

P.O. Box 1437, Slot S260

Little Rock, AR  72203

**501-320-6334**          Fax: 501-682-1390

**email address is:  rich.rosen@dhs.arkansas.gov**

SENSITIVE

**Confidentiality Notice**:  The information contained in this email message and any attachment(s) is the property of the State of Arkansas and may be protected by state and federal laws governing disclosure of private information.  It is intended solely for the use of the entity to whom this email is addressed.  If you are not the intended recipient, you are hereby notified that reading, copying or distributing this transmission is STRICTLY PROHIBITED.  The sender has not waived any applicable privilege by sending the accompanying transmission.  If you have received this transmission in error, please notify the sender by return and delete the message and attachment(s) from your system.

**From:** Kevin De Liban [mailto:kdeliban@arlegalaid.org]
**Sent:** Wednesday, June 21, 2017 4:12 PM
**To:** Rich Rosen <Rich.Rosen@dhs.arkansas.gov>; Casey Trzcinski <ctrzcinski@arlegalaid.org>; Amy Pritchard <apritchard@arlegalaid.org>
**Subject:** 10-Day Reinstatements

Dear Rich:

Today, I filed the attached appeals with OAH for two clients facing ARChoices hour reductions, A████ K████ and T████ D████. They are both well within the 10-day timeframe for continuing services, yet the care agencies for each have already started to implement the reductions or plan to do so soon. Please make sure those reductions are not implemented.

Also, as we have discussed in the past, I would encourage the agency to improve the communications between its various employees to ensure that reductions are not implemented before the 10 days from the date of the notice of action. In the majority of our clients cases, reductions are implemented immediately after the plan of care is finalized and sent to the provider agency or Palco. This violates clients' rights to 10-day notice, 42 CFR 431.211, and to continued services pending appeal. 42 CFR 431.230. Also, whatever disagreements persist between the agency and Legal Aid as to the substantive adequacy of the notices, the notices clearly lack the required "the effective date of such action." 42 CFR 431.210.

Even if eventually restored once an Office of Chief Counsel attorney is assigned to the case, the unlawful reductions still disrupt clients' lives. Premature reductions force them to re-do billing papers, arrange for unpaid care (if anyone is available to provide it), live without care, and generally fret about their well-being and safety. DHS's compliance with its clear obligations would remove such disruptions. **Exhibit M**

As always, Legal Aid is available to consult with the agency to ensure that it meets its obligations under relevant Medicaid and constitutional law. We thank you for your attention.


Best,

Kevin


--

Kevin De Liban, Staff Attorney

Legal Aid of Arkansas--West Memphis

310 Mid-Continent Plaza, Suite 420

West Memphis, AR 72301

Phone: (870) 732-6370 x. 2206

Cell: (901) 834-0436

Fax: (870) 732-6373

Web | Facebook | Twitter

**The Arkansas Department of Human Services has determined that this message may contain confidential or otherwise protected information. We have used transport encryption to help protect this message while in transit to you. Please take all reasonable measures to protect any protected or confidential data that might be in this message, including the limitation of re-disclosure to the minimum number of recipients necessary. Please report any inappropriate disclosure to https://dhs.arkansas.gov/reporting or as required by law.**


--

Kevin De Liban, Staff Attorney

Legal Aid of Arkansas--West Memphis

310 Mid-Continent Plaza, Suite 420

West Memphis, AR 72301

Phone: (870) 732-6370 x. 2206

Cell: (901) 834-0436

Fax: (870) 732-6373

Web | Facebook | Twitter


--

Kevin De Liban, Staff Attorney

**Exhibit M**

Legal Aid of Arkansas--West Memphis

310 Mid-Continent Plaza, Suite 420

West Memphis, AR 72301

Phone: (870) 732-6370 x. 2206

Cell: (901) 834-0436

Fax: (870) 732-6373

Web | Facebook | Twitter

**The Arkansas Department of Human Services has determined that this message may contain confidential or otherwise protected information. We have used transport encryption to help protect this message while in transit to you. Please take all reasonable measures to protect any protected or confidential data that might be in this message, including the limitation of re-disclosure to the minimum number of recipients necessary. Please report any inappropriate disclosure to https://dhs.arkansas.gov/reporting or as required by law.**

--

Kevin De Liban, Staff Attorney

Legal Aid of Arkansas--West Memphis

310 Mid-Continent Plaza, Suite 420

West Memphis, AR 72301

Phone: (870) 732-6370 x. 2206

Cell: (901) 834-0436

Fax: (870) 732-6373

Web | Facebook | Twitter

--

Kevin De Liban, Staff Attorney

Legal Aid of Arkansas--West Memphis

310 Mid-Continent Plaza, Suite 420

West Memphis, AR 72301

Phone: (870) 732-6370 x. 2206

Cell: (901) 834-0436

Fax: (870) 732-6373

Web | Facebook | Twitter

**Exhibit M**

**The Arkansas Department of Human Services has determined that this message may contain confidential or otherwise protected information. We have used transport encryption to help protect this message while in transit to you. Please take all reasonable measures to protect any protected or confidential data that might be in this message, including the limitation of re-disclosure to the minimum number of recipients necessary. Please report any inappropriate disclosure to https://dhs.arkansas.gov/reporting or as required by law.**

