# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### NORTHERN DIVISION

**GINGER P. ELDER**                                                                          **PLAINTIFF**

**v.**                                         **Case No**.  **3:19-cv-00155 KGB**

**CINDY GILLESPIE, Director, Arkansas**
**Department of Human Services in her official**
**and individual capacity,** *et al.*                                              **DEFENDANTS**

## <u>ORDER</u>

Before the Court is defendants Cindy Gillespie, Craig Cloud, Richard Rosen, and David Sterling's (collectively "defendants") motion to dismiss for failure to state a claim (Dkt. No. 10). Plaintiff Ginger P. Elder responded to the motion (Dkt. No. 12), and defendants replied (Dkt. No. 19). Also before the Court is Ms. Elder's motion for leave to file her first amended complaint (Dkt. No. 14). Defendants responded in opposition to Ms. Elder's motion for leave to amend (Dkt. No. 17). For the following reasons, the Court grants Ms. Elder's motion for leave to file her first amended complaint (Dkt. No. 14) and denies as moot defendants' motion to dismiss Ms. Elder's original complaint (Dkt. No. 10).

The Court also denies as moot defendants' motion to stay discovery (Dkt. No. 23). The Court grants defendants' motion to substitute party (Dkt. No. 24).

## I.      Factual And Procedural Background

Medicaid is a federally created medical assistance program in which the State of Arkansas has elected to participate (Dkt. No. 11, at 1). The Arkansas Department of Human Services ("ADHS") is the state agency that administers and supervises Arkansas' Medicaid program (*Id.*). Home and Community Based Services ("HCBS") programs are an optional service under the federal Medicaid Act (*Id.,* at 2). HCBS programs allow individuals to receive community-based services in situations where they may otherwise require institutionalization (*Id.*). ARChoices is an

HCBS operated by ADHS (*Id.*).  It offers different services, including attendant and personal care services (*Id.*).  An individual must meet specific financial and medical eligibility criteria to be eligible for ARChoices (*Id.*).

Ms. Elder represents that she is an ARChoices Medicaid beneficiary who first applied for ARChoices in 2015 (Dkt. No. 2, ¶ 75).  ADHS deemed Ms. Elder to be eligible for ARChoices in 2015, 2016, 2017, and 2018 (*Id.*).  According to Ms. Elder, she was notified by her care provider on March 12, 2019, and by ADHS on March 15, 2019, that the agency was terminating her ARChoices eligibility based on a January 2019 assessment (Dkt. No. 12, at 3).[1]  Ms. Elder avers that she appealed to ADHS on March 13, 2019, and asked that her services be reinstated (*Id.*).  She claims that ADHS received the appeal but terminated her ARChoices Medicaid on March 25, 2019 (*Id.*).

Ms. Elder asserts that, when ADHS decides to terminate or reduce a Medicaid beneficiary's benefits, it must maintain the services at the prior level until the outcome of an administrative hearing as long as the beneficiary appeals within 10 days of the date of notice of adverse action (Dkt. No. 12, at 2).  She claims that ADHS does not have any written procedure or process for continuing benefit eligibility for Medicaid beneficiaries who appeal adverse agency decisions and, in practice, ADHS automatically terminates or reduces the benefits in question and restores them only where the affected beneficiary takes additional action, over and above timely appealing adverse agency decisions, such as retaining an attorney who contacts ADHS (*Id.*).  According to

---

[1]  As a beneficiary of ARChoices, Ms. Elder received attendant care and home-delivered meals (Dkt. No. 2, ¶ 76).  ADHS increased Ms. Elder's allocation of care hours in 2016, 2017, and 2018 (*Id.,* ¶ 77).  Ms. Elder claims that she did not experience improvement in her functional abilities (*Id.,* ¶ 79).  Ms. Elder used attendant and personal care services to help her to get in and out of bed and chairs, to move from one place to another without falling, to get on and off the toilet, to clean herself fully after using the toilet, to bathe, to dress, to do laundry, and to prepare meals. (*Id.,* ¶ 78).

Ms. Elder, this termination of ARChoices Medicaid services prior to an evidentiary hearing violated her Fourteenth Amendment Due Process rights (Dkt. No. 14-1, ¶ 137).  Ms. Elder claims that each named defendant was personally involved in the systemic failure that led to the termination of her ARChoices benefits (Dkt. No. 12, at 3).

Defendants are all employees of ADHS (Dkt. No. 2, ¶¶ 9-12).  In response to Ms. Elder's original complaint, defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 10).  Defendants attach to their motion to dismiss additional documents for the Court's consideration (Dkt. No. 10-1).  Defendants assert that, in their official capacities, they are entitled to sovereign immunity and that Ms. Elder lacks standing to bring her official capacity claims for injunctive relief (*Id.,* ¶¶ 4-6).  Defendants also assert that they are entitled to qualified immunity in their individual capacities and that Ms. Elder's complaint fails to state a claim upon which relief may be granted against defendants in their individual capacities (*Id.,* ¶ 7).  Ms. Elder responded in opposition to the motion (Dkt. No. 12), and defendants replied (Dkt. No. 19).  Ms. Elder also filed a motion for leave to file an amended complaint (Dkt. No. 14), and defendants oppose that motion (Dkt. No. 17).

