IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

GINGER P. ELDER, *et al.*                                                    PLAINTIFFS

v.                                    Case No. 3:19-cv-00155 KGB

CINDY GILLESPIE, Director, Arkansas
Department of Human Services in her
official and individual capacity, *et al.*                          DEFENDANTS

<u>**ORDER**</u>

On May 23, 2019, plaintiff Ginger P. Elder initiated this lawsuit against defendants Cindy

Gillespie, Director of the Arkansas Department of Human Services ("ADHS") in her official and

individual capacity; Craig Cloud, Director of the Division of Provider Services and Quality

Assurance of ADHS in his official and individual capacity; Richard Rosen, Managing Attorney

for the Office of Chief Counsel of ADHS in his official and individual capacity; and David

Sterling, Chief Counsel of ADHS in his official and individual capacity (Dkt. No. 2).  On May 29,

2020, this Court granted Ms. Elder's motion for leave to file her first amended complaint (Dkt.

No. 25), and on June 11, 2020, Ms. Elder filed her first amended complaint which added claims

against defendants Mark White, Deputy Director of the Division of Aging, Adult, and Behavioral

Health Services in his official and individual capacity; Jerald Sharum, Director of the Division of

Provider Services and Quality Assurance of ADHS in his official capacity; and John Doe in his

official and individual capacity (Dkt. No. 26).

On June 24, 2020, this Court granted Ms. Elder's motion to consolidate this case with

*Dearmore v. Gillespie*, Case No. 4:20-cv-188-KGB (Dkt. No. 28).  On July 10, 2020, Ms. Elder

and plaintiffs Jacqueline Dearmore and Benjamin Taylor filed their operative consolidated

complaint against defendants Ms. Gillespie, Director of ADHS in her official and individual

capacity; Mr. Cloud, Director of Division of Provider Services and Quality Assurance of ADHS in his individual capacity; Mr. Rosen, Managing Attorney of the Office of Chief Counsel of ADHS in his official and individual capacity; Mr. Sharum, Director of the Division of Provider Services and Quality Assurance of ADHS in his official capacity; Mr. Sterling, Chief Counsel of ADHS in his official and individual capacity; Mr. White, Chief of Staff to Ms. Gillespie and Chief Legislative and Intergovernmental Affairs Officer of ADHS in his official and individual capacity; and John Does in their official and individual capacities (Dkt. No. 31).

Before the Court is a motion to dismiss filed by Ms. Gillespie, Mr. Sterling, Mr. Rosen, and Mr. White ("ADHS defendants") (Dkt. No. 32). Plaintiffs responded in opposition to the motion (Dkt. No. 34), and ADHS defendants replied (Dkt. No. 35). For the following reasons, the Court denies ADHS defendants' motion to dismiss (Dkt. No. 32).

## I.      Factual And Procedural Background

Medicaid is a federal medical assistance program for individuals with limited economic resources in which the State of Arkansas has elected to participate (Dkt. No. 31, ¶¶ 17-18). Arkansas has designated ADHS to be the state agency which administers and supervises the administration of Arkansas's Medicaid program (*Id.*, ¶ 18). Home and Community-Based Services ("HCBS") programs are optional services under the federal Medicaid Act and provide community-based alternatives for individuals who would otherwise require institutionalization (*Id.*, ¶ 21). ADHS currently operates an HCBS program called ARChoices which provides services including attendant care services, home-delivered meals, and a personal emergency response system (*Id.*, ¶¶ 22-23). An ARChoices beneficiary also receives the full range of state plan Medicaid services (*Id.*, ¶ 24). An individual must meet certain financial and functional eligibility criteria to qualify for ARChoices (*Id.*, ¶ 29).

ADHS conducts a functional eligibility assessment at least once per year to determine whether an individual is eligible and the amount of services to allocate to the individual (*Id.*, ¶ 31). On January 1, 2016, ADHS switched its system for determining eligibility from a system based on professional discretion of an ADHS registered nurse to a system based on an algorithm called Resource Utilization Groups ("RUGs"), which resulted in about half of all ARChoices beneficiaries receiving service reductions (*Id.*, ¶¶ 32-33). On January 1, 2019, ADHS implemented a new assessment tool called Arkansas Independent Assessment ("ARIA"), under which a nurse employed by a company called Optum visits an applicant or beneficiary and asks questions using an ARIA assessment tool (*Id.*, ¶¶ 34-35). Those responses are run through an algorithm to determine eligibility based on tiers, and ADHS then allocates services to eligible individuals based on an ARChoices Person-Centered Service Plan ("PCSP") (*Id.*, ¶ 35). An ADHS nurse sends the applicant or beneficiary a copy of the PCSP along with a Notice of Action, triggering the beneficiary's right to an appeal (*Id.*, ¶ 36). Federal and state Medicaid regulations require ADHS to send a notice of adverse action to a beneficiary at least 10 days before the date the adverse action will take effect, and ADHS may not terminate or reduce benefits until the outcome of a hearing if the beneficiary timely appeals (*Id.*, ¶¶ 43-44).

Plaintiffs represent that Ms. Elder has been an eligible ARChoices Medicaid beneficiary since 2015 and receives attendant care and home-delivered meals (*Id.*, ¶¶ 49-50). ADHS increased Ms. Elder's allocation of care hours in 2016, 2017, and 2018, and, according to her last ADHS assessment prior to 2019, ADHS determined that she required approximately 30 hours of care per week (*Id.*, ¶ 51). According to Ms. Elder, on or around January 15, 2019, ADHS assessed Ms. Elder for ARChoices eligibility using the ARIA assessment instrument and, on March 12, 2019, informed East Arkansas Area Agency on Aging, which in turn informed Ms. Elder, that Ms. Elder

would no longer be eligible for ARChoices and would be terminated from the program pursuant to the January 15, 2019, assessment (*Id.*, ¶¶ 56-57).  On March 13, 2019, Ms. Elder appealed ADHS's decision to terminate her eligibility and asked ADHS to reinstate her ARChoices services (*Id.*, ¶ 58).  On March 15, 2019, ADHS issued a Notice of Action to Ms. Elder terminating her ARChoices eligibility as of March 25, 2019 (*Id.*, ¶ 59; Dkt. No. 31-1).

ADHS received Ms. Elder's appeal letter by March 25, 2019, and terminated her ARChoices Medicaid services that same day (Dkt. No. 31, ¶¶ 60-61).  According to plaintiffs, Ms. Elder did not receive ARChoices services between March 25, 2019, and May 26, 2019, and suffered damages as a result of the termination of her ARChoices benefits (*Id.*, ¶¶ 64-71).  On June 6, 2020, ADHS implemented a new plan of care allocating Ms. Elder about 30 weekly hours of combined attendant and personal care and withdrew the adverse action reflected in the March 15, 2019, notice (*Id.*, ¶¶ 74-75).  Plaintiffs maintain that reinstatement of Ms. Elder's ARChoices Medicaid did not compensate her for the costs of care and medical treatment she went without or for other costs, anguish, and suffering she experienced as a result of ADHS's termination of ARChoices prior to an evidentiary hearing (*Id.*, ¶ 76).  Plaintiffs assert that, based on ADHS's standard procedure of yearly assessment, Ms. Elder faces imminent reassessment, which has been delayed due to COVID-19 (*Id.*, ¶ 77).

Plaintiffs next represent that Ms. Dearmore first applied for the predecessor program to ARChoices in 2012, and ADHS determined her to be eligible in 2012 and every year since then (*Id.*, ¶ 82).  Ms. Dearmore had been receiving 143 hours per month of attendant care from at least August 2017 to November 8, 2019, and also received seven home-delivered meals per week and a personal emergency response system pursuant to her plan of care in effect prior to November 8, 2019 (*Id.*, ¶ 83).  On November 8, 2019, ADHS mailed Ms. Dearmore a Notice of Action, an

4

ARChoices PCSP authorizing her to receive 103 hours per month of combined attendant and personal care effective December 1, 2019, and a Task and Hour Standards ("TAHS") form (*Id.*, ¶ 84; Dkt. No. 31-4).  According to plaintiffs, the Notice of Action does not identify that a reduction has taken place and does not provide any specific reasons for the reduction (Dkt. No. 31, ¶ 85).  Plaintiffs allege that Ms. Dearmore did not understand from the notice or service plan why her services were being reduced (*Id.*).

On November 15, 2019, Ms. Dearmore completed and emailed a form to appeal ADHS's decision and checked a box marked, "I want to continue getting medical assistance until the hearing" (*Id.*, ¶ 87; Dkt. No. 31-5).  ADHS received the appeal within 10 days of November 8, 2019, and authorized Ms. Dearmore to receive 103 hours per month of combined attendant and personal care starting December 1, 2019 (Dkt. No. 31, ¶¶ 87-88).  Plaintiffs represent that defendants restored her care on March 3, 2020, after being served with notice of her lawsuit and a motion for temporary restraining order (*Id.*, ¶ 88).  Plaintiffs also assert that Ms. Dearmore suffered damages as a result of her reduced care hours between December 1, 2019, and March 3, 2020 (*Id.*, ¶¶ 89-92).  Plaintiffs assert that ADHS will continue to assess Ms. Dearmore using the same ARIA assessment tool and related algorithms currently in effect, so Ms. Dearmore will face a certain reduction of services (*Id.*, ¶ 98).  Plaintiffs further assert that, when taking an adverse action regarding service allocation, ADHS will use substantially the same alleged deficient Notice of Action which Ms. Dearmore received in November 2019 (*Id.*, ¶ 99).

