IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

GINGER P. ELDER,
JACQUELYN A. DEARMORE, and
BENJAMIN TAYLOR                                                                                   PLAINTIFFS

v.                                   Case No. 3:19-cv-155-KGB

**CINDY GILLESPIE,** Director, Arkansas
Department of Human Services, in
her official and individual capacity

**CRAIG CLOUD,** Director, Division of
Provider Services and Quality Assurance,
Arkansas Department of Human Services,
in his individual capacity,

**RICHARD ROSEN,** Managing Attorney,
Office of Chief Counsel, Arkansas
Department of Human Services,
in his official and individual capacity,

**JERALD SHARUM,** Director, Division of
Provider Services and Quality Assurance,
Arkansas Department of Human Services,
in his official capacity,

**DAVID STERLING,** Chief Counsel,
Arkansas Department of Human Services,
in his official and individual capacity,

**MARK WHITE,** Chief of Staff to
Gillespie and Chief Legislative and
Intergovernmental Affairs Officer,
Arkansas Department of Human
Services, in his official and individual
capacity, and

**JOHN DOES**, in their official and
individual capacities                                                                               DEFENDANTS

## Settlement Agreement

Now come Ginger Elder, Jacquelyn Dearmore, and Benjamin Taylor as Plaintiffs, and Cindy Gillespie, Craig Cloud, Richard Rosen, Jerald Sharum, David Sterling, and Mark White, in their respective official and individual capacities ("Defendants"), (collectively referred to hereinafter as "the parties") and enter into the following Settlement Agreement ("Agreement").

## Recitals

Whereas, on May 23, 2019, Ginger Elder filed her lawsuit (Case No. 3:19-cv-00155-KGB) against Defendants in the United States District Court for the Eastern District of Arkansas, alleging violations of the due process clause of the Fourteenth Amendment of the U.S. Constitution;

Whereas, on February 24, 2020, Jacquelyn Dearmore filed her lawsuit (Case No. 4:20-CV-188-KGB) against Defendants in the United States District Court for the Eastern District of Arkansas, alleging violations of the due process clause of the Fourteenth Amendment of the U.S. Constitution;

Whereas, on July 10, 2020, pursuant to the District Court's Order, the Plaintiffs, with the addition of Benjamin Taylor, filed their Consolidated Complaint against the Defendants;

Whereas, on January 25, 2023, the parties held a Rule 26(f) conference whereby they agreed to reasonable timeline for litigation and a joint request for a settlement conference;

Whereas, the parties recognize that this case involves legal issues that may take a prolonged time to fully litigate and resolve and further recognize that continued litigation would be an expensive, lengthy, and time-consuming matter;

Whereas, the Defendants deny that they, or any officer, employee, or agent, have engaged in any wrongful, tortious or unlawful conduct of any kind;

Whereas, the parties agree that neither entering into this Agreement nor the terms of this Agreement shall be deemed as an admission or denial of the allegations in the Plaintiffs' Consolidated Complaint;

Whereas, the parties share a mutual interest in seeing that appropriate due process is afforded to Medicaid beneficiaries consistent with federal law and the Fourteenth Amendment; and

Whereas, the parties wish to enter into this Settlement Agreement as full and final satisfaction of any and all claims, including any and all claims for costs and attorneys' fees, which were raised by Plaintiffs in the Action or could have been raised by Plaintiffs in this Action, including claims and costs as to the unnamed "John Doe" Defendants;

Now, therefore, the parties have decided to resolve this matter in the manner set forth below:

I.   **DEFINITIONS**

   A. **ARChoices**. The Medicaid Home and Community-Based Services waiver approved under authority of § 1915(c) of the Social Security Act, which is administered by the Arkansas Department of Human Services.
   B. **Arkansas Department of Human Services ("DHS")**. The sole state agency in Arkansas tasked with administering the ARChoices program and any other Medicaid program in the state. DHS and its agents in their official capacity shall be obligated to the terms of this Agreement.
   C. **Beneficiary**. Unless otherwise specified, the recipient of Medicaid coverage in the State of Arkansas.
   D. **Continuation of Benefits**. This refers to the practice of maintaining a Medicaid beneficiary's level of coverage or services at the pre-reduction level, upon a timely appeal, pending the outcome of an administrative hearing of an adverse action to reduce or terminate benefits.
   E. **Defendants**. This refers to the named defendants in their official capacities, including successors in office, as well as employees, contracts, and agents. This term is synonymous with "Arkansas Department of Human Services" or "DHS".
   F. **Legal Aid of Arkansas, Inc. ("Legal Aid")**. The non-profit attorney representatives of the Plaintiffs in this matter. Legal Aid, its successors and assigns may seek enforcement of all terms of this Agreement on behalf of the Plaintiffs in this matter.
   G. **Reasonable Time Period.** The amount of time, which is fairly necessary, to do whatever is required to be done, as soon as circumstances permit.

II.   **ACTIONS TO BE TAKEN BY THE DEFENDANTS**

   A.   Following the entry of an Order dismissing this Action with prejudice, DHS will develop, within a reasonable time period, written desk guides for staff addressing the process for the continuation of benefits upon a timely appeal for ARChoices beneficiaries, with steps outlined for each method by which an appeal may be submitted.

   1. DHS will share the draft of the written desk guides with Legal Aid at least fourteen (14) days prior to implementation. Legal Aid will relay any questions or feedback about the desk guides to DHS counsel.
   2. The written desk guides will instruct staff to notify the DHS Office of Chief Counsel if they become aware of a case in which DHS received a timely appeal from an ARChoices beneficiary, services were discontinued for any length of time despite the pending appeal, and the individual had not elected to have services discontinued.
   3. DHS will add the provisions of these desk guides to regular trainings provided at least annually to relevant staff of the Division of County Operations who may receive or act on beneficiary appeal requests.

    4.    DHS represents that it cannot commit to a specific deadline for the completion of the written desk guide as it must first engage a project manager to establish the necessary steps and a timeline for completion of this project and that elements critical to completion are outside the control of the agency. Thus, DHS agrees to provide a monthly written update to Legal Aid regarding the progress of this project. The written update shall include, but is not limited to, the initiation of the project, the current status, the previous steps taken towards completion, and the next steps to be taken in furtherance of completion. The parties shall agree to discuss the written update at the quarterly meetings described in Section II, Item G, Subitems (a) through (b). Any dispute pursuant to this provision shall be resolved in accordance with the process provided in Section II, Item G, Subitems (c) through (f).

B.    DHS will provide a report to Legal Aid at least quarterly that includes:
    a.    The total number of timely appeals received from ARChoices beneficiaries;
    b.    Final dispositions of the timely appeals received from ARChoices beneficiaries; and
    c.    The number of cases reported to the Office of Chief Counsel in which:
        i.    DHS received a timely appeal from an ARChoices beneficiary,
        ii.    Services were discontinued for any length of time despite the pending appeal, and
        iii.    The individual had not elected to have services discontinued.
    d.    DHS shall submit each report within thirty (30) days after the end of the calendar quarter.

C.    DHS will, within a reasonable time period, modify its Notice of Action documents that are sent to ARChoices beneficiaries to inform them of a termination or reduction of services to include language substantially similar to the following:

> "If you timely submit an appeal but your services stop during the appeal, please call your service provider, or call DHS if the service provider is unable to assist."

DHS represents that it cannot commit to a specific deadline for the completion of this modification to its Notice of Action documents as it must first engage a project manager to establish the necessary steps and a timeline for completion of this project and that elements critical to completion are outside the control of the agency. Thus, DHS agrees to provide a monthly written update to Legal Aid regarding the progress of this project. The written update shall include, but is not limited to, the initiation of the project, the current status, the previous steps taken towards completion, and the next steps to be taken in furtherance of completion. The parties shall agree to discuss the written update at the quarterly meetings described in Section II, Item G, Subitems (a) through (b). Any dispute pursuant to this provision

shall be resolved in accordance with the process provided in Section II, Item G, Subitems (c) through (f).