**Exhibit M**

5/21/2019
Case 3:19-cv-00155-KGB  Document 2  Filed 05/23/19  Page 84 of 101
Legal Aid of Arkansas Mail - Restoration of Hours--2



**LEGAL AID of ARKANSAS**
Equal Access to Justice

**Kevin De Liban <kdeliban@arlegalaid.org>**

## Restoration of Hours--2

**Kevin De Liban** <kdeliban@arlegalaid.org>                          Sat, Sep 2, 2017 at 7:48 PM
To: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>

Hi Rich. I'm writing again today on this lovely Saturday on behalf of another client who timely requested appeal in May and has still not had his hours restored. This time it is S█████ B█████. PALCO has not been paying the caregivers the pre-reduction hours for months now, despite inquiries to you in June, July, and August. Even if the issue is with PALCO, PALCO is a contractor of DHS, the single state agency charged with the responsibility to furnish Medicaid services with reasonable promptness and provide fair hearings. *See* 42 U.S.C. 1396a(a)(3),(8). The 10-day restoration is part and parcel of those requirements. It's DHS's responsibility to ensure that PALCO is paying. It probably only takes DHS sending PALCO a plan of care or putting in a higher number of hours in a software program somewhere.

Please just tell me outright if you need us to sue you in order to get some functioning system in place for the preservation of services for people appealing within the 10-day window. Since repeated friendly requests don't seem to be working, I'd be happy to do you the favor and provide the agency a court mandate. It might make your job a little easier.

Kevin

--
Kevin De Liban, Staff Attorney
Legal Aid of Arkansas--West Memphis
310 Mid-Continent Plaza, Suite 420
West Memphis, AR 72301
Phone: (870) 732-6370 x. 2206
Cell: (901) 834-0436
Fax: (870) 732-6373
Web | Facebook | Twitter

**P.S. Have you registered for our 50th Anniversary Celebration? Come for the CLE, stay for the reception!**

# Exhibit M



**LEGAL AID of ARKANSAS**
Equal Access to Justice

**Kevin De Liban <kdeliban@arlegalaid.org>**

## Restoration of Hours--2

**Rich Rosen** <Rich.Rosen@dhs.arkansas.gov>
To: Kevin De Liban <kdeliban@arlegalaid.org>
Cc: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>

Wed, Sep 6, 2017 at 1:54 PM

Kevin-

DAAS confirmed that the hours are restored and that the caregiver(s) can be compensated for the restored hours.

Richard Rosen

Arkansas Department of Human Services

Office of Chief Counsel

P.O. Box 1437, Slot S260

Little Rock, AR  72203

**501-320-6334**        Fax: 501-682-1390

**email address is:  rich.rosen@dhs.arkansas.gov**

SENSITIVE

**Confidentiality Notice:**  The information contained in this email message and any attachment(s) is the property of the
State of Arkansas and may be protected by state and federal laws governing disclosure of private information.  It is
intended solely for the use of the entity to whom this email is addressed.  If you are not the intended recipient, you are
hereby notified that reading, copying or distributing this transmission is STRICTLY PROHIBITED.  The sender has not
waived any applicable privilege by sending the accompanying transmission.  If you have received this transmission in
error, please notify the sender by return and delete the message and attachment(s) from your system.

**From:** Kevin De Liban [mailto:kdeliban@arlegalaid.org]
**Sent:** Saturday, September 02, 2017 7:48 PM
**To:** Rich Rosen <Rich.Rosen@dhs.arkansas.gov>
**Subject:** Restoration of Hours--2

# Exhibit M

Hi Rich. I'm writing again today on this lovely Saturday on behalf of another client who timely requested appeal in May
and has still not had his hours restored. This time it is ▮▮▮▮▮ B▮▮▮▮▮ PALCO has not been paying the caregivers the
pre-reduction hours for months now, despite inquiries to you in June, July, and August. Even if the issue is with PALCO,
PALCO is a contractor of DHS, the single state agency charged with the responsibility to furnish Medicaid services with

reasonable promptness and provide fair hearings. *See* 42 U.S.C. 1396a(a)(3),(8). The 10-day restoration is part and parcel of those requirements. It's DHS's responsibility to ensure that PALCO is paying. It probably only takes DHS sending PALCO a plan of care or putting in a higher number of hours in a software program somewhere.

Please just tell me outright if you need us to sue you in order to get some functioning system in place for the preservation of services for people appealing within the 10-day window. Since repeated friendly requests don't seem to be working, I'd be happy to do you the favor and provide the agency a court mandate. It might make your job a little easier.