## II.    Motion To Amend Complaint

The Court begins its analysis by examining Ms. Elder's motion to amend her complaint, not defendants' pending motion to dismiss.  Defendants assert that the Court should address defendants' pending motion to dismiss first (Dkt. No. 17, at 8-9), but they cite no controlling law requiring the Court to do so.  Further, the Court determines that the better practice under controlling law is for the Court to examine Ms. Elder's motion for leave to amend first.  *See Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002) (determining that the district court's granting a motion to dismiss an original complaint and then denying as moot a then-pending

motion to amend the complaint was "plainly erroneous" and determining that "[i]f anything, [the] motion to amend complaint rendered moot [the] motion to dismiss the original complaint").

Pursuant to Federal Rule of Civil Procedure 15(a)(1), a party may amend a pleading once as a matter of course within 21 days after serving it, or within 21 days after service of the responsive pleading or a motion under Rule 12(b)(6).  After the 21-day period expires, "a party may amend its pleadings only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  The Court should give leave freely when justice so requires, but "parties do not have an absolute right to amend their pleadings . . ."  *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008).

"[D]enial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated."  *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "A district court's denial of leave to amend a complaint may be justified if the amendment would be futile."  *Geier v. Missouri Ethics Comm'n*, 715 F.3d 674, 678 (8th Cir. 2013).

Ms. Elder moves for leave to amend her complaint to:  (1) add defendants Mark White and John Doe in their official and individual capacities, (2) clarify that damages are not sought against defendants in their official capacities, (3) add background information about the ARChoices program and re-organize previous allegations, (4) add factual allegations about the mechanics of the ADHS's procedures for reviewing appeals and taking steps necessary to continue benefits, (5) add factual allegations about the number of appeals filed involving the ARChoices program and defendants' responses, (6) update the factual allegations pertaining to Ms. Elder to reflect changes since she filed the lawsuit, and (7) add and revise factual allegations against the four defendants

named in the original complaint (Dkt. No. 14, ¶¶ 1-7).  Ms. Elder contends that the proposed first amended complaint does not prejudice defendants because it was filed only three days after the period to amend as of right ended, there are no new claims added against defendants, and the added named defendant, Mark White, was likely aware of the lawsuit before being added (*Id.,* at 2).

Defendants oppose Ms. Elder's motion to amend her complaint arguing that, based on Ms. Elder's concession that her amended complaint contains no new claims, coupled with the fact that the factual averments are markedly similar, if not identical to the original complaint, Ms. Elder's motion to amend would be futile (Dkt. No. 17, ¶ 7).  Defendants claim that Ms. Elder's amended complaint would not withstand the challenges presented in the pending motion to dismiss her original complaint (*Id.*).

### A.      Undue Delay, Bad Faith, Or Dilatory Motive

In this case, there is no evidence that Ms. Elder is guilty of undue delay, bad faith, or a dilatory motive.  The Court determines that allowing Ms. Elder to amend her complaint will not unduly prejudice defendants due to the timing of her motion.  Ms. Elder represents that she filed her motion to amend only three days after the period to amend as of right ended, that there are no new claims added against defendants, and that the added named defendant, Mark White, was likely aware of the lawsuit before being added.  Defendants do not meaningfully challenge these assertions.

### B.      Futility

Defendants challenge Ms. Elder's motion for leave to amend claiming the proposed amendments would be futile because, like the original complaint, Ms. Elder's proposed amended complaint would be subject to dismissal for the reasons defendants argue in their motion to dismiss Ms. Elder's original complaint.  An amendment is futile if the amended claim "could not withstand

a motion to dismiss under Rule 12(b)(6)." *Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014) (citation omitted).   To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).   "While a complaint attacked by a [Federal] Rule [of Civil Procedure] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted).   "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).   In determining the sufficiency of a complaint, courts review the complaint itself and any exhibits attached to the complaint.   *Zink v. Lombardi*, 783 F.3d 1089, 1099 (8th Cir.) (en banc), *cert. denied*, 135 S. Ct. 2941 (2015) (citing *Meehan v. United Consumers Club Franchising Corp.,* 312 F.3d 909, 913 (8th Cir. 2002)).   Under this standard, a complaint should be dismissed only where it appears that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.   *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

The Court considers whether it is futile to permit Ms. Elder to amend her original complaint with her proposed amended complaint in the light of arguments defendants raise in their pending motion to dismiss (Dkt. No. 10).   In her proposed amended complaint, Ms. Elder seeks, among

6

other relief, injunctive relief against defendants in their official capacity and money damages against defendants in their individual capacity (Dkt. No. 14-1, at 59-61). Defendants do not modify or adjust the arguments in their pending motion to dismiss Ms. Elder's original complaint to account for changes in Ms. Elder's proposed amended complaint.