Plaintiffs next represent that Mr. Taylor was determined eligible for ARChoices in 2018 and that, pursuant to a PCSP, ADHS authorized him to receive 137 hours per month of attendant care and seven weekly home-delivered meals (*Id.*, ¶ 105).  According to plaintiffs, in late 2019 or early 2020, Optum assessed Mr. Taylor for continuing ARChoices eligibility, ADHS determined

him eligible, and an ADHS nurse visited Mr. Taylor and completed a PCSP allocating him a total of 86.75 monthly hours of combined attendant and personal care hours and removing home-delivered meals (*Id.*, ¶¶ 106-107). Plaintiffs represent that the service plan states that it was mailed on February 25, 2020, but Mr. Taylor never received a copy of it in the mail, did not receive a Notice of Action, did not receive any information about his Individual Service Budget, did not receive a copy of the Task and Hour Worksheet, and did not understand why ADHS cut his services (*Id.*, ¶ 108). On March 1, 2020, Mr. Taylor completed an appeal form, checked a box marked "I want to continue getting medical assistance until the hearing," and handwrote an additional statement reading, "All services must remain as they are pending a final decision" (*Id.*, ¶ 110; Dkt. No. 31-8). On March 3, 2020, ADHS received the appeal form at the e-mail address specified on the form (Dkt. No. 31, ¶ 108).

Mr. Taylor received 86.75 hours of care per month from March 1, 2020, until May 20, 2020, at which time ADHS restored Mr. Taylor's care to 137 hours per month (*Id.*, ¶ 111). Plaintiffs represent that Mr. Taylor suffered damages as a result of the reduced care hours (*Id.*, ¶¶ 112-117). Plaintiffs further represent that ADHS will assess Mr. Taylor using the same ARIA assessment tool and related algorithms currently in effect and that, as a result, Mr. Taylor faces a certain reduction of services at the next assessment and service plan determination (*Id.*, ¶ 121).

Plaintiffs allege that ADHS defendants knew that the January 1, 2019, change from the RUGs assessment tool to the ARIA assessment tool would cause high numbers of appeals due to predicted reductions in services and that ADHS defendants in fact knew that the present ARChoices assessment system caused significant numbers of appeals (*Id.*, ¶¶ 171, 174, 176). According to plaintiffs, ADHS received 497 appeals relating to ARChoices in 2019 (*Id.*, ¶ 177).

Plaintiffs further allege that, between 2016 and the present, ADHS has engaged in a pattern and practice of failing to continue ARChoices benefits where beneficiaries appeal within 10 days of the Notice of Action and that approximately 30 beneficiaries actually appealed adverse actions within 10 days, requested continuing services pending appeal, and improperly had their services reduced or terminated (*Id.*, ¶¶ 178-80). Plaintiffs maintain that ADHS does not have any written policy, procedure, or process for continuing benefit eligibility for Medicaid beneficiaries who appeal adverse agency decisions (*Id.*, ¶ 194).

According to plaintiffs, ADHS computer systems are programmed to terminate or reduce a beneficiary's benefits immediately or, at the latest, on the 10th day following the date on which ADHS sends out a notice of adverse action (*Id.*, ¶ 196(a)). Several divisions or units within ADHS may be involved in the termination or reduction, including the Office of Long-Term Care ("OLTC"), an office within the Division of Provider Services and Quality Assurance ("DPSQA"); the Division of Aging, Adult, and Behavioral Health Sciences ("DAABHS"), which was formerly the Division of Aging and Adult Services ("DAAS"); the Division of Medical Services ("DMS"); and the Division of County Operations ("DCO") (*Id.*). The Office of Appeals and Hearings ("OAH") received all appeal requests (*Id.*, ¶ 196(c)). These relevant divisions or units and the ADHS had to take steps necessary to continue the beneficiary's services, if the agency determined that the appeal was filed within 10 days of the date of the notice of adverse action (*Id.*, ¶ 196(b)). Finally, ADHS then had to inform the beneficiary's care provider that the agency had authorized continuing services so that the beneficiary would receive the continuing services (*Id.*).

Plaintiffs allege that employees at OAH, OLTC, DMS, and the General Counsel Section failed to review appeal requests to determine if they were timely filed and failed to take any steps necessary to ensure benefits were continued without interruption (*Id.*, ¶ 196(d)-(f)). Plaintiffs

7

further allege that, from April 2018 to March 3, 2020, no DAAS/DAABHS employee was designated to review appeal requests to determine if they were timely filed for the purposes of continuing benefits (*Id.*, ¶ 196(g)(iv)).  According to plaintiffs, OLTC, DMS, and DCO had to complete written paperwork and manually enter additional information in ADHS's computer system to maintain benefits, and a termination or reduction was stopped and benefits were continued only when all information was entered into the computer system by all necessary ADHS divisions or units and when ADHS notified the beneficiary's care agency (*Id.*, ¶¶ 196(j)-(k)). Plaintiffs further allege that it took a minimum of three business days to complete this process and that, as a matter of practice or policy, no employee from any ADHS division sent or sought confirmation that each involved division or unit had taken the necessary steps in this process (*Id.*, ¶¶ 196(m)-(n)).  Plaintiffs allege that ADHS failed to account for any delays in the notice of action reaching the beneficiary, so beneficiaries did not have a full 10 days in which to lodge their appeal requests (*Id.*, ¶ 196(q)).

According to plaintiffs, ADHS failed to continue benefits for at least 30 beneficiaries who timely appealed, including plaintiffs, until those beneficiaries' attorneys contacted ADHS (*Id.*, ¶ 196(r)).  Plaintiffs allege that ADHS's process for continuing benefit eligibility for ARChoices beneficiaries is the type of ADHS internal policy that would require Mr. Sterling's review and the approval of Mr. Cloud, Mr. White, Mr. Sterling, Mr. Sharum, and Ms. Gillespie (*Id.*, ¶ 197).

Plaintiffs further allege that, because of increased ARChoices appeals in 2019, OAH routinely takes between three and 11 days to notify other involved ADHS divisions or units once receiving a beneficiary's appeal request, which plaintiffs assert leaves insufficient time for benefits to be continued without interruption (*Id.*, ¶ 205).  According to plaintiffs, from 2019 to present, Mr. Sterling has not hired sufficient staff to process appeals and inform other involved divisions

or units to ensure continuing benefits, and, according to plaintiffs, Ms. Gillespie has not authorized, requested, or designated funds for Mr. Sterling to hire sufficient staff and inform other divisions or units to ensure continuing benefits (*Id.*, ¶¶ 206-207).

Plaintiffs allege that, from January 1, 2016, until present, Mr. Cloud, Mr. Rosen, and Mr. White supervised the form and use of all notices of adverse action, including making specific wording decisions (*Id.*, ¶ 208).  According to plaintiffs, from November 2016 to April 2018, Mr. Cloud and Mr. Rosen supervised the redesign of ARChoices notices and, in late 2018, Mr. Cloud, Mr. White, Mr. Rosen, and Mr. Sterling drafted, reviewed, and approved the form of the notices, including that which Ms. Dearmore received (*Id.*, ¶¶ 208(d)-(f)).

Plaintiffs allege that "ADHS assesses program participants at least once every year to determine their functional eligibility and, if eligible, to develop an updated person-centered service plan," and "[b]eneficiaries can be subject to re-assessment more than once a year if they experience a change in status or service needs." (Dkt. No. 31, ¶ 37).  Further, plaintiffs allege that "ADHS has no plans to switch to a different assessment tool, allocation methodology, or notice of action than those now used." (*Id.*, ¶ 38).  Plaintiffs acknowledge in their allegations that, at least as of the time their consolidated complaint was filed, ADHS had delayed reassessment due to COVID-19 (*Id.*, ¶ 77 n.9).

Plaintiffs bring claims against ADHS defendants in their official and individual capacities for violations of their rights under the Due Process Clause of the Fourteenth Amendment, and Ms. Dearmore also brings claims against ADHS defendants in their official and individual capacities for violations of her right to adequate notice under the Due Process Clause of the Fourteenth Amendment.  Plaintiffs seek relief in the form of, among other things, a temporary restraining order or preliminary injunction, a declaratory judgment, and a permanent injunction pursuant to

their official capacity claims ordering defendants in their official capacities to implement an adequate notice and an adequate process to ensure that plaintiffs and other ARChoices beneficiaries who timely appeal receive continuing benefits, and a money judgment pursuant to individual capacity claims for compensatory and punitive damages (*Id.*, at 89-90).