D.  DHS will, within a reasonable time period, implement a written policy requiring that the time period in which to file an appeal for purposes of continuing Medicaid benefits begins to run on the fifth day after the date on the notice of adverse action. Under current DHS policy, this additional time will provide ARChoices beneficiaries thirty-five (35) days from the date on the Notice of Action to file an appeal.

DHS represents that it cannot commit to a specific deadline for the completion of this written policy as it must first engage a project manager to establish the necessary steps and a timeline for completion of this project and that elements critical to completion are outside the control of the agency. Thus, DHS agrees to provide a monthly written update to Legal Aid regarding the progress of this project. The written update shall include information including, but not limited to, the initiation of the project, the current status, the previous steps taken towards completion, and the next steps to be taken in furtherance of completion. The parties shall agree to discuss the written update at the quarterly meetings described in Section II, Item G, Subitems (a) through (b). Any dispute pursuant to this provision shall be resolved in accordance with the process provided in Section II, Item G, Subitems (c) through (f).

E.  DHS will implement a rule change for all Medicaid beneficiaries allowing for the automatic continuation of benefits for all beneficiaries who timely appeal an adverse action unless the beneficiary affirmatively opts out of receiving ongoing services pending a timely appeal.

F.  DHS will follow the rules and regulations established by the Centers for Medicare and Medicaid Services regarding notice of adverse agency determination to ARChoices beneficiaries.

G.  DHS agrees to meet with Legal Aid representatives at least quarterly to discuss issues with respect to the terms of this agreement.

   a.  At least fourteen (14) calendar days before each meeting, Legal Aid may submit a written request for non-personally identifiable information that relates to compliance with this Agreement. DHS will respond and identify what information DHS can reasonably provide prior to the meeting and will justify in writing the basis for refusing or withholding any information requested by Legal Aid.
   b.  The parties will make reasonable efforts to address concerns at these meetings.
   c.  If Legal Aid believes that DHS has failed to discharge any obligation under this agreement, it shall provide written notice of such failure to DHS, and DHS will have ninety (90) days to comply.

      d.     Legal Aid may raise a failure affecting any ARChoices beneficiary.

      e.     Within thirty (30) days from the receipt of notice, DHS shall issue a response detailing its position on Legal Aid's notice or detail its efforts to come into compliance within ninety (90) days.

      f.     If the parties are unable to reach a mutual plan to come back into compliance, or Legal Aid establishes that a Defendant, in their official capacity, has not come into compliance within ninety (90) days of notice, then Legal Aid may seek enforcement of this Agreement by the Court.

      g.     If DHS must promulgate a rule to come into compliance with this Agreement, DHS will be considered to be in compliance if it publishes the proposed rule for public comment and initiates the promulgation process within ninety (90) days of the written notice and makes reasonable efforts to finalize the promulgation process.

      h.     The parties will schedule the first meeting within 90 days following the effective date of the Agreement.

H. In advance of the first quarterly meeting under this Agreement, DHS will provide Legal Aid with the forms of notices used by DHS for ARChoices beneficiaries to include: (a) the Notice of Action, (b) the Notice of Individual Service Budget Determinations, (c) the Notice of Functional Assessment Results, and (d) the Notice of Service Level Calculations.

I. DHS agrees to pay a total of $360,000 to the individual Plaintiffs as follows:
      a.     A check in the amount of $120,000 to Ginger Elder;
      b.     A check in the amount of $120,000 to Jacquelyn Dearmore; and
      c.     A check in the amount of $120,000 to Benjamin Taylor.

J. Payment shall be made on the first day of the second month following the date on which the Arkansas Legislature approves this Agreement. For example, if the legislature approves this Agreement any time during the month of April 2023, then payment shall be made on June 1, 2023. If the legislature approves this Agreement any time during the month of May 2023, then payment shall be made on July 1, 2023.