Kevin

--

Kevin De Liban, Staff Attorney

Legal Aid of Arkansas--West Memphis

310 Mid-Continent Plaza, Suite 420

West Memphis, AR 72301

Phone: (870) 732-6370 x. 2206

Cell: (901) 834-0436

Fax: (870) 732-6373

Web | Facebook | Twitter

**P.S. Have you registered for our 50th Anniversary Celebration? Come for the CLE, stay for the reception!**

**The Arkansas Department of Human Services has determined that this message may contain confidential or otherwise protected information. We have used transport encryption to help protect this message while in transit to you. Please take all reasonable measures to protect any protected or confidential data that might be in this message, including the limitation of re-disclosure to the minimum number of recipients necessary. Please report any inappropriate disclosure to https://dhs.arkansas.gov/reporting or as required by law.**

**Exhibit M**



Kevin De Liban <kdeliban@arlegalaid.org>

## ARChoices Letter

**Kevin De Liban** <kdeliban@arlegalaid.org>        Thu, Aug 10, 2017 at 4:30 PM
To: David Sterling <David.Sterling@dhs.arkansas.gov>, Rich Rosen <Rich.Rosen@dhs.arkansas.gov>, Jim Brader
<jim.brader@dhs.arkansas.gov>, Lee Richardson <lrichardson@arlegalaid.org>

Dear David, Rich, and Jim:

Please find attached a letter regarding the ARChoices program offered in hopes of finding an amicable way for DHS and
Legal Aid, acting on our clients behalves, to address aspects of the program that concern our clients.

Best,

Kevin

--
Kevin De Liban, Staff Attorney
Legal Aid of Arkansas--West Memphis
310 Mid-Continent Plaza, Suite 420
West Memphis, AR 72301
Phone: (870) 732-6370 x. 2206
Cell: (901) 834-0436
Fax: (870) 732-6373
Web | Facebook | Twitter

📄 **Letter to DHS re ARChoices--FINAL.pdf**
393K

**Exhibit N**

# LEGAL AID of ARKANSAS
### Equal Access to Justice

**TOLL FREE**
**1-800-967-9224**

**TELEPHONE**
**1-870-972-9224**

**HELPLINE**
**1-800-952-9243**

**www.arlegalaid.org**

**Arkansas Children's Hospital**
1 Children's Way, Slot 695
Little Rock, AR 72202-3500
501-978-6479 – Fax

**Harrison**
205 West Stephenson
Harrison, AR 72601
800-967-9224 – Fax

**Helena-West Helena**
622 Pecan
Helena, AR 72342
870-338-9834 – Fax

**Jonesboro**
714 South Main Street
Jonesboro, AR 72401
870-910-5562 – Fax

**Newport**
202 Walnut Street
Newport, AR 72112
870-523-9892 – Fax

**Springdale**
1200 Henryetta
Springdale, AR 72762
479-751-0002 – Fax

**West Memphis**
310 Mid Continent Plaza
Suite 420
West Memphis, AR 72301
870-732-6373 – Fax

August 10, 2017

David Sterling, Esq.                        Rich Rosen, Esq.
Office of Chief Counsel                      Office of Chief Counsel
Department of Human Services                 Department of Human Services
P.O. Box 1437, Slot S260                     P.O. Box 1437, Slot S260
Little Rock, AR 72203-1437                   Little Rock, AR 72203-1437

Jim Brader, Esq.
Office of Chief Counsel
Department of Human Services
P.O. Box 1437, Slot S260
Little Rock, AR 72203-1437

Re:     ARChoices

Dear Mr. Sterling, Mr. Rosen, and Mr. Brader:

I am writing on behalf of our clients in the hopes of opening dialogue on ongoing points of
contention between Legal Aid clients and the Department with respect to the ARChoices
program. Since Legal Aid and DHS are currently engaged in litigation, I am sending this to
you as the agency's attorneys. However, I respectfully ask that you pass it along to Cindy
Gillespie, Jay Hill, Stephanie Blocker, Brad Nye, Dawn Stehle, and Catherine Kelley (or
another representative from the Governor's office) so that all relevant stakeholders may be
fully aware of our clients' positions and our overall willingness to again attempt amicable
resolution. Specifically, we would like to meet with the interested parties to work on a
cooperative way forward.

Since implementation of the ARChoices program and the RUGs algorithm-based care
allocation system in January 2016, over 100 individuals have come to Legal Aid of
Arkansas seeking legal representation to contest DHS's decisions to significantly cut or
terminate their services. There are no signs that the need for our services is declining. We,
of course, are committed to helping them maintain a dignified life with sufficient care in
the communities in which they wish to continue living.