### 1. Matters Outside The Pleadings

Defendants attach to their motion to dismiss additional documents for the Court's consideration (Dkt. No. 10-1). As a threshold matter, in response to defendants' motion to dismiss, Ms. Elder contends that the Court should convert defendants' motion to dismiss into one for summary judgment and offer Ms. Elder time to conduct discovery (Dkt. No. 12, at 6). In the alternative, Ms. Elder requests that, if the Court declines to convert defendants' motion to dismiss into a motion for summary judgment, it should exclude pages two and three of defendants' exhibit (Dkt. No. 10-1) and the statements in defendants' brief relating to them (Dkt. No. 11, at 4, 14-15, 26-27) (*Id.*, at 9).

Federal Rule of Civil Procedure 12(d) states that:

If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

However, "Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or opposition to the motion." *State ex rel. Nixon v. Coeur D'Alene Tribe,* 164 F.3d 1102, 1107 (8th Cir. 1999). The court's ability to consider matters outside the pleadings exists to prevent gaming, specifically so that "a plaintiff may not avoid an otherwise proper motion to dismiss by failing to attach to the complaint documents upon which it relies." *BJC Health Sys. v. Columbia Cas. Co.,* 348 F.3d 685, 687-88 (8th Cir. 2003) (internal quotations omitted).

When considering a motion to dismiss, a court may consider materials that are part of the public record, do not contradict the complaint, or are necessarily embraced by the pleadings. *Id.*; *Noble Sys. Corp. v. Alorica Cent., LLC,* 543 F.3d 978, 982 (8th Circ. 2008). Materials embraced by the complaint include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings. *Zean v. Fairview Health Servs.,* 858 F.3d 520, 526-27 (8th Cir. 2017) (internal quotations omitted).

In their motion to dismiss and based on the documents they attach to the motion, defendants contend that, following Ms. Elder's request for an appeal, ADHS scheduled a hearing for May 23, 2019 (Dkt. No. 11, at 4). Defendants assert that, on March 22, 2019, a non-party ADHS employee inadvertently indicated that Ms. Elder did not request that her case remain open pending the appeals process (*Id.*). However, according to defendants, the hearing statement reflected that the case should remain open pending the hearing decision, indicating the agency's expectation that Ms. Elder retain her benefits through the appeals process (*Id.*). Defendants claim that, on May 2, 2019, Ms. Elder's attorneys notified ADHS of its representation of Ms. Elder and requested a continuance of the May 23, 2019, hearing (*Id.*). Defendants represent that, on May 23, 2019, the date of the original hearing, Ms. Elder's attorneys notified separate defendant Mr. Rosen that Ms. Elder had filed this lawsuit and requested that her benefits be restored (*Id.*). They represent that this was ADHS's first notice that Ms. Elder's benefits had been inadvertently terminated and that Ms. Elder's benefits were restored the next day, on May 24, 2019 (*Id.*).

Ms. Elder contends that defendants use the attachments to their motion to dismiss as evidence to explain their version of what happened and that attachments used for evidentiary purposes are matters outside the pleadings (Dkt. No. 12, at 8). She claims that the attachments are used to establish contested material matters subject to further fact-finding through discovery (*Id.*,

at 9).  She also claims that in one excerpt, defendants connect the contested factual matters to a legal argument that, if accepted, could insulate them from liability (*Id.*).  In support, Ms. Elder points to an Eighth Circuit case in which the court found that the purpose of documents submitted in the defendants' motion to dismiss was "to discredit and contradict" the plaintiff's allegations.  *BJC Health Sys.,* 348 F.3d at 687-88.  Because the documents were evidence, the plaintiff was entitled to "an opportunity to discover or to provide additional evidence."  *Id.*

Defendants claim that the exhibits filed with the motion to dismiss are necessarily embraced by the complaint and do not contradict Ms. Elder's allegations, so the Court should consider them without converting the pending motion to a motion for summary judgment or striking the corresponding legal arguments (Dkt. No. 19, at 2, 5).  Defendants maintain that Ms. Elder failed to attach to her complaint documents upon which she places significant emphasis and that attaching the documents to her complaint would demonstrate that they were not issued directly by any of the named ADHS defendants (*Id.*, at 3).  Defendants also claim that the exhibits are consistent with Ms. Elder's allegations (*Id.*).  Defendants compare the situation to *Zean v. Fairview Health Services*, in which the Eighth Circuit found that documents attached to a motion to dismiss were embraced by the pleadings because the documents refuted a conclusory allegation stated in the plaintiff's complaint.  858 F.3d at 527.  The court reasoned that, because a court is not bound to accept legal conclusions couched as factual allegations, the exhibits were embraced by the pleadings and properly considered by the district court.  *Id.*

Defendants contend that Ms. Elder's claim that the termination of her ARChoices benefits was caused by ADHS's failure to take whatever steps are necessary to maintain Medicaid Services is a conclusory allegation and that the holding of *Zean* therefore applies (Dkt. No. 19, at 5).  They state that Ms. Elder's lack of personal knowledge about any of ADHS's internal procedures or

practices regarding appeals or continuing benefits is not due to a lack of discovery but to a failure to plead sufficiently non-conclusory allegations (*Id.,* at 6).  Defendants also claim that the exhibits and the explanation are not truly contested matters because the complaint does not contest the existence of forms or process for handling appeals (*Id.*, at 5-6).