## II.     Overview Of Legal Arguments

In count one, plaintiffs name all defendants in their official capacities alleging violation of all plaintiffs' constitutional due process right to continuing benefits pending appeal (Dkt. No. 31, ¶¶ 219-226).   In count two, plaintiffs name all defendants in their official capacities alleging violation of Ms. Dearmore's constitutional due process right to adequate notice of the reasons for the adverse action (*Id.*, ¶¶ 227-229).   In count three as to Mr. Rosen, in count five as to Mr. Sterling, and in count ten as to Ms. Gillespie, plaintiffs bring individual capacity claims alleging violations of all plaintiffs' constitutional due process rights to continuing benefits pending appeal (*Id.*, ¶¶ 230-251; 254-268; 298-307).   In count seven, plaintiffs name Mr. White in his individual capacity alleging violation of Ms. Elder and Ms. Dearmore's constitutional due process right to continuing benefits pending appeal (*Id.*, ¶¶ 271-282).   In count four as to Mr. Rosen, in count six as to Mr. Sterling, and in count eight as to Mr. White, plaintiffs bring individual capacity claims alleging violation of Ms. Dearmore's constitutional due process right to adequate notice of adverse action (*Id.*, ¶¶ 252-253; 269-270; 283-284).

ADHS defendants argue in their motion to dismiss that plaintiffs' official capacity and individual capacity claims fail for several reasons.   Initially, ADHS defendants assert that plaintiffs' complaint fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), failing to meet the federal pleading standards (Dkt. No. 32, ¶¶ 2-3).

Next, ADHS defendants argue that they are entitled to sovereign immunity on plaintiffs' official capacity claims (*Id.*, ¶¶ 4-5).  ADHS defendants assert specifically that plaintiffs' official capacity claims for injunctive relief do not seek prospective relief against an ongoing violation of a federal right as required by *Ex Parte Young*, 209 U.S. 123 (1908).  ADHS defendants also argue that plaintiffs lack standing to bring their official capacity claims for injunctive relief (Dkt. No. 32, ¶ 6).

On Ms. Dearmore's official capacity and individual capacity claims of adequate notice, ADHS defendants argue that they are entitled to judgment as a matter of law on these claims. ADHS defendants specifically assert that Ms. Dearmore's adequate notice claim fails because they contend that she cannot demonstrate a violation of her constitutional rights with respect to the notice she received and cannot demonstrate that ADHS defendants violated a clearly established right (*Id.*, ¶ 8).

ADHS defendants claim that they are entitled to qualified immunity as to plaintiffs' claims against them in their individual capacities (*Id.*, ¶ 7).  ADHS defendants assert that plaintiffs cannot establish a Fourteenth Amendment violation because negligence is insufficient as a matter of law (*Id.*, ¶ 9).  ADHS defendants maintain that they were not personally involved in Ms. Dearmore's Medicaid appeal (*Id.*, ¶ 10).  They also assert that plaintiffs' complaint fails to demonstrate that ADHS defendants intentionally violated plaintiffs' right to due process or responded to a systematic deficiency with criminal recklessness or deliberate indifference (*Id.*).  ADHS defendants maintain that they were not deliberately indifferent (*Id.*, ¶ 12).  ADHS defendants argue that *respondeat superior* is insufficient to establish personal responsibility under 42 U.S.C. § 1983 and that Ms. Dearmore has failed to establish that the supervisory defendants created or condoned an unconstitutional policy that resulted in the deprivation of her constitutional rights. (*Id.*, ¶ 11).

11

ADHS defendants maintain that plaintiffs' complaint fails to establish a pattern of unconstitutional conduct and that ADHS defendants were subjectively aware of the unconstitutional conduct (*Id.*, ¶ 13).

### III.     Analysis:  Sovereign Immunity As To Official Capacity Claims

The Eleventh Amendment presents a jurisdictional bar to any suit that is in actuality directed against the State, whether the action is nominally instituted against the State, a state agency or instrumentality, or a state official.  *See Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670 (1982); *Alabama v. Pugh*, 438 U.S. 781 (1979); *Edelman v. Jordan*, 415 U.S. 651 (1974). Without the State's consent, this jurisdictional bar applies regardless of the nature of the relief sought.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984).  "Congress may abrogate the States' immunity from suit pursuant to its powers under § 5 of the Fourteenth Amendment," but such abrogation must be "unmistakably clear in the language of the statute."  *Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 35 (2012) (internal quotations and citations omitted).

In determining whether Eleventh Amendment immunity applies to a particular entity, this Court must examine the particular entity in question and its powers and characteristics as created by state law to determine whether the suit is in reality a suit against the State.  *See Hadley v. N. Arkansas Cmty. Tech. Coll.*, 76 F.3d 1437, 1439 (8th Cir. 1996).  Defendants in this case are employees of the ADHS and are being sued in their official capacities.  A claim against a state official in his or her official capacity is treated as a claim against the entity itself.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Therefore, plaintiffs' claims against defendants are claims

against the State of Arkansas, and defendants are immune from suit except when Congress has validly abrogated the State's sovereign immunity.

The doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), is an exception that abrogates a State's sovereign immunity protection.  It provides that state officials may be sued in their official capacities for prospective injunctive relief to prevent future federal constitutional or statutory violations.  *Id.*   To determine whether a plaintiff has alleged a proper *Ex Parte Young* claim, the federal court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring)).  The plaintiff must also name as a defendant the state official who is responsible for enforcing the contested statute, policy, or practice in his or her official capacity.  *See Greenawalt v. Ind. Dep't of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005).  Declaratory relief is available under *Ex Parte Young* when there is an ongoing or threatened violation of federal law.  *Green v. Mansour,* 474 U.S 64, 73 (1985). However, the *Ex Parte Young* doctrine cannot be used to obtain an injunction requiring the payment of funds from the State's treasury.  *See Edelman v. Jordan,* 415 U.S. 651, 666 (1974).

In their motion to dismiss, ADHS defendants argue that they are entitled to sovereign immunity and that plaintiffs' claims against ADHS defendants in their official capacities are not subject to the *Ex Parte Young* exception (Dkt. No. 33, at 18).  ADHS defendants argue that plaintiffs fail to state a claim for relief because plaintiffs' benefits have been restored pending appeal and that, therefore, there are no ongoing constitutional violations (*Id.*, at 19).  ADHS defendants make the related argument that plaintiffs fail to demonstrate future injury and are therefore not entitled to equitable relief (*Id.*, at 30).  ADHS defendants assert that, because

plaintiffs have not made a showing that they realistically face a future, temporary interruption of their ARChoices benefits, then they have not met the requirements for seeking injunctive relief in federal court (*Id.*, at 29-30).

Plaintiffs respond that they do not seek merely the restoration of their Medicaid but relief that will prevent an ongoing deprivation of constitutional rights (Dkt. No. 34, at 17).  According to plaintiffs, the allegations in their complaint regarding ADHS's practices for terminating benefits and processing appeals constitute a sound basis for equitable relief (*Id.*, at 24).

Here, given the operative pleading standard and the filings before the Court, and drawing all reasonable inferences in plaintiffs' favor, the Court determines that plaintiffs allege sufficient facts in their consolidated complaint to support their claims for injunctive relief and to overcome defendants' assertion of sovereign immunity.   Plaintiffs claim that "[c]learly established constitutional due process principles require that a Medicaid beneficiary receive adequate written notice of the reasons for any adverse action and have the opportunity for an evidentiary hearing before services are reduced." (Dkt. No. 31, ¶ 2).  Plaintiffs outline the harm they suffered and will suffer going forward (*Id.*, ¶ 213).  Plaintiffs allege that, as a matter of policy, practice, or procedure, ADHS automatically terminates or reduces the services of Medicaid beneficiaries subject to adverse agency actions regardless of the timing of any appeal request, which plaintiffs maintain is a violation of their Fourteenth Amendment Due Process rights.  Further, plaintiffs allege that, as a matter of policy, practice, or procedure, ADHS provides insufficient notice about the reasons for the reduction in services to permit beneficiaries to prepare adequately to counter ADHS's reasons for the reduction.

Plaintiffs allege facts demonstrating how defendants applied the challenged policy, practice, or procedure to them and likely will do so again.  In their consolidated complaint,

plaintiffs allege how long they have participated in the program and qualified for services (*Id.*, ¶¶ 49, 51, 53, 82, 104-05); the progression of their physical and mental health (*Id.*, ¶¶ 51, 53, 86, 109); and that they each face imminent reassessment based on the ARIA assessment tool and certain reductions in services (*Id.*, ¶¶ 74-77, 93-99, 118-22).  Plaintiffs specifically assert that ADHS has a standard procedure of yearly assessment and that, as a result, plaintiffs face imminent re-assessment, which has been delayed due to COVID-19 (*Id.*, ¶¶ 77, 96-99, 121-122).[1]  Further, plaintiffs specifically allege that ADHS has "no plans to switch to a different assessment tool, allocation methodology, or notice of action than those now used." (*Id.*, ¶ 38).  Plaintiffs maintain that "ADHS will use substantially the same deficient notice of action [Ms. Dearmore] received in November 2019, which has been in use in the same form since January 1, 2019, and substantially the same failed process for continuing benefits pending appeal." (*Id.*, ¶ 99).