K. Because the payment of monetary relief may count as income, an asset, or a resource that can disqualify each Plaintiff from ongoing Medicaid eligibility, the date of payment is a material term of this agreement. The Plaintiffs require payment on the timeline referenced above to minimize the possibility for Medicaid ineligibility subsequent to the date the payment is received.

L. Within fourteen (14) days of the entry of this Agreement, Legal Aid will designate in writing where each payment under Section II shall be directed to.

M. The Defendants represent that they must receive approval from the Arkansas Legislature, specifically the Joint Budget Committee, to enter into this

        Agreement, pay the monetary relief specified, and/or make the agreed-upon policy changes. Prior to seeking legislative approval, the parties will first seek approval of this Agreement by the Court by filing a copy of the Agreement pursuant to a Motion to Adopt.

        a.    If approved by the Court, the Defendants shall present the Agreement to the Joint Budget Committee within thirty (30) days. If DHS is unable to present the agreement within the 30 day timeframe, it must state the reason in writing and provide the Plaintiffs the estimated time for presentation of the Agreement. If DHS is unable to present the agreement within ninety (90) days, the agreement is void, and litigation will resume as if no agreement was made and will proceed without prejudice to any party's claims or defenses. In such case, the terms of this Agreement shall be protected by Fed. R. Evid. 408.

        b.    In the event the Legislature does not provide the requisite approval for any term of this Agreement, litigation will resume as if no agreement was made and will proceed without prejudice to any party's claims or defenses. In such case, the terms of this Agreement shall be protected by Fed. R. Evid. R. 408.

N.    Within thirty-five (35) days of approval of this Agreement by the Court and the Arkansas Legislature, DHS shall deliver to Legal Aid a check in the amount of $100,000 for expenses, costs, and attorneys' fees. The payment should be made to: Legal Aid of Arkansas, Inc. and sent to Trevor Hawkins, *attorney for Plaintiffs*, 714 S. Main St. Jonesboro, AR 72401. The receipt of these funds will satisfy in full any claim, including those brought or could have been brought, by Plaintiffs for attorneys' fees under 42 U.S.C. § 1988. The Defendants shall have no claim against the Plaintiffs for expenses, costs, or attorneys' fees.

III.    **ACTIONS TO BE TAKEN BY THE PLAINTIFFS**

A.    As a condition of this Agreement, Plaintiffs agree to dismiss with prejudice all claims against the Defendants in their individual and official capacities. Such dismissal will proceed as provided in Section III, Item B.

B.    Upon approval of this entire Agreement by the Arkansas Legislature and receipt of complete payment of all monetary relief (i.e., the payment to each Plaintiff and the payment of expenses, costs, and attorneys' fees to Legal Aid), the Plaintiffs will file a Motion for Dismissal of the Consolidated Cases with the Court.

C.    The Plaintiffs' Motion for Dismissal of the Consolidated Cases shall contain a statement proposing that the Court incorporate the following language into its Order of Dismissal:

> "The parties agree that the Court will retain jurisdiction over this matter for a period of twenty-four (24) months from the date of its Order for Dismissal for purposes of enforcing this Agreement."

**IV.   COMPLETE RELEASE AND WAIVER.**

The Plaintiffs waive, release, relinquish and forever discharge the Defendants from all claims, liens, or causes of action, known or unknown, arising out of the Complaint and Amended Complaints filed in this, as well as the consolidated action.

**V.   ENTIRE AGREEMENT.**

This Agreement contains the entire agreement between the parties. The Plaintiffs and Defendants have not relied upon any promise or statement, oral or written, that is not set forth in this Agreement.

**VI.   MODIFICATION.**

The Plaintiffs and Defendants agree that this Agreement may not be modified, amended, or altered except by a written agreement executed by all parties.

**VII.   VOLUNTARY AGREEMENT.**

The Parties represent and acknowledge that this Agreement is the result of extensive, thorough, and good faith negotiations by all parties. The Parties represent and acknowledge that the terms of this Agreement have been voluntarily accepted, after consultation with counsel, for the purpose of making a full and final compromise and settlement of any and all claims, allegations, or defenses set forth by the Parties in this matter.