As you know, people requiring ARChoices services are particularly vulnerable by virtue of
profound physical disabilities, which are often coupled with advanced age. Most of the
people who have come to us have cerebral palsy, multiple sclerosis, quadriplegia, or
myriad other chronic issues, require motorized wheelchairs or other assistive devices to get
around, face significant social isolation, and struggle to have their most basic care needs
met. A clean house, decent food, proper bathing, relative physical comfort (lying or sitting
with as little pain as possible), ready access to the toilet, and unsoiled garments are not
easily obtained for our clients and are necessary to maintain a small measure of dignity.

Meaningful enjoyment of life is also difficult. Our clients count themselves lucky with
modest activities that I often take for granted—a trip to the grocery store, a meal out once
in a while, a chance to tend a garden, or a visit with one of few friends or family members





**Exhibit N**

in the area. Even those few who have the good fortune of a richer social life with more activities out of the home struggle to get transportation, risk pain or potential incontinence if out too long, and face other barriers to full participation in community life.

### Shortcomings and Practical Solutions

Legal Aid of Arkansas and our clients recognize that the ARChoices program provides valuable services, most notably Attendant Care, and understands that the Department has its own constraints when considering how to provide such services. Our clients have three central concerns, each of which has a feasible solution:

(A) **Insufficient Care for Acute Beneficiaries.** The amount of care allocated to the most acute RUG tiers is not sufficient to meet the actual care needs of program participants who, under the previous system of nurse discretion, had been determined to need between 40 and 56 hours of care per week. *DHS should consider significant increases to the care allocations for all individuals in at least the following RUGs: PD (137 monthly hours/32 weekly hours), CC (141/33), SE1 (153/35), RB (157/36), SSB (161/37), and SE 2 (201/46).*

(B) **Incomprehensible Algorithms**. The algorithms used are not understandable to the average person and have not yet been translated for the public in intelligible ways. This means that beneficiaries and, if involved, families cannot predict care levels to plan for the future, that hearing officers do not know which of the 286 assessment items are material to RUG placement, and that nurses do not know to which questions to pay particular attention. Other states have managed to make the algorithms understandable. *The individuals at interRAI, Mitchell Harlan, and Legal Aid staff could collaborate to prepare a document that explains the algorithms in accurate and simple terms (the flowchart included in the current notices is not a completely accurate depiction of the way the algorithms work).*

(C) **Irrational Outcomes.** The algorithms do not make sense when the difference of one point on one question out of 286 can mean a difference of, for example, nine Attendant Care hours per week. There are many other scenarios under the algorithm that run counter to reason. *Nurses should be allotted discretion to adjust care allocations to ameliorate apparent absurdities.*

There are several related issues plaguing our clients, also with eminently practical solutions:

(1) **Premature Reduction of Services.** Clients who appeal within 10 days of the notice of action do not have their services maintained at pre-reduction levels as required by federal regulations, even with explicit requests to do so. While Mr. Rosen has been helpful in restoring the hours of those clients whose services were prematurely reduced, his involvement required correspondence from a Legal Aid attorney after the Department failed to take note of an explicit request in the appeal paperwork. If the agency's system for tracking appeals is not working well for program participants with an attorney, one can only imagine the adverse effects on unrepresented individuals. *DHS should adopt new internal procedures for appeals so that DAAS nurses do not forward the Person Centered Service Plan to Palco or agency providers until 15 days have elapsed from the date the notice of adverse action is sent. Relatedly, OAH should coordinate with DAAS to ensure that nurses are promptly made aware of all appeals so that they do not implement a reduction for a beneficiary who appealed within 10 days.*

(2) **Inconsistent Assessments.** We have seen several instances of clients whose condition has either worsened or remained unchanged, but who have seen a drastic drop in services as a result of assessments by different nurses from one year to the next. Although interRAI defines the assessment questions and possible answers in fair detail, individual nurses interpret the questions and client responses in wildly different ways. As a result of this inconsistency, we are seeing much more movement between RUGs— and therefore service levels—than we ever did prior to the implementation of this system. Clients with

**Exhibit N**

severe disabilities and progressive diseases need consistent, predictable routines which they are not getting the current implementation of this system. *Where the algorithms' purported objectivity and consistency depend on accurate inputs, nurses should receive further training on the precise meaning of questions and particular responses, paying special attention to the questions on the assessment that are material to RUG placement.*

**(3) Inconsistent Use of New Assessments.** Nurses in the Division of Aging and Adult Services have not granted requests for new evaluations that take into account changes in a beneficiary's conditions between regularly-scheduled yearly evaluations. As even small changes can impact the RUG tier into which one is placed, *the agency should adopt standards to guide nurse decisions on conducting new assessments when learning of a change in a beneficiary's condition.* Here, an intelligible translation of the algorithms (mentioned above) would help all involved parties know what sorts of changes are likely to result in a new RUG placement such that the agency's limited resources are used wisely. Particular attention should be paid to the assessment questions that affect the Activity of Daily Living scale (bed mobility, eating, toilet use, toilet transfer).