Ms. Elder's claims in her proposed amended complaint go beyond conclusory allegations; therefore, this case is dissimilar to the situation in *Zean.*  Further, the attachments to defendants' motion to dismiss appear to be presented for the purpose of establishing matters that are contested by the parties.  Defendants use the documents to argue a process for identifying timely appeals and maintaining benefits, the ADHS employee responsible for the termination of Ms. Elder's benefits, the agency's expectations for Ms. Elder's benefits during the appeal process, and the agency's state of mind in effectuating the termination.  Having considered controlling precedent and the attachments themselves, the Court determines that the attachments are not properly considered by the Court at the motion to dismiss stage.  Accordingly, to rule on whether permitting Ms. Elder to file her proposed amended complaint would be futile, the Court will exclude pages two and three of the exhibit (Dkt. No. 10-1, at 2, 3) and the statements in defendants' brief relating to them (Dkt. No. 11, at 4, 14-15, 26-27).

### 2.      Official Capacity Claims

Defendants assert several challenges to Ms. Elder's ability to bring claims against them in their official capacities.

### a.      Money Damages

Pursuant to § 1983, Ms. Elder is suing defendants in their official capacities for violating her Fourteenth Amendment Due Process rights (Dkt. No. 14-1, ¶ 132-139).  Ms. Elder's proposed amended complaint clarifies that she does not seek money damages from defendants in their

official capacities (Dkt. No. 14, ¶ 2).  Ms. Elder does seek prospective injunctive relief against defendants in her proposed amended complaint.

### b.      Sovereign Immunity

Defendants maintain that Ms. Elder's claims against them in their official capacities fail because defendants are entitled to sovereign immunity and because Ms. Elder lacks standing to bring official capacity claims for injunctive relief; defendants maintain that this Court lacks subject matter jurisdiction (Dkt. No. 10, ¶¶ 4, 6).  The Court disagrees.

The Eleventh Amendment presents a jurisdictional bar to any suit that is in actuality directed against the State, whether the action is nominally instituted against the State, a state agency or instrumentality, or a state official.  *See, e.g.*, *Fla. Dep't of State v. Treasurer Salvors*, 458 U.S. 670 (1982); *Alabama v. Pugh*, 438 U.S. 781 (1979); *Edelman v. Jordan*, 415 U.S. 651 (1974).  Without the State's consent, this jurisdictional bar applies regardless of the nature of the relief sought.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984).  "Congress may abrogate the States' immunity from suit pursuant to its powers under § 5 of the Fourteenth Amendment," but such abrogation must be "unmistakably clear in the language of the statute."  *Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 35 (2012) (internal quotations and citations omitted).

In determining whether Eleventh Amendment immunity applies to a particular entity, this Court must examine the particular entity in question and its powers and characteristics as created by state law to determine whether the suit is in reality a suit against the State.  *See Hadley v. N. Arkansas Cmty. Tech. Coll.*, 76 F.3d 1437, 1439 (8th Cir. 1996).  The defendants in this case are employees of the ADHS and are being sued in their official capacities.  A claim against a state

official in his or her official capacity is treated as a claim against the entity itself.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Therefore, Ms. Elder's claims against defendants are claims against the State of Arkansas and defendants are immune from suit except when Congress has validly abrogated the State's sovereign immunity.

The doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), is an exception that abrogates a State's sovereign immunity protection.  It provides that state officials may be sued in their official capacities for prospective injunctive relief to prevent future federal constitutional or statutory violations.  *Id.*   To determine whether a plaintiff has alleged a proper *Ex Parte Young* claim, the federal court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 296 (1997) (O'Connor, J., concurring)).  The plaintiff must also name as a defendant the state official who is responsible for enforcing the contested statute, policy, or practice in his or her official capacity.  *See Greenawalt v. Ind. Dep't of Corr.,* 397 F.3d 587, 589 (7th Cir. 2005).  Declaratory relief is available under *Ex Parte Young* when there is an ongoing or threatened violation of federal law.  *Green v. Mansour,* 474 U.S 64, 73 (1985).  However, the *Ex Parte Young* doctrine cannot be used to obtain an injunction requiring the payment of funds from the State's treasury.  *See Edelman v. Jordan,* 415 U.S. 651, 666 (1974).

In their motion to dismiss Ms. Elder's original complaint, defendants assert that the *Ex Parte Young* exception is not applicable to Ms. Elder's complaint because she cannot demonstrate an ongoing violation of federal law (Dkt. No. 11, at 8).  Defendants also assert that Ms. Elder's cause of action does not seek prospective relief because Ms. Elder's ARChoices benefits have resumed and the possibility that Ms. Elder will be exposed to future injury is too speculative (Dkt.