For the reasons explained, the Court determines that plaintiffs have sufficiently alleged that they face a future, temporary interruption of their ARChoices benefits sufficient to overcome ADHS defendants' sovereign immunity argument and objection that plaintiffs' claim is too speculative.  Plaintiffs allege in their complaint certain re-assessment at least once per year under the same methodology that resulted in the adverse actions about which plaintiffs complain in this action and the handling of plaintiffs' appeals according to the same policies, practices, and

---

[1] Plaintiffs' consolidated complaint does not state, and ADHS defendants do not contend in their filings before the Court, that the COVID-19 delay is intended to become a permanent delay dispensing with any reassessment.  Further, in their consolidated complaint, plaintiffs allege that Ms. Dearmore was re-assessed on June 17, 2020, well after ADHS defendants supposedly modified practices (*Id.*, ¶ 96).

procedures that plaintiffs claim resulted in unlawful deprivations of their benefits (Dkt. No. 34, at 22).

The Court also determines that, based on the allegations in their complaint, plaintiffs have sued in their official capacities defendants who are amenable to suit in this action.  Plaintiffs allege that ADHS defendants sued in their official capacities for prospective injunctive and declaratory relief in this action have "'some connection with the enforcement'" of the challenged policies, practices, and procedures.  *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 960 (8th Cir. 2015) (citing *Ex Parte Young,* 209 U.S. at 157).

The Court finds that, at this stage of the litigation, plaintiffs sufficiently allege claims against ADHS defendants in their official capacities for prospective injunctive relief to remedy ongoing violations of federal law.  The Court denies ADHS defendants' motion to dismiss on this basis.

## IV.     Analysis:  Standing As To Official Capacity Claims

### A.     Rule 12(b)(1) Standard

Because standing is a jurisdictional question, a motion to dismiss for lack of standing is properly analyzed under Federal Rule of Civil Procedure 12(b)(1).  *See Disability Support All. v. Heartwood Enters., LLC*, 885 F.3d 543, 547 (8th Cir. 2018).  A motion to dismiss under Rule 12(b)(1) challenges the court's subject-matter jurisdiction over the case.  *See Johnson v. United States*, 534 F.3d 958, 964 (8th Cir. 2008).  Here, plaintiffs, as the parties seeking to establish federal jurisdiction, bear the burden of establishing, by a preponderance of the evidence, that jurisdiction exists.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006); *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

In deciding a motion to dismiss for lack of subject-matter jurisdiction, the district court must distinguish between a "facial attack" and a "factual attack" on jurisdiction. *See Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016). Where, as here, a party brings a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations omitted).

## B. Requirements For Standing

"Article III, § 2, of the Constitution extends the 'judicial Power' of the United States only to 'Cases' and 'Controversies.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). A "controversy" in the constitutional sense "must be definite and concrete, touching the legal relations of parties having adverse legal interests," and "be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240-41 (1937) (citations omitted).

The Supreme Court has explained that the "irreducible constitutional minimum" of Article III standing requires the plaintiff to "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, --- U.S. ---, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "Injury in fact is 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Eddings v. City of Hot Springs*, 323 F.3d 596, 602 (8th Cir. 2003) (quoting *Defs. of Wildlife*, 504 U.S. at 560). The injury-in-fact requirement "helps to ensure that the plaintiff has a 'personal stake in the outcome of the controversy.'" *Susan B. Anthony List v. Driehaus*, 573

U.S. 149, 158 (2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  The strength of proof needed to establish standing varies according to the stage of litigation.  *Defs. of Wildlife*, 504 U.S. at 561.  At the pleading stage, "the court must accept all factual allegations in the complaint as true and draw all inferences in the plaintiff's favor."  *Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 983 (8th Cir. 2009).

### C.    Discussion

ADHS defendants challenge plaintiffs' standing to seek injunctive relief on their official-capacity continuation of benefits claims (Dkt. No. 33, at 20).  ADHS defendants argue that plaintiffs cannot demonstrate injury in fact because their ARChoices benefits have been completely restored (*Id.*, at 22).  ADHS defendants also argue that plaintiffs do not face possible termination of benefits because ADHS passed an emergency rule suspending annual assessments during the COVID-19 pandemic and because plaintiffs' likelihood of injury is too speculative even if they were required to undergo annual assessments (*Id.*, at 23-24).  According to ADHS defendants, plaintiffs "*may* suffer an injury *if* they are reassessed; *if* they are determined ineligible for Medicaid benefits or suffer a reduction in services; *if* they seek an appeal of that determination; and *if* some accidental error actually results in a denial or reduction of services or *if* benefits are temporarily interrupted for some other reasons" (*Id.*, at 24-25).  ADHS defendants further contend that the Supreme Court's decision in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), requires that plaintiffs present non-conclusory facts showing that all ARChoices benefits are improperly processed or that ADHS has a specific policy ordering its employees intentionally to interrupt ARChoices benefits pending appeal, which, ADHS defendants argue, plaintiffs cannot do (*Id.*, at 26).

Plaintiffs respond that they are injured by ADHS's failure to operate a constitutionally adequate system to ensure continuing benefits for a timely appeal of any adverse action and that this failure caused the termination or reduction of plaintiffs' ARChoices services (Dkt. No. 34, at 20). Plaintiffs argue that defendants' "systemic failure to continue benefits" will allow them "to continue their flouting of constitutional obligations" absent injunctive relief based on harms experienced by Ms. Elder, Ms. Dearmore, Mr. Taylor, and other individuals identified in the complaint (*Id.*, at 24).

At this stage of the proceeding, the Court finds that plaintiffs sufficiently allege facts to support injury in fact. Plaintiffs each allege that they suffered an injury in fact as a result of ADHS defendants' failure to operate an adequate system for continuing benefits during the pendency of their appeals; they allege physical and emotional harm based on alleged unlawful deprivation of needed care, missed medical appointments, increased depression, and other forms of claimed suffering (Dkt. No. 31, ¶¶ 63-71, 89-92, 111-116). Plaintiffs also allege that they each face imminent reassessment based on the ARIA assessment tool and that they face certain reductions in services. Plaintiffs allege facts demonstrating how defendants applied the challenged policy, practice, or procedure to them and likely will do so again. In their consolidated complaint, plaintiffs allege how long they have participated in the program and qualified for services (*Id.*, ¶¶ 49, 51, 53, 82, 104-105); the progression of their physical and mental health (*Id.*, ¶¶ 51, 53, 86, 109); and that they each face imminent reassessment based on the ARIA assessment tool and certain reductions in services (*Id.*, ¶¶ 74-77, 93-99, 118-122). Plaintiffs specifically assert that ADHS has a standard procedure of yearly assessment and that, as a result, they face imminent re-assessment, which has been delayed due to COVID-19 (*Id.*, ¶¶ 77, 96-99, 121-122). Further,

plaintiffs specifically allege that ADHS has "no plans to switch to a different assessment tool, allocation methodology, or notice of action than those now used." (*Id.*, ¶ 38).

With respect to the COVID-19 reassessments, there is no allegation in the consolidated complaint, and ADHS defendants do not argue in their filings, that the delay in reassessment is intended to be permanent.  Further, in their consolidated complaint, plaintiffs allege that Ms. Dearmore was re-assessed on June 17, 2020, well after ADHS defendants supposedly modified its practices (*Id.*, ¶ 96).

Plaintiffs sufficiently allege that ADHS defendants' conduct is fairly traceable to the alleged injuries (*Id.*, ¶¶ 123-208).  Plaintiffs allege that approximately 30 beneficiaries actually appealed adverse actions within 10 days and improperly had their services reduced or terminated (*Id.*, ¶ 179).  To the extent that ADHS defendants argue that *Lyons* would require plaintiffs to allege that all ARChoices benefits are improperly processed, plaintiffs allege in their consolidated complaint that ADHS computers automatically terminate or reduce a beneficiary's benefits by the 10th day following a notice of adverse action; that ADHS fails to account for any delays in the notice of action reaching the beneficiary such that the beneficiary does not have a full 10 days within which to lodge their appeal requests; that OAH routinely takes between three and 11 days to notify other involved ADHS divisions or units upon receiving a beneficiary's appeal request; and that it takes a minimum of three business days to stop an adverse action, continue benefits, and notify the care provider to resume services (*Id.*, ¶¶  196(a), 196(m), 196(q), 205).  Plaintiffs allege that deprivation of continuing benefits is automatic for essentially all beneficiaries who appeal (*Id.*, ¶¶ 196(p), 225).