Each Party to this Agreement represents and warrants that the person who has signed this Agreement on behalf of him or her is duly authorized to enter into this Agreement and to bind that Party to the terms and conditions of this Agreement. The signatures of officials or attorneys representing the Parties signify that all Parties have given their approval of this Agreement, subject to approval by the United States District Court for the Eastern District of Arkansas.

**VIII.   NO RESCISSION FOR MISTAKE.**

The Plaintiffs and Defendants acknowledge that each has had the opportunity to investigate the facts and law relating to the claims raised in the Action and any additionally waived and released claims to the extent each deems necessary and appropriate. The Plaintiffs and Defendants assume the risk of any mistake of fact or law and agree that any mistake of fact or law shall not be grounds for rescission or modification of any part of this Agreement.

**IX.   ACKNOWLEDGEMENT.**

Plaintiffs and defendants acknowledge that this document was agreed upon by both sides; the terms of which will not be construed against either side as the drafter.

**X.   CHOICE OF LAW.**

This Agreement shall be governed by and construed in accordance with the substantive law of the State of Arkansas. The venue for all legal actions concerning this Agreement shall be in the United States District Court for the Eastern District of Arkansas.

**XI.   SUCCESSORS AND ASSIGNS.**

This Agreement shall be binding upon the plaintiffs and defendants and each of their respective heirs, descendants, successors, and assigns.

**XII.   EXECUTION.**

The persons executing this document assert that they are authorized to do so by the party or parties on whose behalf they purport to act.

**XIII.   COUNTERPARTS.**

This Agreement may be executed in counterparts, and the counterparts taken together will have binding effect.

**XIV.   LENGTH OF AGREEMENT**

The parties agree that the Court will retain jurisdiction over this matter for a period of twenty-four (24) months from the date of its Order for Dismissal for purposes of enforcing this Agreement.

XV.     **EFFECTIVE DATE**.

    This Agreement shall become effective on the date when the last of the Parties signs the Agreement.

IN WITNESS WHEREOF, the parties have executed four (4) original copies of this Agreement.

[Signature Pages Below]

This Settlement Agreement agreed to and executed by the Parties hereto:

**Plaintiff Ginger Elder**

By: _(signature)_
Signature

Ginger Elder
Printed Name

6/12/23
Date

This Settlement Agreement agreed to and executed by the Parties hereto:

**Plaintiff Jacquelyn Dearmore**

By: *Jacquelyn Dearmore*
Signature

*Jacquelyn Dearmore*
Printed Name

6/12/2023
Date

This Settlement Agreement agreed to and executed by the Parties hereto:

**Plaintiff Benjamin Taylor**

By: _B Taylor_
Signature

_Benjamin Taylor_
Printed Name

_6-12-23_
Date

This Settlement Agreement agreed to and executed by the Parties hereto:

**Defendant Cindy Gillespie, in her official and individual capacity**

By: *[signature]*
Signature

Cindy Gillespie
Printed Name

7/13/2023
Date

This Settlement Agreement agreed to and executed by the Parties hereto:

**Defendant Mark White, in his official and individual capacity**

By: *[signature]*
Signature

*Mark White*
Printed Name

*7-12-23*
Date

This Settlement Agreement agreed to and executed by the Parties hereto:

**Defendant Craig Cloud, in his official and individual capacity**

By: _____
Signature

_Craig Cloud_
Printed Name

_7/13/2023_
Date

This Settlement Agreement agreed to and executed by the Parties hereto:

**Defendant Richard Rosen, in his official and individual capacity**

By: *Richard Rosen*
Signature

RICHARD ROSEN
Printed Name

7-11-23
Date

This Settlement Agreement agreed to and executed by the Parties hereto:

**Defendant Jerald Sharum, in his official capacity**

By: _____
    Signature

_____
Printed Name

_____
Date

This Settlement Agreement agreed to and executed by the Parties hereto:

**Defendant David Sterling, in his official and individual capacity**

By: _____
Signature

_____
Printed Name: David W. Sterling

_____
Date: 7/17/23