**(4) Inadequate Notices.** The notices sent to beneficiaries are still deficient. Agency attorneys have repeatedly offered Mitchell Harlan as a witness in administrative hearings to testify about how the algorithms work. His grasp of the algorithms far exceeds any other Department employee and means that the agency now has the knowledge on staff to craft notices that better comport with Judge Marshall's ruling in *Jacobs*. While the comparison report now included with the notice is helpful, it frequently involves six to eight pages of assessment items that have changed from the previous assessment to the most recent assessment. Beneficiaries and, for that matter, hearing officers still have no way of knowing before the hearing which items out of the six to eight pages are material to RUG placement. And, even if Mr. Harlan can separate the material assessment items from the irrelevant ones (for purposes of RUG placement) at the hearing, the beneficiary has at that point not been given prior knowledge about what counts and what does not, a significant problem for represented appellants and an even more troubling one for unrepresented appellants. In other words, people whose lived conditions have not changed much are left trying to figure out which of 45+ changes in assessment answers marked by a nurse actually caused the reduction in hours. *The notice of action should explicitly identify these material items as Judge Marshall's ruling contemplates.* Such a notice would also help quicken the hearings, as the appellants would not need to contest every changed answer. In addition, *the notice should contain the intelligible translation of the algorithm so that a beneficiary can see what changes in conditions could result in placement in a more acute or less acute RUG.*

**(5) Lack of *De Novo* Hearings.** As hearings are conducted now, they are not properly *de novo*, instead being limited to the date of the evaluation. Given present scheduling timelines, hearings are often not held until three or four months after the evaluation was administered. This means that program beneficiaries must offer evidence about their condition from months ago. *Instead, the hearing officer should accept evidence about a beneficiary's present circumstances to ensure that the hearing produces a RUG placement appropriate for the beneficiary's present circumstances.* Again, an intelligible translation of the algorithm would aid hearing officers to make accurate decisions about which RUG an individual properly belongs in.

**(6) Unexamined Risk of Institutionalization.** Currently, the Department gives no consideration to whether the amount of hours allocated under the RUGs system is sufficient to meet a specific individual's care needs so as to avoid unnecessary institutionalization. This has resulted in individuals, particularly those without family caregivers, being forced to lie in their own waste, go without meals, miss medication doses, risk falls, and be exposed to other circumstances likely to quicken institutionalization. *The Department should evaluate the risk of institutionalization for each beneficiary*

3

**Exhibit N**

based on the number of Attendant Care hours allotted and empower nurses to sufficiently adjust hour allocations to evade such risk.

**(7) Software Omissions.** The ArPath currently lacks the ability to code for several items that are material to RUG placements, including cerebral palsy, septicemia, and internal bleeding. Mr. Harlan testified in a recent hearing that the algorithms use the presence or absence of these factors to determine RUG placement but that he had never seen any of them ever appear on the relevant parts of the assessment. Nurse Karen Langston confirmed that she cannot code for them. *This should be something the agency's software contractor can program into the ArPath to ensure that the assessment software accounts for all of the material items in the algorithms.*

**(8) Data Deficiencies.** Despite multiple FOIA requests since the turn of the year, the Department has produced no information about, for example, the number of individuals in each RUG, the impact of the RUGs system on individual beneficiaries or overall program budgets, the rate of movement between RUGs by beneficiaries, or anything else that would help the Department or public to determine whether the RUGs has been good policy. *The Department should start keeping such data and making it readily available to the public. Legal Aid would be happy to suggest a set of useful measures.*

## New Assessment System and Algorithms

Legal Aid understands that the agency intends to shift away from the ArPath to the MnCHOICES assessment tool and, apparently, away from the RUGs algorithms to a new set of algorithms about which no information is publicly available. The new assessment tool and algorithms are likely to face the same issues encountered with the ArPath and RUGs. Legal Aid will continue to actively aid program beneficiaries who are adversely affected by the agency's decisions. ***However, we hope that some of those adverse effects can be avoided if our clients' interests are properly taken into account before the new tool and algorithms are put into place.*** Legal Aid would be glad to discuss the assessment and algorithms with the Department, identify ways for the Department to use them in a way that is fair to our clients, and, in so doing, avoid points of contention that could lead to continued legal entanglements. Under the right circumstances, we could arrange for our clients to speak directly to relevant Department officials about their experience with the ARChoices and predecessor programs, what they look for in an evaluation, and what unpredictability in services means to their lives.

## Memo of Understanding between DHS and the Arkansas Health Care Association

On May 20, 2016, Governor Hutchinson and the Department entered into a memo of understanding with AHCA "to improve long-term services and supports in Arkansas," including Home and Community-Based Services such as the ARChoices program. That document establishes a framework guiding the collaboration between the state and AHCA. In the MOU, DHS "agrees to engage with beneficiaries and stakeholders who provide advocacy on behalf of beneficiaries served." To this end, discussions between the Department, Legal Aid, and, potentially, our clients can inform the Department's efforts at global LTSS improvement and assure that those high-level plans do not foreseeably harm our clients in ways that might ultimately frustrate the desired changes.