No. 11, at 10; Dkt. No. 19, at 10).  Defendants claim that Ms. Elder cannot demonstrate a sound basis for the injunctive relief she seeks because she cannot point to a deliberate policy aimed at interfering with ARChoices beneficiaries' benefits pending appeal (Dkt. No. 19, at 13). Defendants also claim that Ms. Elder's request that the State be forced to adopt a specific policy and be subject to constant monitoring by the federal courts does not form the proper basis for entitlement to injunctive relief and runs afoul of comity and federalism principles (*Id.,* at 20).

Ms. Elder rebuts the assertion that she does not seek prospective injunctive relief (Dkt. No. 12, at 10).  Ms. Elder alleges that ADHS lacks a constitutionally adequate process for maintaining the benefits of beneficiaries who timely apply (*Id.*).  To remedy this, Ms. Elder requests that the Court grant a permanent injunction that orders defendants in their official capacity to implement a process to ensure that Ms. Elder and other Medicaid beneficiaries who timely appeal adverse agency actions receive continuing benefits pending the outcome of the evidentiary hearing (*Id.*). Ms. Elder contends that she does not seek merely the restoration of her Medicaid but relief that will prevent an ongoing deprivation of her constitutional rights should any adverse action arise (*Id.*).  Ms. Elder represents that her ARChoices Medicaid eligibility is reevaluated every year, which places her at a substantial risk of an adverse action each time she is evaluated (*Id.*, at 12).

Here, given the operative pleading standard and the filings before the Court, and drawing all reasonable inferences in Ms. Elder's favor, the Court determines that Ms. Elder has alleged sufficient facts in her proposed amended complaint to support her claims and to overcome defendants' assertion of sovereign immunity.  The *Ex Parte Young* doctrine requires that Ms. Elder's proposed amended complaint allege an ongoing violation of federal law and seek relief properly characterized as prospective.  Ms. Elder claims that "[c]learly established constitutional due process principles require that a Medicaid beneficiary have the opportunity for an evidentiary

administrative hearing before services are terminated." (Dkt. No. 14-1, ¶ 2).  Ms. Elder alleges that, as a matter of custom, policy, or practice, ADHS automatically terminates or reduces the services of Medicaid beneficiaries subject to adverse agency actions regardless of the timing of any appeal request, which she maintains is a violation of her Fourteenth Amendment Due Process rights.  She alleges facts that she claims support her allegations of a custom, policy, or practice on the part of defendants and defendants' notice.  She also alleges facts demonstrating how she maintains defendants applied this challenged custom, policy, or practice to her and could do so again in the future.  According to Ms. Elder, ADHS assesses her ARChoices eligibility at least once per year, which places her at substantial risk of an adverse action each time she is evaluated (Dkt. Nos. 12, at 12; 14-1, ¶ 120).

The Court finds that Ms. Elder's proposed amended complaint sufficiently alleges a claim against defendants in their official capacities for prospective injunctive relief at this stage of the litigation.  The Court recognizes that Ms. Elder's Medicaid benefits have been reinstated; however, the Court determines that Ms. Elder has sufficiently alleged that her claims are not moot, for the reasons explained in this Order.  Defendants' assertions that Ms. Elder's requested injunctive relief runs afoul of comity and federalism principles is a matter to be determined later in this litigation, once the parties have had the opportunity to conduct discovery and brief all issues before the Court.

Accordingly, the Court determines that granting Ms. Elder leave to file her proposed amended complaint is not futile based on defendants' claims of sovereign immunity.

### c.     Standing

Defendants also assert in their motion to dismiss her original complaint that Ms. Elder lacks standing to sue defendants in their official capacities (Dkt. No. 11, at 10).[2]   To establish constitutional standing, a plaintiff must demonstrate:  (1) an injury in fact, (2) a causal connection between that injury and the challenged conduct, and (3) the likelihood that a favorable decision by the court will redress the alleged injury.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). A plaintiff who seeks injunctive relief must show that she "faces a threat of future or ongoing harm."  *Park v. Forest Serv. of the United States,* 205 F.3d 1034, 1037 (8th Cir. 2000).  An injury resulting from past conduct alone is not enough to support a claim for injunctive relief.  *Id.* Speculation of future injury is insufficient to warrant injunctive relief.  *Los Angelos v. Lyons,* 461 U.S. 95, 111 (1983).  A plaintiff must show that the threat of injury is real and immediate.  *O'Shea v. Littleton,* 414 U.S. 488, 496 (1974).  If a plaintiff lacks standing, a district court has no subject matter jurisdiction over the matter and must dismiss the case.  *Young Am. Corp. v. Affiliate Comp. Servs., Inc.,* 424 F.3d 840, 843 (8th Cir. 2005).

A party invoking federal jurisdiction must support each of the standing requirements with the same kind and degree of evidence at the successive stages of litigation as any other matter on which a plaintiff bears the burden of proof.  *Lujan*, 504 U.S. at 561; *Constitution Party of S. Dakota v. Nelson*, 639 F.3d 417, 420-21 (8th Cir. 2011).  Therefore "general factual allegations of injury resulting from the defendant's conduct" will suffice to establish Article III standing at the pleading stage, "for on a motion to dismiss we presume that general allegations embrace those specific facts

---

[2]  The Court does not understand defendants to challenge Ms. Elder's standing to bring claims against defendants in their individual capacity.

that are necessary to support [a contested] claim." *Lujan*, 504 U.S. at 561 (internal quotation marks and citation omitted).