Plaintiffs also sufficiently allege that a favorable decision will redress their injuries.  To the extent ADHS defendants argue that plaintiffs cannot demonstrate a basis for seeking equitable

relief (Dkt. No. 33, at 29-36), having considered the legal authorities cited and allegations in plaintiffs' consolidated complaint, the Court rejects ADHS defendants' request to dismiss plaintiffs' official capacity continuation of benefits claims on this basis.  Plaintiffs assert that they are injured by ADHS defendants' failure to operate a constitutionally adequate system to ensure continuing benefits for a timely appeal of any adverse agency action taken against them and that the agency's failure in this regard resulted in the termination or reduction of their ARChoices services.  Ms. Elder and Ms. Dearmore were experiencing the reduction of services at the time they initiated lawsuits (Dkt. No. 31, ¶¶ 62, 88).  Mr. Taylor experienced nearly three months of deprivation, having benefits restored around May 20, 2020 (*Id.*, ¶ 111).  Further, for the reasons explained, the Court determines that plaintiffs have alleged that they face a future, temporary interruption of their ARChoices benefits sufficient to overcome ADHS defendants' standing argument.

Accordingly, the Court concludes that plaintiffs sufficiently allege at this stage of the litigation that they have standing to bring their claims, including but not limited to their official capacity continuation of benefits claims.

## V.       Analysis:  Sufficiency Of Ms. Dearmore's Due Process And Adequate Notice Claim

ADHS defendants move for judgment as a matter of law on Ms. Dearmore's due process and adequate notice claims against ADHS defendants in both their official and individual capacities (Dkt. No. 33, at 36, 50).  ADHS defendants maintain, with respect to plaintiffs' official and individual capacity claims, that Ms. Dearmore received constitutionally sufficient notice (*Id.*, at 49-50, 50 n.4).  ADHS defendants specifically assert that plaintiffs' allegations are conclusory

and insufficient and that her request for injunctive relief is not cognizable against ADHS defendants in their individual capacities (*Id.*, at 50).

### A. Rule 12(c) And Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006). A court reviews a "12(c) motion under the standard that governs 12(b)(6) motions." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

A Rule 12(b)(6) motion tests the legal sufficiency of the claim or claims stated in the complaint. *See Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although a complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Stated differently, the allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

A court considering a motion to dismiss must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences from those facts in favor of the non-moving party. *See Farm Credit Servs. of Am., FLCA v. Haun*, 734 F.3d 800, 804 (8th Cir. 2013); *Coons v. Mineta*,

410 F.3d 1036, 1039 (8th Cir. 2005); *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 914 (8th Cir. 2001). However, a court need not credit conclusory allegations or "naked assertion[s] devoid of further factual enhancement." *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768 (8th Cir. 2012) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678). Finally, a court ruling on a motion to dismiss under Rule 12(b)(6) may consider documents or exhibits attached to a complaint, as well as matters of public and administrative record referenced in the complaint. *See Owen v. Gen. Motors Corp.*, 533 F.3d 913, 918 (8th Cir. 2008); *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1244 (8th Cir. 2006). In short, "[a] complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

### B.    The Right Allegedly Violated

The Fourteenth Amendment prohibits state action that deprives "any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV, § 1. In the context of a person whose government assistance is terminated, due process requires that the government provide "timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." *Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970). Adequate notice is integral to the due process right to a fair hearing because the "right to be heard has little reality or worth unless one is informed." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Adequate notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* Further, the notice must "apprise the affected individual of, and permit adequate

23

preparation for, an impending hearing." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978) (internal quotations omitted). "Due process is a flexible concept and a determination of what process is due, or what notice is adequate, depends upon the particular circumstances involved." *Bliek v. Palmer*, 102 F.3d 1472, 1475 (8th Cir. 1997) (citing *Memphis Light, Gas & Water Div.*, 436 U.S. at 14 n.15).

The Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976), set forth three factors for courts to consider in determining whether state procedures are constitutionally adequate:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. Courts within the Eighth Circuit have applied these factors when determining whether state agencies gave adequate notice of proposed terminations of benefits. *See Bliek*, 102 F.3d at 1477-78 (applying *Mathews* factors and concluding that "plaintiffs' interest in being apprised of the state's settlement authority far outweighs the state's interest in refusing to give notice of it"); *Murphy v. Minn. Dep't of Human Servs.*, 260 F. Supp. 3d 1084, 1112 (D. Minn. 2017) (applying *Mathews* factors and concluding that plaintiffs adequately alleged inadequate procedural protections to withstand motion to dismiss).

The Eighth Circuit in *Bliek v. Palmer*, 102 F.3d 1472 (8th Cir. 1997), explained the importance of adequate notice. In *Bliek*, Iowa sent plaintiffs who received food stamps letters informing them of an agency error which resulted in overpayments and gave notice of plaintiffs' right to appeal the amount of over-issuances. 102 F.3d at 1473. The Eighth Circuit held that the state's notice was inadequate because the state informed recipients of adverse actions that the state

24

could take but did not inform recipients of the state's discretionary authority to settle, adjust, compromise, or deny recovery of all or part of the overpayments. *Id.* at 1476. The court explained that, as with the plaintiffs in *Goldberg*, plaintiffs were "low-income persons" and were "not as a general matter in the financial position to hire legal counsel to aid in the interpretation of the notice they receive and to inform them of the state's full authority." 102 F.3d at 1476. Indeed, the court took note that plaintiffs were represented by attorneys from the Legal Services Corporation of Iowa. *Id.* at 1476 n.4. Accordingly, the Eighth Circuit explained that:

> the notice that DHS gives must be complete, stated in plain language, and reasonably calculated to afford the plaintiffs an opportunity to raise their objections to the state's proposed actions. A plainly written, informative notice is imperative in these circumstances to make the hearing to which the plaintiffs are entitled meaningful.

*Id.* at 1476.

There also are state and federal statutes and regulations that address the notice's content, including the action to be taken, a clear statement of the specific reasons supporting the intended action, the right to appeal, how to file an appeal, and how to receive continuing benefits pending the appeal decision. Ark. Code Ann. § 20-77-121; Ark. Medical Service Policies J-100, J-110, L-120; 42 U.S.C. § 1396a(a)(3); 42 C.F.R. §§ 431.201, 431.206, 431.210.

### C.   Sufficiency Of Allegations

Here, ADHS defendants do not dispute that Ms. Dearmore has a constitutionally protected interest in receiving Medicaid benefits. Further, the Court concludes plaintiffs have sufficiently alleged that Ms. Dearmore has a constitutionally protected interest, having alleged that Ms. Dearmore qualified for the program in 2012 and received 143 hours per month of attendant care since August 2017 (Dkt. No. 31, ¶¶ 82-83).

Instead, ADHS defendants argue that Ms. Dearmore received constitutionally adequate notice regarding termination of her benefits based on the allegations in plaintiffs' consolidated complaint and that, therefore, ADHS defendants are entitled to judgment as a matter of law on this claim (Dkt. No. 33, at 50).  ADHS defendants argue that Ms. Dearmore's PCSP advised her of her opportunity to discuss her case with an ADHS nurse prior to deciding to file an appeal and that her Notice of Action informed her that the agency's action involves a revision of services, including a removal or reduction (Dkt. No. 33, at 44-46).  According to ADHS defendants, Ms. Dearmore was provided enough information to understand the agency's proposed action and received a copy of her PCSP and TAHS (*Id.*, at 45-46).  ADHS defendants further argue that Ms. Dearmore was aware of the reasons for ADHS's intended action because she was informed that her attendant and personal care hours would be set at 39 and 64 hours per month, respectively, received a breakdown of the formulas and calculations used to determine her new service care hours, and indicated as the basis for her appeal that her benefits were reduced and were inadequate (*Id.*, at 46-49).

In response, plaintiffs assert that Ms. Dearmore's Notice of Action does not identify that any reduction in services has taken place, does not explain any reasons for the cut in services, and does not include the criteria that ADHS used to determine why 103 monthly care hours was more appropriate than 143 (Dkt. No. 34, at 29).  Plaintiffs maintain that the claimed ability to converse with an ADHS nurse through conversation held during the care-planning meeting, which happens before the agency takes action according to plaintiffs, is not sufficient to overcome the notice's alleged deficiencies (*Id.*, at 30).  Among their arguments on this point, plaintiffs also assert that the Supreme Court in *Goldberg* did not hold that, as a result of the ability for a personal conference, the written notice could be any less detailed as to the reasons for the adverse action or that any authority in the regulations, statutes, or cases suggests that a verbal explanation satisfies the due

process requirements in the absence of adequate written notice (*Id.*).  In fact, plaintiffs cite cases

holding the opposite (*Id.* (citing *Vargas v. Trainor*, 508 F.2d 485, 490 (7th Cir. 1974); *Schroeder*

*v. Hegstrom*, 590 F. Supp. 121, 128-29 (D. Or. 1984)).  At this stage of the litigation, having

reviewed the legal authorities cited by the parties, the Court is persuaded by plaintiffs' argument

on this point that dismissal of their claim on this basis is not appropriate.  Plaintiffs also distinguish

cases cited by ADHS defendants that involved "mass change" to eligibility, as opposed to those

changes necessitating individualized reasons for adverse actions more akin to those at issue here

(Dkt. No. 34, at 32-34).  Plaintiffs further argue that Ms. Dearmore's notice was inadequate

because she would not know what she would need to prove to continue receiving 143 hours of care

per month (*Id.*, at 36).