## Conclusion

DHS and Legal Aid, always acting on behalf of our clients, have battled vigorously over the last two years. Litigation, of course, is not the best forum for measured discussion of vexing policy problems and consumes resources that all of us would rather spend elsewhere. We hope that this letter serves as an opening to a less litigious way forward that will balance the Department's interests with those of our many clients depending on the DHS's services. **A fruitful next step would be an in-person meeting with relevant Department officials using the concerns outlined here—and others the Department may have—as a starting point for discussions.**

**Exhibit N**

Sincerely,

Kevin De Liban, Practice Group Leader
Lee Richardson, Executive Director

**Exhibit N**



**LEGAL AID of ARKANSAS**
Equal Access to Justice

**Kevin De Liban <kdeliban@arlegalaid.org>**

## ARChoices Letter

**Rich Rosen** <Rich.Rosen@dhs.arkansas.gov>                                Wed, Aug 16, 2017 at 9:05 AM
To: Kevin De Liban <kdeliban@arlegalaid.org>, Lee Richardson <lrichardson@arlegalaid.org>
Cc: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>, Jim Brader <Jim.Brader@dhs.arkansas.gov>, David Sterling
<David.Sterling@dhs.arkansas.gov>

Kevin –

I have reviewed your letter and forwarded it to my client.  I will be out of my office today on jury duty and then will be
out of the office for several days on vacation.  I expect to meet with DAAS about your letter late next week after I
return and will get back to you shortly thereafter.

Richard Rosen

Arkansas Department of Human Services

Office of Chief Counsel

P.O. Box 1437, Slot S260

Little Rock, AR  72203

**501-320-6334**         Fax: 501-682-1390

**email address is:  rich.rosen@dhs.arkansas.gov**

SENSITIVE

**Confidentiality Notice**:  The information contained in this email message and any attachment(s) is the property of the
State of Arkansas and may be protected by state and federal laws governing disclosure of private information.  It is
intended solely for the use of the entity to whom this email is addressed.  If you are not the intended recipient, you are
hereby notified that reading, copying or distributing this transmission is STRICTLY PROHIBITED.  The sender has not
waived any applicable privilege by sending the accompanying transmission.  If you have received this transmission in
error, please notify the sender by return and delete the message and attachment(s) from your system.

[Quoted text hidden]
**The Arkansas Department of Human Services has determined that this message may contain confidential or
otherwise protected information. We have used transport encryption to help protect this message while in transit
to you. Please take all reasonable measures to protect any protected or confidential data that might be in this
message, including the limitation of re-disclosure to the minimum number of recipients necessary. Please report
any inappropriate disclosure to https://dhs.arkansas.gov/reporting or as required by law.**

# Exhibit O



**LEGAL AID of ARKANSAS**
Equal Access to Justice

**Kevin De Liban <kdeliban@arlegalaid.org>**

## Restoration of Hours

**Kevin De Liban** <kdeliban@arlegalaid.org>
To: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>

Sat, Sep 2, 2017 at 6:08 PM

Rich,

My clients are still having problems with the restoration of hours. The latest is A█████ K█████. Her plan of care is attached. It was amended by the DAAS RN to reflect the restored hours, but PALCO is not paying the caregiver for the restored hours, but rather only the reduced amount. Please work out a functioning system so that people who appeal within 10 days get to keep the pre-reduction services to which they are entitled by 42 CFR 431.230. This is getting tiresome, and DHS is clearly on the wrong side of the law here.

Kevin

--
Kevin De Liban, Staff Attorney
Legal Aid of Arkansas--West Memphis
310 Mid-Continent Plaza, Suite 420
West Memphis, AR 72301
Phone: (870) 732-6370 x. 2206
Cell: (901) 834-0436
Fax: (870) 732-6373
Web | Facebook | Twitter

**P.S. Have you registered for our 50th Anniversary Celebration? Come for the CLE, stay for the reception!**

📄 K█████--2017 9503.pdf
2452K

**Exhibit P**


**LEGAL AID of ARKANSAS**
Equal Access to Justice

**Kevin De Liban <kdeliban@arlegalaid.org>**

## Restoration of Hours

**Rich Rosen** <Rich.Rosen@dhs.arkansas.gov>
To: Kevin De Liban <kdeliban@arlegalaid.org>
Cc: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>

Wed, Sep 6, 2017 at 1:56 PM

Kevin-

DAAS has confirmed that the hours are restored and that the caregiver)s) can be compensated for the restored hours.