Defendants allege that Ms. Elder lacks standing because she cannot demonstrate that she faces any real or immediate threat of harm (Dkt. No. 11, at 11). They contend that, because Ms. Elder's benefits resumed on the day after she filed her complaint, then she faces no injury in fact (*Id.*). Defendants claim that a favorable decision by this court would not redress Ms. Elder's injury, because there is no ongoing alleged violation (*Id.*). Defendants claim that the possibility that Ms. Elder will be exposed to future injury is too speculative and is not immediate; therefore, her claim is too hypothetical to demonstrate an actual case or controversy (*Id.*, at 10).

Ms. Elder claims that she has standing because: (1) she suffered an injury in fact when ADHS terminated her ARChoices Medicaid; (2) defendants' unlawful conduct is fairly traceable to her injuries because, if defendants had not terminated her ARChoices Medicaid pending her appeal, she would not have suffered any of the injuries alleged; and (3) a favorable decision will redress the injuries because injunctive relief against defendants in their official capacity will ensure continuing benefits for a timely appeal of any adverse action the agency takes against her in the future (Dkt. No. 12, at 11-12). Ms. Elder asserts that injunctive relief is necessary because ADHS does not claim that it has implemented a constitutionally adequate system, which is particularly necessary because ADHS will be assessing her ARChoices eligibility at least once per year and placing her at substantial risk of an adverse action each time (*Id.,* at 12).

Defendants do not raise mootness in support of their motion to dismiss; however, Ms. Elder claims that their arguments implicate mootness with respect to her injunctive relief claim (*Id.*). Federal courts do not have the power to decide moot questions; "[i]n general a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the

outcome." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (internal quotations and citations omitted). Ms. Elder maintains that her injury persists and the relief she seeks means that her claim for injunctive relief is not moot.  Ms. Elder also maintains that, even if the claim is moot, two exceptions to the doctrine apply that permit her to maintain her claim.

First, she claims that the voluntary cessation exception applies, which states that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189 (2000).  Ms. Elder contends that, while defendants assert that they voluntarily reinstated her Medicaid benefits a day after being informed of the present lawsuit, mere restoration of benefits unlawfully terminated does not establish that a similar termination could not be reasonably expected to occur again (Dkt. No. 12, at 13).  Ms. Elder's ARChoices eligibility is reassessed at least once a year, so Ms. Elder avers that she will be exposed to the risk of an unconstitutional deprivation of benefits again (*Id.*, at 14).  Therefore, Ms. Elder claims she could be in the same situation again upon her next reassessment if her claims are determined to be moot because ADHS would be free to return to its practices of having no system to continue benefits upon timely appeal (*Id.*).

Second, Ms. Elder alleges that another exception to mootness applies, which is that this is a claim that is capable of repetition and evading review (Dkt. No. 12, at 13-14).  "The exception applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Fed. Election Comm'n v. Wisconsin Right to Life, Inc.,* 551 U.S. 449, 462 (2007).  A "reasonable expectation" is something more than a merely physical or theoretical possibility; rather, there must be a demonstrable probability that the same

17

controversy, involving the same complaining party, will recur.  *Murphy*, 455 U.S. at 482.  "The capable of repetition yet evading review rule is an extraordinary and narrow exception to the mootness doctrine." *Randolph v. Rodgers,* 170 F.3d 850, 856 n. 7 (8th Cir. 1999); *see also Missouri ex rel. Nixon v. Craig,* 163 F.3d 482, 485 (8th Cir. 1998) (exception applies only in "exceptional circumstances" (quotation marks omitted)).  This doctrine does not apply when the issue might recur in someone else's case, but not the plaintiff's case.  *Heles v. South Dakota*, 682 F.2d 201, 202 (8th Cir. 1982).

In *Honig v. Doe*, 484 U.S. 305 (1988), the doctrine applied to a disabled student's challenge to his suspension from school for disruptive behavior.  The Supreme Court found that given his "inability to conform his conduct to socially acceptable norms" or "govern his aggressive, impulsive behavior," it was "reasonable to expect that [the student would] again engage in the type of misconduct that precipitated this suit" and "be subjected to the same unilateral school action for which he initially sought relief." *Honig*, 484 U.S. at 320-321.  The doctrine also applied in *Turner v. Rogers*, 564 U.S. 431 (2011), where the Supreme Court determined that an indigent person repeatedly held in civil contempt for failing to make child support payments, who was at the time over $13,000 in arrears, and whose next hearing was only five months away, was destined to find himself in civil contempt proceedings again.  The challenged denial of appointed counsel at his contempt hearing was determined to be capable of repetition.  *See* 564 U.S., at 440.  *See also Missourian v. Fiscal Accountability v. Klahr*, 830 F.3d 789 (8th Cir. 2016) (examining the doctrine's application in election issue cases).