In their consolidated complaint, plaintiffs allege that Ms. Dearmore's Notice of Action

"does not identify that a reduction has taken place and does not provide any specific reasons for

the reduction" (Dkt. No. 31, ¶ 85).  Plaintiffs further allege that Ms. Dearmore did not understand

from the notice or service plan why her services were being reduced (*Id.*).  Plaintiffs maintain that

the notice also does not provide the effective date of the reduction, providing only a handwritten

notation that the service level will be effective as of December 1, 2019. (*Id.*, ¶ 84).  Plaintiffs

therefore claim that this notice violates the Due Process Clause of the Fourteenth Amendment (*Id.*,

¶ 229).  Plaintiffs attach to their consolidated complaint the relevant PCSP, Notice of Action,

appeal form, and TAHS for Ms. Dearmore (Dkt. No. 31-1, at 16-31).

At this stage in the proceedings, having reviewed the legal authorities and allegations of

plaintiffs' consolidated complaint, the Court concludes that plaintiffs adequately allege a violation

of Ms. Dearmore's due process right to adequate notice, and the Court denies ADHS defendants'

motion on this basis.  First, Ms. Dearmore has a substantial interest in her benefits and

understanding why her benefits may have been reduced.  As in *Bliek* and *Goldberg*, plaintiffs allege that Ms. Dearmore is a Medicaid recipient and therefore has limited financial resources. Plaintiffs also allege that Ms. Dearmore has multiple medical conditions, including chronic myeloid leukemia, and needs help with almost every aspect of daily life (Dkt. No. 31, ¶¶ 79-81). The Court also recognizes, as the Eighth Circuit did in *Bliek*, that Ms. Dearmore is likely not in a financial position to hire legal counsel to aid in the interpretation of the notice she received and is currently represented by attorneys from Legal Aid of Arkansas.  Further, Ms. Dearmore alleges that her notice neither stated that a reduction had taken place nor gave reasons for the reduction or reductions, and the documents attached to plaintiffs' consolidated complaint support that inference.  The Court determines that plaintiffs sufficiently plead that Ms. Dearmore's notice was not complete, not stated in plain language, and not reasonably calculated to afford Ms. Dearmore an opportunity to raise her objections to ADHS's proposed actions.

Second, plaintiffs sufficiently allege the risk of erroneous deprivation is high because persons who do not know why their benefits are being reduced are unlikely to be able to prepare adequately for a hearing to challenge the state's determination.  Plaintiffs allege, and the documents attached to the complaint support the inference, that Ms. Dearmore did not understand from the notice or PCSP why her services were being reduced or the explanation for the reduction in her services.   Accordingly, on the basis of plaintiffs' factual allegations, ADHS's notice to Ms. Dearmore does not "permit adequate preparation for[] an impending hearing." *Memphis Light, Gas & Water Div.*, 436 U.S. at 14.  As ADHS defendants observe, Ms. Dearmore on her appeal form checked boxes indicating that the amount of her benefits was inadequate and had been reduced (Dkt. No. 31-1, at 30).  However, the fact that Ms. Dearmore may have understood that her benefits were being reduced by the time she submitted her appeal form does not contradict

plaintiffs' allegations that Ms. Dearmore's notice neither indicated that she was facing a reduction nor explained the reasons for the reduction.

Third, plaintiffs allege that the burden on ADHS defendants to include in their notice reasons for a proposed reduction in benefits is relatively low.  ADHS defendants presumably have reasons for reducing a recipient's benefits, and ADHS defendants send individualized notices, including individualized PCSPs and TAHSs, to recipients as part of their annual assessments. Requiring ADHS defendants to include the reasons for a proposed reduction in the notice, as plaintiffs request, according to plaintiffs is unlikely to burden unduly ADHS defendants.

To the extent ADHS defendants assert that no reasonable official would know that the notice Ms. Dearmore received violates due process (Dkt. No. 33, at 51), the Court understands ADHS defendants to assert with this argument that this right was not clearly established.  For reasons explained in this Order, the Court declines to dismiss plaintiffs' complaint on this basis.

ADHS defendants also assert that plaintiffs cannot demonstrate ADHS defendants' personal involvement in Ms. Dearmore's alleged violation, the existence of an actual policy required to establish a claim for supervisor liability, or a pattern of constitutional conduct and deliberate indifference with respect to plaintiffs' failure to train, hire, and/or supervise claims (Dkt. No. 33, at 51).  For reasons explained in this Order, the Court determines that plaintiffs include sufficient allegations in their consolidated complaint to overcome ADHS defendants' arguments. At this stage, the Court must accept plaintiffs' allegations as true.  Accordingly, plaintiffs in their consolidated complaint sufficiently state claims against each of the ADHS defendants in their individual capacities for liability under § 1983.

The Court finds that, at this stage of the litigation, plaintiffs adequately allege a constitutional violation with respect to Ms. Dearmore's notice claim.  ADHS defendants are not

entitled to judgment as a matter of law or dismissal of plaintiffs' claims against them in their official or individual capacity on this basis.

### VI.    Analysis:  Qualified Immunity As To Individual Capacity Claims

ADHS defendants move to dismiss plaintiffs' individual capacity claims against them on the basis of qualified immunity.  Plaintiffs allege against individual capacity ADHS defendants Ms. Gillespie in count ten, Mr. Rosen in count three, and Mr. Sterling in count five as to all plaintiffs, and Mr. White in count seven as to Ms. Elder and Ms. Dearmore, a continuation of benefits claim and against individual capacity ADHS defendants Mr. Rosen in count four, Mr. Sterling in count six, and Mr. White in count eight a claim that the notice Ms. Dearmore received violated her due process rights.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The proper standard for addressing qualified immunity at the Rule 12(b)(6) stage is whether immunity is established on the face of the complaint.  *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996), *cert. denied*, 519 U.S. 1149 (1997).  At this stage in the litigation, to overcome the defense of qualified immunity, plaintiffs' consolidated complaint must state facts showing that they will plausibly be able to establish:  (1) that defendants violated a statutory or constitutional right and (2) that the right was "clearly established" at the time of the challenged conduct.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "If the answer to either question is no" then a defendant is entitled to qualified immunity.  *Doe v. Flaherty*, 623 F.3d 577, 583 (8th Cir. 2010).

"For a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'"  *White v. Pauly*, --- U.S. ---, 137 S.Ct. 548, 551 (2017)

(citing *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).  The clearly established inquiry focuses "on whether the offic[ial] had fair notice that her conduct was unlawful"; the reasonableness of the official's actions "is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, --- U.S. ---, 138 S. Ct. 1148, 1152 (2018) (per curiam); *see also Gerlich v. Leath*, 861 F.3d 697, 704 (8th Cir. 2017).  To prove that the law was clearly established at the time that the individual defendants are alleged to have violated plaintiffs' constitutional rights at issue, plaintiffs must "point to existing circuit precedent that involves sufficiently similar facts to squarely govern [the individual defendants'] conduct in the specific circumstances at issue, or, in the absence of binding precedent, to present a robust consensus of persuasive authority constituting settled law." *See Graham v. Barnette*, 970 F.3d 1075, 1090 (8th Cir. 2020).

The law is clear if it gives the official "fair warning" that his conduct violated an individual's rights when the officer acted.  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  The Supreme "Court's caselaw does not require a case directly on point for a right to be clearly established"; however, "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela*, 138 S. Ct. at 1152 (quoting *White*, 137 S. Ct. at 551).  The Supreme Court has admonished lower courts "not to define clearly established law at a high level of generality." *Id.* (quoting *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 135 S. Ct. 1765, 1775-76 (2015)).  A court must not deny an official qualified immunity based on "constitutional guidelines [that] seem inapplicable or too remote." *Id.* at 1153.

## A.    Continuing Benefits Pending Appeal

ADHS defendants assert in their motion that they are entitled to qualified immunity in their individual capacities on plaintiffs' continuing benefits claims (Dkt. No. 32, ¶ 7).  It is not

clear that they persist in this argument, based on the briefing filed.  Because it is raised in the motion, the Court will address it.

To set forth a procedural due process violation, a plaintiff must establish that his protected liberty or property interest is at stake and that the defendant deprived him of such an interest without due process of law.  *Gordon v. Hansen*, 168 F.3d 1109, 1114 (8th Cir. 1999).  Plaintiffs have a property interest in continuing receipt of their Medicaid benefits.  *See Pediatric Specialty Care, Inc. v. Arkansas Dep't of Human Servs.*, 364 F.3d 925, 930 (8th Cir. 2004); *Easley v. Arkansas Dep't of Human Servs., Div. of Soc. Servs.*, 654 F. Supp. 1535, 1542 (E.D. Ark. 1986).