Richard Rosen

Arkansas Department of Human Services

Office of Chief Counsel

P.O. Box 1437, Slot S260

Little Rock, AR  72203

**501-320-6334**        Fax: 501-682-1390

**email address is:  rich.rosen@dhs.arkansas.gov**

SENSITIVE

**Confidentiality Notice**:  The information contained in this email message and any attachment(s) is the property of the State of Arkansas and may be protected by state and federal laws governing disclosure of private information.  It is intended solely for the use of the entity to whom this email is addressed.  If you are not the intended recipient, you are hereby notified that reading, copying or distributing this transmission is STRICTLY PROHIBITED.  The sender has not waived any applicable privilege by sending the accompanying transmission.  If you have received this transmission in error, please notify the sender by return and delete the message and attachment(s) from your system.

[Quoted text hidden]
**The Arkansas Department of Human Services has determined that this message may contain confidential or otherwise protected information. We have used transport encryption to help protect this message while in transit to you. Please take all reasonable measures to protect any protected or confidential data that might be in this message, including the limitation of re-disclosure to the minimum number of recipients necessary. Please report any inappropriate disclosure to https://dhs.arkansas.gov/reporting or as required by law.**

**Exhibit P**



**LEGAL AID of ARKANSAS**
Equal Access to Justice

Kevin De Liban <kdeliban@arlegalaid.org>

## ARChoices Hour Reinstatements

**Kevin De Liban** <kdeliban@arlegalaid.org>           Wed, Jan 10, 2018 at 9:50 AM
To: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>, Mitchell Harlan <Mitchell.Harlan@dhs.arkansas.gov>
Cc: Casey Trzcinski <ctrzcinski@arlegalaid.org>

Dear Rich and Mitchell:

Two clients have been reassessed, had their Attendant Care hours reduced, appealed within 10 days while specifically
requesting their hours be maintained at pre-reduction levels pending the outcome of the appeal, and still have had their
hours reduced. They are R█████ D████ and S██████ B█████ Would you kindly look into this and ensure their hours are
restored asap? Thank you.

Kevin

--
Kevin De Liban, Attorney
Legal Aid of Arkansas--West Memphis
310 Mid-Continent Plaza, Suite 420
West Memphis, AR 72301
Phone: (870) 732-6370 x. 2206
Cell: (901) 834-0436
Fax: (870) 732-6373
Web | Facebook | Twitter

**Exhibit Q**



**Kevin De Liban <kdeliban@arlegalaid.org>**

## ARChoices Hour Reinstatements

**Kevin De Liban <kdeliban@arlegalaid.org>**                                    Wed, Jan 10, 2018 at 9:50 AM
To: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>, Mitchell Harlan <Mitchell.Harlan@dhs.arkansas.gov>
Cc: Casey Trzcinski <ctrzcinski@arlegalaid.org>

Dear Rich and Mitchell:

Two clients have been reassessed, had their Attendant Care hours reduced, appealed within 10 days while specifically
requesting their hours be maintained at pre-reduction levels pending the outcome of the appeal, and still have had their
hours reduced. They are R████ D████ and S██████ B████ Would you kindly look into this and ensure their hours are
restored asap? Thank you.

Kevin

--
Kevin De Liban, Attorney
Legal Aid of Arkansas--West Memphis
310 Mid-Continent Plaza, Suite 420
West Memphis, AR 72301
Phone: (870) 732-6370 x. 2206
Cell: (901) 834-0436
Fax: (870) 732-6373
Web | Facebook | Twitter

**Exhibit Q**



**Kevin De Liban <kdeliban@arlegalaid.org>**

## (no subject)

**Rich Rosen <Rich.Rosen@dhs.arkansas.gov>**
To: "kdeliban@arlegalaid.org" <kdeliban@arlegalaid.org>

Thu, Jan 11, 2018 at 3:28 PM

Kevin-

The services for your clients D██████ and B██████ are reinstated or continuing at the prior

level.  Please let me know if you have any other questions

Sent from my iPhone

**Exhibit Q**

5/23/2019

Case 3:19-cv-00155-KGB   Document 2   Filed 05/23/19   Page 99 of 101
Legal Aid of Arkansas Mail - ARChoices--Maintaining Services Pending Appealing



**LEGAL AID**of**ARKANSAS**
Equal Access to Justice

**Kevin De Liban <kdeliban@arlegalaid.org>**

## ARChoices--Maintaining Services Pending Appealing

**Kevin De Liban <kdeliban@arlegalaid.org>**                              Tue, Mar 12, 2019 at 7:05 PM
To: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>, "Mark White (DHS)" <Mark.White@dhs.arkansas.gov>,
stephenie.blocker@dhs.arkansas.gov

Dear Mark, Stephenie, and Rich:

Legal Aid is representing several clients facing termination of ARChoices services. Either on their own or through Legal Aid's notice of representation, all have timely requested continuation of services as provided by 42 CFR 431.230. Nonetheless, the clients have been informed that their services will be discontinued.