Ms. Elder contends that the agency's failure deprives individual beneficiaries of their benefits for the limited period between the date of the adverse action and the administrative hearing, which is typically no more than 90 days (Dkt. No. 12, at 14).  She states that three months

is not enough time to litigate the issue in federal court and that there is a reasonable expectation that she will be subject to the same action again because her benefits are subject to a yearly reassessment (*Id.*, at 14-15).

At this stage of the proceeding, the Court declines to find that permitting Ms. Elder to file her proposed amended complaint would be futile on this basis.  In her proposed amended complaint, Ms. Elder sufficiently alleges that she suffered an injury in fact when her ARChoices Medicaid benefits were terminated before she had the opportunity for an appeal hearing, and she has linked the alleged injury to the defendants.  Ms. Elder's proposed amended complaint clarifies that she is not seeking an injunction to restore her current benefits but for the purpose of prospective relief in the event this situation occurs after future ADHS evaluations.  Although Ms. Elder's benefits were restored, she sufficiently alleges in her proposed amended complaint that her receipt of benefits is subject to review annually and potentially more frequently, and she may be subject to termination of her benefits before an appeal hearing again because of ADHS's alleged practice of terminating or reducing the services of Medicaid beneficiaries subject to adverse agency actions regardless of the timing of any appeal request.

Ms. Elder has alleged sufficiently that she has standing at the pleading stage of the litigation, and the Court determines that permitting Ms. Elder to file her proposed amended complaint would not be futile on this basis.  However, the Court will reconsider defendants' standing argument when the parties have had an opportunity to conduct discovery regarding ADHS's appeals process and the likelihood of similar events reoccurring in the future.

### 3.    Individual Capacity Claims

Defendants assert that Ms. Elder's claims against them in their individual capacities fail because Ms. Elder's complaint fails to state a claim upon which relief can be granted for her alleged

Due Process violation against defendants in their individual capacities and because they are entitled to qualified immunity (Dkt. No. 11, at 12). The Court examines these arguments in the context of the alleged futility of Ms. Elder's proposed amended complaint.

### a.     Failure To State A Claim

To establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. *Hafer v. Melo,* 502 U.S. 21, 25 (1991). Defendants contend that Ms. Elder's Due Process claims against defendants in their individual capacities fail because the Due Process clause is not implicated by a state official's negligent act (Dkt. No. 11, at 12). They represent that no ADHS defendant intended for Ms. Elder's ARChoices benefits to terminate after the agency received her request for a hearing and that the termination was the inadvertent error of a non-party ADHS employee (*Id.*, at 14). Defendants assert that Ms. Elder's claims also fail because she cannot establish a causal link to, and direct responsibility for, the temporary interruption of her ARChoices benefits by the named defendants (*Id.*, at 15). Defendants maintain that her complaint is wholly void of any factual allegations that demonstrate that any of the defendants personally took steps to terminate her ARChoices benefits or any other conduct that violates her constitutional rights (*Id.,* at 17). Finally, defendants claim that Ms. Elder does not establish a plausible claim because *respondeat superior* is not a basis for § 1983 liability and because Ms. Elder cannot show that defendants received notice of a pattern of unconstitutional acts committed by a subordinate or that defendants were deliberately indifferent to or authorized those acts (*Id.,* at 18-19).

Ms. Elder claims that defendants violated her Fourteenth Amendment Due Process rights by terminating her ARChoices Medicaid services prior to an evidentiary hearing (Dkt. No. 14-1, ¶ 137). She claims that the violation stemmed from each individual defendant's contribution to a

systemic failure to implement basic procedures needed to administer the Medicaid program according to established law (Dkt. No. 12, at 16, 19).  She asserts that, to establish an agency official's liability premised on an agency policy, a plaintiff must show only the official's personal involvement in the policy at issue (*Id.,* at 26).  Further, according to Ms. Elder, her complaint shows that each defendant had notice of a pattern of unconstitutional acts and were deliberately indifferent to the actions of their subordinates, which establishes the plausibility required for her claim (*Id.,* at 33).

Having reviewed the allegations in Ms. Elder's proposed amended complaint, the Court determines that Ms. Elder has sufficiently alleged her claims against each of the defendants she sues.  To the extent defendants dispute Ms. Elder's allegations and the inferences to be drawn from those allegations, such inquiries are not appropriate for the Court at the motion to dismiss stage. Defendants insist Ms. Elder complains at most about negligent conduct, but Ms. Elder in her proposed amended complaint alleges sufficient facts which, if accepted as true, state a claim against defendants.  Further, Ms. Elder includes allegations in her proposed amended complaint that detail each defendant's purported involvement, and she sufficiently alleges notice.  At this stage, the Court must accept Ms. Elder's allegations as true.  Ms. Elder's claims in her proposed amended complaint against defendants in their individual capacity are not futile on this basis.