Plaintiffs in their consolidated complaint allege that, "[a]lthough each of them requested an administrative hearing and requested that their services be maintained pending the outcome, ADHS nevertheless terminated or reduced their services." (Dkt. No. 31, ¶ 3).  Plaintiffs further allege that "Constitutional due process also provides that individuals on Medicaid are entitled to an evidentiary hearing prior to the termination or reduction of their benefits.  *Goldberg v. Kelly*, 397 U.S. 254 (1970); *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 786-87 (1980) ("The Government cannot withdraw these direct [Medicaid] benefits without giving the patients notice and an opportunity for a hearing on the issue of their eligibility for benefits.")." (*Id.*, ¶ 40).  Further, Medicaid regulations incorporate *Goldberg* and specify the relevant timeframes to exercise the constitutionally-protected right to a pre-termination hearing.  42 C.F.R. §§ 431.205(d), 431.230, 431.231.  ADHS through state regulations has prescribed the procedures beneficiaries must follow to exercise the right to a pre-termination hearing.  *See* ADHS Provider Manual § 161.500; Ark. Medical Services Policies J-100, J-110, L-120.

At this stage of the proceeding, the Court concludes that plaintiffs each adequately allege that ADHS defendants violated their clearly established right to continued benefits pending the

outcome of a hearing (Dkt. No. 31, ¶¶ 58-62, 84, 87-88, 107-108, 110-111).  Plaintiffs each allege harm caused by these acts (*Id.*, ¶¶ 52, 63-70, 81, 89-91, 102-103, 112-115).  Plaintiffs allege that ADHS's existing procedure automatically terminates or reduces benefits and that the agency has failed to implement a procedure guaranteeing continuing benefits pending appeal (*Id.*, ¶¶ 190, 196(p), 224-225).  Plaintiffs allege that ADHS has terminated or reduced other beneficiaries in comparable situations, despite receiving repeated emails and letters from Legal Aid contending that the agency has a systemic problem (*Id.*, ¶¶ 180, 182-190).

Plaintiffs' consolidated complaint states facts showing that they will plausibly be able to establish violations of their constitutional rights with respect to their continuing benefits claims and that those rights were clearly established.  Having reviewed all legal authorities cited by the parties, the Court concurs that those rights were clearly established.  Accordingly, for the reasons set out in this Order, the Court concludes that, at this stage of the proceedings and with respect to plaintiffs' continuing benefits claims, ADHS defendants' qualified immunity is not established on the face of plaintiffs' consolidated complaint.

## B.      Ms. Dearmore's Due Process And Adequate Notice Claim

ADHS defendants also argue that they are entitled to qualified immunity on Ms. Dearmore's notice claim (Dkt. No. 33, at 51-56).  Based upon the Court's analysis of this claim in Section V of this Order, plaintiffs sufficiently allege the violation of this constitutional right. Therefore, the Court turns to examine the second inquiry under the qualified immunity analysis.

ADHS defendants argue that there is neither controlling authority from this circuit nor a robust consensus of persuasive authority establishing that Ms. Dearmore's notice was constitutionally deficient (*Id.*, at 53).   The Court evaluates whether Ms. Dearmore sufficiently

alleges that her right to adequate notice was clearly established at the time of the alleged violation.

Plaintiffs in their consolidated complaint allege:

> Clearly established constitutional due process principles require that a Medicaid beneficiary receive adequate written notice of the reasons for any adverse action and have the opportunity for an evidentiary hearing before services are reduced. Such requirements are similarly enshrined in the Medicaid Act and accompanying federal and state regulations that specify the requirements of written notice and allow a beneficiary to continue services at pre-reduction levels pending the outcome of an administrative hearing.  Providing beneficiaries the full process due to them is a fundamental obligation and function of ADHS.

(Dkt. No. 31, ¶ 2).  Plaintiffs further allege that the requirements for adequate notice of adverse action prior to the termination or reduction of a beneficiary's Medicaid benefits were clearly established law under the United States Constitution at the time of the alleged violation of plaintiffs' due process rights (*Id.*, ¶ 41).  Plaintiffs allege that, in *Jacobs v. Gillespie*, 3:16-cv-119-DPM (E.D. Ark. Nov. 1, 2016), this Court held that ADHS provided deficient notice to ARChoices beneficiaries under a different assessment and allocation methodology and that, on October 2, 2018, Mr. White sent an email stating that ADHS officials could be personally liable for notice deficiencies in the wake of *Jacobs* (*Id.*).

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Memphis Light, Gas & Water Div.*, 436 U.S. at 13 (quoting *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314 (1950)).  The notice must "apprise the affected individual of, and permit adequate preparation for, an impending hearing."  *Id.* at 14.  The Supreme Court in *Goldberg* held that, in the context of the termination of welfare benefits, the principles of due process of law "require that a recipient have timely and adequate notice detailing the reasons for a

proposed termination." 397 U.S. at 267-68.  The Supreme Court later recognized that these same requirements apply in the Medicaid context.  *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 786-87 (1980) (citing *Goldberg*, 397 U.S. 254; 45 C.F.R. § 205.10(a)(5)).  Further, the Eighth Circuit has previously stated that, in the context of termination of government benefits, "the need for an *adequate* notice is also settled law."  *Bliek*, 102 F.3d at 1475 (emphasis in original).

ADHS's own regulations require that "[a]ll notices must include a statement of the action the Agency intends to take" and "the effective date of the action." (Dkt. No. 34, at 43 (citing Ark. Medical Services Policy J-100; *see also* 42 C.F.R. § 431.210)).  Further, *Goldberg* required an "adequate notice detailing the reasons."  397 U.S. at 267.  Federal regulations require "a clear statement of the specific reasons supporting the intended action."  42 C.F.R. § 431.210.  Other cases require the notice be "in terms comprehensible to the claimant," *Ortiz*, 616 F. Supp. at 1061, or "plainly written" and "informative," *Blick*, 102 F.3d at 1476.  The law requires that a party be provided adequate notice detailing the reasons to permit an "opportunity to present their objections," *Mullane*, 339 U.S. at 314, "to clarify what the changes are, in fact," so that the party has "a chance to marshal the facts in his defense," *Wolff v. McDonnell*, 418 U.S. at 564, and to "permit adequate preparation for. . . an impending hearing."  *Memphis Light, Gas & Water Div.*, 426 U.S. at 14.

Further, this Court has studied the proceedings and ruling in *Jacobs v. Gillespie*, 3:16-cv-119-DPM (E.D. Ark. Nov. 1, 2016), as cited in plaintiffs' consolidated complaint (*Id.*, ¶ 41). Plaintiffs allege that, in *Jacobs v. Gillespie*, 3:16-cv-119-DPM (E.D. Ark. Nov. 1, 2016), this Court held that ADHS provided deficient notice to ARChoices beneficiaries under a different assessment and allocation methodology and that, on October 2, 2018, Mr. White sent an email stating that ADHS officials could be personally liable for notice deficiencies in the wake of *Jacobs* (*Id.*).

At this stage of the proceeding, the Court concludes that plaintiffs adequately allege that Ms. Dearmore had a clearly established right to notice detailing the proposed termination of her ARChoices benefits and the reasons for the proposed termination.  The Court also concludes, based on the legal authorities cited by the parties, that those rights were clearly established.  Accordingly, the Court concludes that, at this stage of the proceedings and with respect to Ms. Dearmore's notice claim, ADHS defendants' qualified immunity is not established on the face of plaintiffs' consolidated complaint.

### VII.    Additional Arguments

In further support of ADHS defendants' assertion that they are entitled to judgment as a matter of law and qualified immunity as to plaintiffs' claims against them, ADHS defendants also assert that plaintiffs cannot establish a Fourteenth Amendment violation because negligence is insufficient as a matter of law (Dkt. No. 32, ¶ 9).  ADHS defendants maintain that they were not personally involved in Ms. Dearmore's Medicaid appeal (*Id.*, ¶ 10).  They also assert that plaintiffs' complaint fails to demonstrate that ADHS defendants intentionally violated plaintiffs' right to due process or responded to a systematic deficiency with criminal recklessness or deliberate indifference (*Id.*).  ADHS defendants maintain that they were not deliberately indifferent (*Id.*, ¶ 12).  ADHS defendants argue that *respondeat superior* is insufficient to establish personal responsibility under 42 U.S.C. § 1983 and that Ms. Dearmore has failed to establish that the supervisory defendants created or condoned an unconstitutional policy that resulted in the deprivation of her constitutional rights (*Id.*, ¶ 11).  ADHS defendants maintain that plaintiffs' complaint fails to establish a pattern of unconstitutional conduct and that ADHS defendants were subjectively aware of the unconstitutional conduct (*Id.*, ¶ 13).