Accordingly, please ensure that the following clients are kept at their pre-reduction service levels.



G▮▮▮A▮▮▮▮(Case No. 19001084)
J▮▮▮B▮▮▮(dob▮▮▮)
J▮▮▮D▮▮▮(Case No. 19000900)
N▮▮▮K▮▮▮(Case No. 19001086)
R▮▮▮M▮▮▮(dob▮▮▮)
C▮▮▮S▮▮▮(dob▮▮▮)

Apparently, some providers believe they are at risk of having to absorb the costs of services provided during the course of appeal at a client's timely request and, thus, are denying or planning to deny services to clients. Of course, if continuation is timely requested, DHS denying payment for services provided pending the appeal would patently violate 42 CFR 431.230 and the due process principles in which it is rooted. I would appreciate a reminder from DHS to all providers that they will be paid for services provided during the pendency of the appeal so long as the client has timely requested it.

I would also appreciate a reminder to providers that they cannot terminate any services until 10 days have run from the date on the notice of action informing the client that their services will be terminated. Apparently, one client already has had home-delivered meals stopped before the 10 days ran. Her services were terminated before she even had a chance to lodge a request that they be continued.

This problem came up repeatedly from 2016 to 2018, and DHS never developed a mechanism to ensure that clients who wanted continuing services pending the appeal actually received them. Legal Aid had to manually request it of the Office of Chief Counsel even though the client's original notice of appeal contained a request. There apparently was no communication from the Office of Appeals and Hearings to county offices (or whatever the proper unit within DHS is) to keep services on pending the appeal.

The lack of continued services when properly requested is harming clients. One client told me that they were "curled into a ball in tears" because they didn't know how they would live without their services. Others have expressed similar pain, fear, and worry. The provision for continuing services is clearly established by law. Please ensure that the agency comports with its obligations under 42 CFR 431.230.

Thank you.

Kevin De Liban, Attorney
Economic Justice Practice Group Leader
Legal Aid of Arkansas--West Memphis
310 Mid-Continent Plaza, Suite 420
West Memphis, AR 72301
Phone: (870) 732-6370 x. 2206
Cell: (901) 834-0436
Fax: (870) 732-6373
Web | Facebook | Twitter

# Exhibit R



**LEGAL AID** *of* **ARKANSAS**
Equal Access to Justice

**Kevin De Liban <kdeliban@arlegalaid.org>**

___

## ARChoices--Maintaining Services Pending Appealing

**Rich Rosen <Rich.Rosen@dhs.arkansas.gov>**     Wed, Mar 13, 2019 at 5:16 PM
To: Kevin De Liban <kdeliban@arlegalaid.org>
Cc: Rich Rosen <Rich.Rosen@dhs.arkansas.gov>

I have information on your 6 clients:

1. J███ B███ – Services continued and never stopped;

2. R███ M███ - Services continued and never stopped;

3. G███ A███ - Services continued and never stopped;

4. N███ K███ - Services continued and never stopped;

5. C███ S███ – Services continued and never stopped; and

6. J███ D███ – Service stopped for an unknown reason but was reinstated effective today.

Richard Rosen

Arkansas Department of Human Services

Office of Chief Counsel

P.O. Box 1437, Slot S260

Little Rock, AR 72203

**501-320-6334**     Fax: 501-682-1390

**email address is: rich.rosen@dhs.arkansas.gov**

SENSITIVE

**Confidentiality Notice**: The information contained in this email message and any attachment(s) is the property of the State of Arkansas and may be protected by state and federal laws governing disclosure of private information. It is intended solely for the use of the entity to whom this email is addressed. If you are not the intended recipient, you are hereby notified that reading, copying or distributing this transmission is STRICTLY PROHIBITED. The sender has not waived any applicable privilege by sending the accompanying transmission. If you have received this transmission in error, please notify the sender by return and delete the message and attachment(s) from your system.

# Exhibit R

**From:** Kevin De Liban [mailto:kdeliban@arlegalaid.org]
**Sent:** Tuesday, March 12, 2019 7:05 PM
**To:** Rich Rosen <Rich.Rosen@dhs.arkansas.gov>; Mark White <Mark.White@dhs.arkansas.gov>; Stephenie
Blocker <stephenie.blocker@dhs.arkansas.gov>
**Subject:** ARChoices--Maintaining Services Pending Appealing


[EXTERNAL SENDER]

[Quoted text hidden]
**The Arkansas Department of Human Services has determined that this message may contain confidential or
otherwise protected information. We have used transport encryption to help protect this message while in transit
to you. Please take all reasonable measures to protect any protected or confidential data that might be in this
message, including the limitation of re-disclosure to the minimum number of recipients necessary. Please report
any inappropriate disclosure to**
https://dhs.arkansas.gov/ost/contactforms/ContactUs.aspx
**or as required by law.**

**Exhibit R**