### b.    Qualified Immunity

Defendants also assert in their motion to dismiss Ms. Elder's original complaint that they are entitled to qualified immunity, which protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  Qualified immunity balances two important interests—the need to hold public

officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez,* 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting) (quoting *Butz v. Economou,* 438 U.S. 478, 507 (1978), for the proposition qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law").

The proper standard for addressing qualified immunity at the Rule 12(b)(6) stage is whether immunity is established on the face of the complaint. *Hafley v. Lohman,* 90 F.3d 264, 266 (8th Cir.1996), *cert. denied,* 519 U.S. 1149 (1997). At this stage in the litigation, to overcome the defense of qualified immunity, Ms. Elder's complaint must state facts showing that she will plausibly be able to establish that: (1) that defendants violated a statutory or constitutional right and (2) that the right was "clearly established" at the time of the challenged conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Foster v. Mo. Dep't of Health & Senior Servs.*, 736 F.3d 759, 762 (8th Cir. 2013) (quoting *Winslow v. Smith*, 696 F.3d 716, 731 (8th Cir. 2012)). "If the answer to either question is no" then a defendant is entitled to qualified immunity. *Doe v. Flaherty*, 623 F.3d 577, 583 (8th Cir. 2010). "For a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *White v. Pauly*, 137 S.Ct. 548, 551 (2017) (citing *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015)). The law is clear if it gives the official "fair warning" that his conduct violated an individual's rights when the officer acted. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

To resolve whether permitting Ms. Elder to file her proposed amended complaint would be futile due to qualified immunity at this stage, the Court examines Ms. Elder's proposed amended

complaint.  She alleges that defendants violated her due process rights and that her due process rights were clearly established at the time of the challenged conduct.  From the face of Ms. Elder's proposed amended complaint, the Court cannot determine that  granting Ms. Elder leave to file her proposed amended complaint would be futile based on defendants' allegations of qualified immunity.

### III.     Motion To Dismiss

Because the Court grants Ms. Elder's motion to amend her complaint, the Court denies as moot defendants' pending motion to dismiss (Dkt. No. 10).

### IV.     Motion To Stay Discovery

Also before the Court is a motion to stay discovery filed by defendants (Dkt. No. 23).  In the motion, defendants request a stay of discovery pending this Court's ruling on their motion to dismiss and Ms. Elder's motion for leave to amend her complaint (*Id.*, ¶ 6).  Defendants aver that the interests of judicial economy and efficiency mitigate in favor of staying discovery until the Court has had an opportunity to consider and rule on the pending dispositive motions (*Id.*, ¶ 9). Defendants represent that their counsel conferred with counsel for Ms. Elder prior to filing the motion and that while plaintiff does not join the motion to stay, she does agree that the parties may hold off on exchanging initial disclosure pending a resolution on the motion to stay (*Id.*, ¶ 10).

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, district courts have broad discretion to stay discovery.  *Steinbuch v. Cutler*, 518 F.3d 580, 588 (8th Cir. 2008) (citing *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 713 (8th Cir. 2003)); *see also Maune v. Int'l Bhd. of Elec. Workers*, 83 F.3d 959, 963 (8th Cir. 1996) (upholding the district court's granting of a party's request to stay discovery); *Blair v. Douglas County*, No. 8:11CV349, 2013 WL 2443819, at *1 (D.

Neb. June 4, 2013) ("[I]t is a settled proposition that a court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined.").

The Court in this Order rules on defendants' pending motion to dismiss and Ms. Elder's pending motion to amend her complaint. As a result, the Court denies as moot defendants' motion to stay discovery (Dkt. No. 23).

### V.   Motion To Substitute Party

Pending is defendants' motion to substitute party (Dkt. No. 24). Defendants represent that Craig Cloud, sued in his individual and official capacity, is no longer employed with ADHS and that Jerald Sharum replaced Mr. Cloud as the Director of Provider Services and Quality Assurance (*Id.*, ¶ 2). Defendants move to substitute Mr. Sharum, in his official capacity only, as Director of Provider Services and Quality Assurance. Ms. Elder filed no response to this motion, and the time for filing a response passed. For good cause shown, the Court grants defendants' motion to substitute party and directs the Clerk to substitute as a defendant Mr. Sharum in his official capacity for Mr. Cloud in his official capacity.

### IV.   Conclusion

For these reasons, the Court grants Ms. Elder's motion to amend her complaint (Dkt. No. 14). The Court directs Ms. Elder to file her amended complaint within 14 days from the date of this Order. The Court directs the Clerk to issue a new summons in this action reflecting the added defendants and directs the U.S. Marshall to serve Mark White pursuant to the Court's earlier order granting Ms. Elder's motion to proceed *in forma pauperis* (Dkt. No. 3).

The Court denies as moot defendants' motion to dismiss Ms. Elder's original complaint (Dkt. No. 10). The Court denies as moot defendants' motion to stay discovery (Dkt. No. 23). The Court grants defendants' motion to substitute party (Dkt. No. 24).

It is so ordered this 29th day of May, 2020.

Kristine G. Baker
United States District Judge