Overall, with respect to these arguments and other arguments advanced by ADHS in their motion to dismiss, to the extent that ADHS defendants dispute plaintiffs' allegations and the inferences to be drawn from those allegations, such inquiries are not appropriate for the Court at the motion to dismiss stage.  The Court examines each of the ADHS defendants' arguments in turn.

### A.     Allegations Of More Than Negligence

ADHS defendants contend that plaintiffs' due process claims against ADHS defendants in their individual capacities fail because the Due Process Clause is not implicated by a state official's negligent act (Dkt. No. 33, at 57).  ADHS defendants further assert that plaintiffs' individual capacity claims fail because, they argue, plaintiffs do not allege that any ADHS defendant took any intentional steps to terminate or reduce plaintiffs' ARChoices benefits (*Id.*).  Defendants maintain that plaintiffs' consolidated complaint demonstrates, at most, "thirty interruptions over the course of four years or a 1% chance that the current process may result in a temporary interruption." (*Id.*, at 58).

In their consolidated complaint, plaintiffs claim that defendants violated their Fourteenth Amendment Due Process rights by terminating or reducing their ARChoices Medicaid services prior to an evidentiary hearing (Dkt. No. 31, ¶¶ 251, 268, 282, 297, 307).  Plaintiffs claim that the violations stemmed from each individual defendant's contribution to a systemic failure to implement basic procedures needed to administer the Medicaid program according to established law.  Plaintiffs allege that Ms. Gillespie, Mr. White, Mr. Sterling, and Mr. Rosen knew that the change of the ARChoices assessment and care allocation system on January 1, 2019, would cause high numbers of appeals and that, between 2016 and the present, ADHS has engaged in a pattern and practice of failing to continue ARChoices benefits where beneficiaries appeal adverse agency

decisions within 10 days from the notice of action (*Id.*, ¶¶ 171, 178).  Specifically, plaintiffs allege that the deprivation of their continuing Medicaid benefits resulted from ADHS's existing procedure of automatically terminating or reducing benefits and that the agency has failed to implement a procedure guaranteeing benefits pending appeal (*Id.*, ¶¶ 190, 196(p), 224-225). Plaintiffs also allege that ADHS terminated or reduced other beneficiaries in comparable situations to plaintiffs despite receiving repeated emails and letters from Legal Aid contending that the agency had a systemic problem (*Id.*, ¶¶ 180, 182-190).  In addition, plaintiffs allege intentional conduct on the part of defendants with respect to the development of the allegedly deficient notices, such as the one Ms. Dearmore received (*Id.*, ¶ 208).  The Court is not persuaded by ADHS defendants' argument on this basis at this stage of the litigation.

### B.    Allegations Of Personal Involvement

To state a claim for personal liability in a 42 U.S.C. § 1983 action, it is enough to show that a government official, acting under color of state law, caused the deprivation of a federal right. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  The plaintiff must plead that the official has personally violated the plaintiff's constitutional rights.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  Based on Eighth Circuit precedent, the individual action required to overcome qualified immunity can involve direct participation in the constitutional violation, direct supervisorial responsibility for a constitutional violation, or a supervisor's failure to train or supervise the offending actor.  *Marsh v. Phelps Cnty.*, 902 F.3d 745, 754 (8th Cir. 2018).

Direct participation cases involve allegations that the defendant was individually involved in the unconstitutional harm.  *See, e.g.*, *Norfleet ex rel. Norfleet v. Arkansas Dep't of Human Servs.*, 989 F.2d 289, 291 (8th Cir. 1993).

It is well established that the doctrine of *respondeat superior* does not apply to § 1983 cases. Instead, to state a claim for supervisory liability under § 1983, supervisors may be liable if either their direct action or their "failure to properly supervise and train the offending employee" caused the constitutional violation at issue. *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (quotation omitted); *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989). When a supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending actor, the supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). Deliberate indifference requires that a supervisor be aware of a substantial risk of unconstitutional harm. *Kahle v. Leonard*, 477 F.3d 544, 550-52 (8th Cir. 2007) (holding that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."). Unconstitutional action that is "longstanding, pervasive, well-documented, or expressly noted by [] officials in the past" could be sufficient to allow a trier of fact to infer a different official's knowledge of the risk if "the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk." *Farmer v. Brennan*, 511 U.S. 825, 843 (1994). The requirement of awareness "does not invite. . . supervisors to bury their head in the sand." *Walton v. Dawson*, 752 F.3d 1109, 1119 (8th Cir. 2014). A supervisor's individual awareness of substantial risk need not involve a particular perpetrator, a particular victim, or a particular kind of harm. *Farmer*, 511 U.S. at 843; *Walton*, 752 F.3d at 1119.

ADHS defendants argue that plaintiffs fail to state a claim for failure to train or supervise because no defendant had notice of a pattern of due process violations or acted with deliberate indifference (Dkt. No. 33, at 69-72). According to plaintiffs, their consolidated complaint shows

that each defendant had notice of a pattern of unconstitutional acts and was deliberately indifferent to the actions of their subordinates (Dkt. No. 34, at 53).

Plaintiffs in their consolidated complaint allege that, "[a]lthough each of them requested an administrative hearing and requested that their services be maintained pending the outcome, ADHS nevertheless terminated or reduced their services." (Dkt. No. 31, ¶ 3). Plaintiffs further include facts in their consolidated complaint alleging that ADHS defendants received notice of a pattern of unconstitutional acts and that ADHS defendants were deliberately indifferent to those acts (*Id.*, ¶¶ 4, 171, 174, 176-180, 196-197, 206-207, 244, 261, 277, 291, 304). The Court concludes that, at this stage of the litigation, plaintiffs sufficiently allege that the ADHS defendants were deliberately indifferent in that they were aware of a substantial risk of unconstitutional harm. Accordingly, at this stage of the proceeding, the Court concludes that ADHS defendants are not entitled to qualified immunity on plaintiffs' individual capacity supervisory liability claims.

Even if supervisors are not involved in day-to-day operations, their personal involvement may be found if they are involved in "creating, applying, or interpreting a policy" that gives rise to unconstitutional conditions. *Bonner v. Outlaw*, 552 F.3d 673, 679 (8th Cir. 2009) (citing *Trudeau v. Wyrick*, 713 F.2d 1360, 1367 (8th Cir. 1983)). Where liability is premised on a supervisor's deliberate indifference to misconduct, "[t]he supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see." *Kahle v. Leonard*, 477 F.3d 544, 551 (8th Cir. 2007) (quotation omitted) (second alteration in original); *see also Jackson v. Nixon*, 747 F.3d 537, 545 (8th Cir. 2014); *Cooper v. Schriro*, 189 F.3d 781, 784 (8th Cir. 1999); *Jackson v. Rapps*, 947 F.2d 332, 338-39 (8th Cir. 1991); *Messimer v. Lockhart*, 702 F.2d 729, 732 (8th Cir. 1983).

Defendants further argue that plaintiffs fail to state a personal capacity claim for supervisory liability because they maintain plaintiffs fail to show either the adoption of a policy approving the offending conduct or the existence of a policy that creates unconstitutional conditions (Dkt. No. 33, at 62). Plaintiffs sufficiently allege an ongoing pattern, practice, or policy followed or implemented by the named ADHS defendants so as to establish a deliberate agency-wide policy with respect to plaintiffs' claims and alleged harms. Plaintiffs include allegations sufficient to support a policy, practice, or procedure that purportedly violates due process under these circumstances (Dkt. No. 31, ¶¶ 196(q), 205, 196(m)). Further, plaintiffs allege, in part: "ADHS engages in a policy, practice, or procedure to terminate or reduce the services of every beneficiary who timely appeals unless the beneficiary has an attorney or care agency worker who makes additional contact with ADHS within the 10-day timeframe." (Dkt. No. 31, ¶ 225).

Plaintiffs sufficiently allege each ADHS defendants' involvement so as to overcome ADHS defendants' challenges on each of these points (Dkt. No. 34, at 55-84 (citing paragraphs in Dkt. No. 31 with respect to each named ADHS defendant moving to dismiss)).

### VIII.   Failure To State Official Capacity Claims

The Court understands ADHS defendants to move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) plaintiff's count one which alleges claims against all defendants in their official capacity for continuation of benefits and plaintiffs' count two which alleges claims against all defendants in their official capacity for their alleged failure to provide Ms. Dearmore with due process and adequate notice. Applying the Rule 12(b)(6) standard to plaintiffs' consolidated complaint, the Court denies ADHS defendants' motion to dismiss counts one and two for failure to state a claim upon which relief can be granted. Plaintiffs allege sufficient factual allegations

which, if accepted as true, state a claim upon which relief may be granted against ADHS defendants in their official capacities.

## IX.    Conclusion

For the foregoing reasons, the Court denies defendants' motion to dismiss plaintiffs' consolidated complaint (Dkt. No. 32).

It is so ordered this 31st day of March, 2021.

Kristine G. Baker
United States District Judge